# EXHIBIT D



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CASE NO.: C-1-01-641

Q & R ASSOCIATES, INC.,

    Plaintiff,

vs.

UNIFI, INC., et al,

    Defendants.

**DEPOSITION**



## WITNESS: MICHAEL EUGENE DELANEY

**TAKEN AT THE OFFICES OF:**
**UNIFI TECHNICAL FABRICS, LLC**
7201 West Friendly Avenue
Greensboro, NC 27401

**DATE:** 2-23-04
**TIME:** 9:37 A.M.

**REPORTER: DALE L. RING**
**CHAPLIN & ASSOCIATES, INC.**

CHARLOTTE (704) 335-1954   TRIAD (336) 992-1954   RALEIGH (919) 807-1954

Michael Eugene Delaney                                           Page 104

```
 1   know.  If there was a reason, I can't -- I
 2   couldn't answer that.  But typically we like them.
 3       Q.   (Mr. Packard)  And we saw the
 4   correspondence earlier talking about the need for
 5   one back in March.  Do you recall that?
 6       A.   Uh-huh (yes).  Yes.
 7                  (PLAINTIFF'S EXHIBIT
 8                  NUMBER 12 WAS MARKED
 9                  FOR IDENTIFICATION)
10       Q.   (Mr. Packard)  Okay, I've handed you a
11   document marked Plaintiff's Exhibit 12.
12       A.   Uh-huh (yes).
13       Q.   Can you tell me what that document is?
14       A.   It's a summary of the proposal.
15       Q.   Is this a draft of the letter of intent
16   that you were referring to earlier?
17            MR. WENDLING:  Objection.
18            THE WITNESS:  Well, it's a signed
19   copy, so...  What do you mean?
20       Q.   (Mr. Packard)  Is this the letter of
21   intent?
22       A.   I'm trying to remember the dates because
23   if it doesn't have a million dollars in it, it's
24   not the binding.
25   (Witness examined document)
```

Michael Eugene Delaney                                                    Page 105

1       A.   It's a discussion -- an agreement to
2  work towards drafting a binding letter.
3       Q.   If you look at page four, it looks like
4  Charles McCoy signed that document as well?
5       A.   Yeah.
6       Q.   This was not the letter of intent you
7  were discussing, though, earlier.  Correct?
8       A.   The binding letter of intent?  No.
9       Q.   What was this document?
10      A.   It's what I just said, which is the --
11 you know, I'm not sure.  It looks like the non --
12 like a non-binding.
13      Q.   Did you ever have a chance to look at
14 AVGOL's due diligence report from Ernst & Young?
15      A.   No, not that I recall.
16      Q.   Were you involved in any way in their
17 due diligence?  Did they talk to you or did they
18 have ---
19      A.   No.
20      Q.   Did you provide any information during
21 that time?
22      A.   I did not personally.
23      Q.   Okay.  Did you supervise somebody who
24 did?
25      A.   Well, I assume Ron Smith was involved

Michael Eugene Delaney                                        Page 106

```
1    with that.
2         Q.   Okay.
3         A.   And I know he was working with, you
4    know, whoever would be required to get the
5    information.
6                   (PLAINTIFF'S EXHIBIT
7                   NUMBER 13 WAS MARKED
8                   FOR IDENTIFICATION)
9         Q.   (Mr. Packard)  Take a look at that.
10   That's a document marked Plaintiff's Exhibit 13.
11   (Witness examined document)
12        A.   Better guard my pen.  I'm tempted to
13   write.
14        Q.   Have you had a chance to look at
15   Plaintiff's Exhibit 13?
16        A.   Yeah.
17        Q.   And what is that document?
18        A.   That looks like the binding letter of
19   intent.
20        Q.   And that's dated May 11th, 2001?
21        A.   Right.
22        Q.   Now, in your mind, by that -- that is
23   the date by which Unifi had decided to sell?
24        A.   That's the date when I finally decided
25   that they were serious, frankly.  I didn't -- I
```

Michael Eugene Delaney                                      Page 107

```
 1    really wasn't sure they were going to do this.
 2    That's why we asked them to put a million dollars
 3    on it.
 4         Q.   And take a look at the signature page on
 5    that.
 6         A.   Yeah.
 7         Q.   Is that your signature?
 8         A.   That's me.
 9         Q.   Paragraph three of the agreement, the
10    second paragraph says, "On or before May 15th,
11    2001, purchaser will pay to you a down payment of
12    one million dollars to be held pursuant to the
13    terms of the deposit letter dated the date
14    hereof."  And then they go on to define the
15    deposit letter.
16         A.   Right.
17         Q.   Did you -- did Unifi receive a down
18    payment of one million dollars on or before
19    May 15th, 2001?
20         A.   They did.
21         Q.   Is that the million dollars you were
22    talking about earlier?
23         A.   That's it.
24         Q.   Okay.
25                    (PLAINTIFF'S EXHIBIT
```