# EXHIBIT O

DAVID A. SHAFER, Plaintiff-Appellant, v. P.S.I. PAPER SYSTEMS, INC., Defendant, R & L OCALA, INC., Defendant-Appellee.

Case No. 01-3810

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

61 Fed. Appx. 949; 2003 U.S. App. LEXIS 5522

March 19, 2003, Filed

**NOTICE:**
**PUB-STATUS:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 00-00104. Weber. 05-22-01.

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff corporate director appealed the order of the United States District Court for the Southern District of Ohio, granting summary judgment to the sole remaining defendant, a corporation, in this breach of contract action.

**OVERVIEW:** The corporate director financed projects for the corporation from a variety of sources. The corporation decided to form a new entity. The director secured financing for the project. The director later presented a service contract to the vice-president that called for the corporation to pay the director $ 40,000/year for 12 years. The vice-president signed the document. The corporation fired the director shortly thereafter, because he was indicted on counts of tax and bank fraud. The director filed suit for breach of his employment contract. The court found no enforceable contract. The service contract was not enforceable due to a lack of consideration. It was clear that the director did not perform any obligation under the service contract, because he had already secured the financing for the new project. Repayment for past services could not support a contract.

**OUTCOME:** The judgment was affirmed.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

*Civil Procedure > Appeals > Standards of Review > De Novo Review*

[HN1]The appellate court reviews de novo the district court's grant of summary judgment, employing the same Fed. R. Civ. P. 56(c) standard used by the district court. The appellate court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits in order to determine if there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. Rule 56(c). The appellate court views the evidence and any inferences that may be drawn therefrom in a light most favorable to the nonmoving party.

*Contracts Law > Formation > Formation Generally*

[HN2]In Ohio a contract requires: (1) an offer and acceptance; (2) a lawful subject matter; and (3) sufficient consideration.

*Contracts Law > Types of Contracts > Implied-in-Fact Contracts*

[HN3]A contract can be implied when one party renders services or materials to another when the latter knew or should have known that he would be expected to pay for the benefit he received.

*Business & Corporate Entities > Corporations > Formation > Preincorporation*

[HN4]A corporation is liable for the breach of an agreement executed on its behalf by its promoters where the corporation expressly adopts the agreement or benefits from it with knowledge of its terms.

*Contracts Law > Formation > Formation Generally*

[HN5]A meeting of the minds entails an agreement of the parties to be bound by their promises.

Page 1

**COUNSEL:** For DAVID A. SHAFER, Plaintiff - Appellant: Michael S. Conese, Hamilton, OH.

For R & L OCALA, INC., Defendant - Appellee: Stephen A. Watring, Dunlevey, Mahan & Furry, Dayton, OH.

**JUDGES:** BEFORE: BATCHELDER and MOORE, Circuit Judges; COLLIER *, District Judge.

* The Honorable Curtis L. Collier, United States District Court for the Eastern District of Tennessee, sitting by designation.

**OPINIONBY:** ALICE M. BATCHELDER

**OPINION:** [*950] **ALICE M. BATCHELDER, Circuit Judge.** David Shafer appeals the order of the district court granting summary judgment to the sole remaining defendant, R & L Ocala, Inc., in this breach of contract action, before us on diversity jurisdiction. Because we agree with the district court's conclusion that [**2] Shafer never entered into an oral agreement with either P.S.I. Paper Systems, Inc. ("PSI") or R & L Ocala, Inc. ("R & L Ocala"), we affirm.

I

Appellant David Shafer worked as the Director of Operations for PSI from May 1991 until he was terminated in October 1995. During that time, his duties at PSI included securing financing for projects from a variety of sources, reducing operational costs, and other managerial tasks. He reported directly to both Larry Curk, the President of PSI, and Ray Willman, the Executive Vice-President of PSI.

During the mid-1990s, Curk and Willman decided to form a new entity to construct a plant in Ocala, Florida, that they would lease to PSI. In the summer of 1994, Curk asked Shafer for his help in securing bond financing for the new Ocala facility. Shafer says that Curk offered him a ten percent equity interest in a yet-to-be-formed corporation in return for his efforts [*951] to procure the financing. n1 Shafer worked at securing financing for the "Ocala project" during his normal business hours at PSI, and his work on the project did not affect the number of hours he worked on a daily basis or interfere with his ordinary duties.

------------- Footnotes ---------
------

n1 The precise nature of the statement Curk made to Shafer is unclear from the record. Curk claims that he told Shafer that he was *considering* giving him an interest in the partnership once it was formed. Shafer claims that the statement by Curk was a promise that he (Shafer) subsequently ratified/accepted by doing the requested work.

------------ End Footnotes--------
------

[**3]

In early 1995, after Shafer had successfully obtained financing, Curk and Willman formed R & L Ocala, Inc. Shafer told Curk that he would like to hold his shares of the company in trust because he had some problems with creditors. According to Shafer, Curk responded that if Shafer could not hold the shares "straight out in [his] name," or if he had a clouded credit past, he would not receive any equity interest in the proposed new company, but that Curk would "make it up" to him. Curk and Willman became the only shareholders of R & L Ocala, with each holding a 50% ownership interest; Shafer received no interest in the new company.

Around May of 1995, Shafer prepared and presented to Willman a "Service Contract" between Shafer and R & L Ocala, "in lieu of [the] 10% equity ownership position," that called for R & L Ocala to pay Shafer $ 40,000/year for twelve years. In exchange, Shafer would procure bond financing for R & L Ocala and select a property manager for the R & L Ocala plant on an annual basis. In Shafer's estimation, the total amount of $ 480,000 due him under the Service Contract was the after-tax equivalent of the equity interest in R & L Ocala that he never received. [**4] Shafer left three copies of the document with Willman and later returned to pick up his two signed copies. n2 Shafer admits that he had secured bond financing for R & L Ocala prior to presenting the Service Contract to Willman, and that he provided nothing else as consideration after the document was signed.

-------------- Footnotes ---------
------

n2 Curk asserts that Willman had no knowledge of the agreement, but for the purposes of opposing the summary judgment motion, the defendant does not contest that Willman signed the contract.

------------ End Footnotes--------
------

PSI fired Shafer on October 6, 1995, after Shafer was indicted on several counts of tax and bank fraud, to which he eventually pleaded guilty. After attempting and failing to secure a severance package from PSI, Shafer sent an invoice to R & L Ocala claiming that he was owed $ 20,000 under the Service Contract for his



services for the first half of 1995. Curk responded by disavowing the existence of the contract and any further obligations to Shafer.

Shafer filed suit in state court seeking compensatory and punitive [**5] damages against PSI and R & L Ocala for breach of his employment agreement and the Service Contract. After Shafer stipulated to the dismissal of PSI as a defendant, R & L Ocala, a Florida citizen, removed the case to federal court. R & L Ocala moved for summary judgment, and the district court granted the motion on the grounds that the Service Contract was not supported by valid consideration, that there was no prior oral agreement between Shafer and Curk that could be extended by a later written contract, and that Willman, the Secretary of R & L Ocala, was not able to enter into a valid, binding material contract such as the Service Contract without the authorization of the R & L Ocala board of directors. On appeal, Shafer argues that the Service Contract was a modification of [*952] an earlier, valid agreement, and that Willman did have the authority to enter into the Service Contract on behalf of R & L Ocala.

II

[HN1]We review de novo the district court's grant of summary judgment, employing the same *Rule 56(c)* standard used by the district court. We examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in order to determine [**6] if there is a "genuine issue as to any material fact" and whether the moving party "is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 314-15 (6th Cir. 1998)*. We view the evidence and any inferences that may be drawn therefrom in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*.

The parties agree that this dispute is governed by Ohio law. The necessary elements of a contract have been expressed different ways, but it is clear that [HN2]in Ohio a contract requires (1) an offer and acceptance (i.e., a meeting of the minds); (2) on a lawful subject matter; and (3) sufficient consideration. See *Carlisle v. T & R Excavating, Inc., 123 Ohio App. 3d 277, 704 N.E.2d 39, 43 (Ohio Ct. App. 1997)*; *Binns v. Isabel, 72 Ohio App. 222, 39 Ohio Law Abs. 237, 51 N.E.2d 501, 503 (Ohio Ct. App. 1943)*. [HN3]A contract can be implied when one party renders services or materials to another when the latter knew or should have known that he would be expected to pay for the benefit he received. [**7] *Terex Corp. v. Grim Welding Co., 58 Ohio App. 3d 80, 568 N.E.2d 739, 741 (Ohio Ct. App. 1989)*.

It is clear that the Service Contract, taken alone, does not obligate R & L Ocala to make the specified payments to Shafer, who admits that he secured the financing for R & L Ocala several months before Willman signed the Service Contract, and that he did not perform any other obligation under the Service Contract. Repayment for past services cannot support a contract. *Carlisle, 704 N.E.2d at 44*. Therefore, because Shafer performed no work in connection with the contract after it was signed, and provided nothing else as consideration, he is due nothing under its terms.

Shafer argues, however, that the Service Contract is merely a modification of an earlier, binding oral agreement between himself and Curk whereby Curk promised to give him a ten percent ownership interest in the corporation to be formed in Florida. See *Illinois Controls, Inc. v. Langham, 70 Ohio St. 3d 512, 1994 Ohio 99, 639 N.E.2d 771, 780 (Ohio 1994)* (holding that [HN4]a corporation is "liable for the breach of an agreement executed on its behalf by its promoters where the corporation expressly [**8] adopts the agreement or benefits from it with knowledge of its terms"). In order to succeed with this argument, Shafer must offer evidence proving the existence of such an oral contract.

We begin by asking whether Shafer has presented evidence that he and Curk ever had a meeting of the minds with regard to Shafer's equity participation in the yet-to-be-formed corporation. [HN5]A meeting of the minds entails an agreement of the parties to be bound by their promises. *Cuyahoga County Hosp. v. Price, 64 Ohio App. 3d 410, 581 N.E.2d 1125, 1128 (Ohio Ct. App. 1989)*. Shafer claimed in his deposition that he viewed Curk's statement as a binding promise to give him a ten percent equity share should Shafer acquire low-cost financing for the Ocala project. Curk denies making any promise, and claims that he said only that he was considering giving Shafer an equity interest in R&L Ocala once it was [*953] formed. We must accept Shafer's rendition of the facts for purposes of this summary judgment motion.

However, Shafer's later conduct does not support his claim that he and Curk both viewed Curk's offer of the equity interest as a promise that Shafer would receive that interest upon procuring [**9] the financing for the Florida project. It is undisputed that upon being told that he would not receive an equity interest in R & L Ocala due to his credit problems, Shafer sent Curk a letter acquiescing in that decision, telling Curk, "I agree with your statement. We will work something out in the future." Shafer then drafted the Service Contract at issue in this case, which states that "at one time [R & L] Ocala *had considered granting* Shafer a 10% equity ownership in Ocala ...." (emphasis added).

The evidence, even when viewed in a light most favorable to Shafer, belies his claim that Curk had contractually bound himself to give Shafer ten percent ownership in R & L Ocala.

Because the Service Contract is not enforceable on its own terms due to a lack of consideration, and Shafer has not presented evidence from which a jury could find that there was a prior agreement between himself and Curk of which the Service Contract could be a valid modification, Shafer has no contract that may be enforced against R & L Ocala. We therefore need not reach the issue of whether the district court erred in holding that Willman lacked the authority to sign the Service Contract.

III

For the [**10] foregoing reasons, we AFFIRM the judgment of the district court.