# EXHIBIT Q

David Hayes, et al., Plaintiffs v. Computer Associates International, Inc., et al., Defendants

Case No. 3:02CV7452

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

2003 U.S. Dist. LEXIS 10712

June 24, 2003, Decided
June 24, 2003, Opinion Filed

**NOTICE:**
**PUB-STATUS:** [*1] NOT FOR PUBLICATION

**DISPOSITION:** Pending Defendants' motion for summary judgment pursuant to *Fed. R. Civ. P. 56(c)* granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs individuals brought the present action against defendants, a company and its wholly owned subsidiary, and claimed fraudulent inducement and negligent misrepresentation. The parent company and subsidiary moved for summary judgment.

**OVERVIEW:** According to the subsidiary, the individuals were fired because of poor performance, lack of sales presentation skills, lack of knowledge of the subsidiary's products, and an overall demonstrated lack of ability to adapt to and be successful in the modeling and simulation software market. The individuals claimed that they were fraudulently induced to work for the subsidiary by giving them a certain product list, which created a false impression that the individuals would not have any difficulty in achieving the sales goals set by the subsidiary. According to the individuals, they left their previous jobs to work for the subsidiary in reliance on fraudulent misrepresentations about the previous sales history of the north central territory and a forthcoming software development. The court held that the individuals failed to demonstrate that the subsidiary made a false representation because (1) some of the alleged representations concerned future actions or were opinions, (2) there was no evidence that the subsidiary made a false representation, and (3) the parent company and subsidiary had no affirmative duty to explain anything more to the individuals.

**OUTCOME:** The parent company's and subsidiary's motion for summary judgment was granted.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*

[HN1]Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. The moving party always bears the initial responsibility of informing a district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to a nonmoving party who must set forth specific facts showing that there is a genuine issue for trial.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*

[HN2]Once the burden of production shifts, a party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient simply to show that there is some metaphysical doubt as to the material facts. Rather, *Fed. R. Civ. P. 56(e)* requires the nonmoving party to go beyond the unverified pleadings and present some type of evidentiary material in support of its position.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN3]In deciding the motion for summary judgment, the evidence of a non-moving party will be accepted as true, all doubts will be resolved against a moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Torts > Business & Employment Torts > Deceit & Fraud*

*Torts > Business & Employment Torts > Negligent Misrepresentation*

[HN4]While a plaintiff may allege, in the alternative, both fraud and negligent misrepresentation as to the same course of conduct, a defendant cannot be found to have committed an act both intentionally and negligently. As to a defendant's conduct in the business transaction at issue, it could be either intentional or negligent, but it could not be both. Where fraud and negligent misrepresentation are claimed as to the same set of underlying facts, if fraud is proved, then the claim of negligent misrepresentation is necessarily subsumed thereby.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN5]To succeed on a claim for fraudulent inducement, a plaintiff must prove: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN6]In Ohio, fraud is not predicated on a representation concerning a future event. Such representation is more in the nature of a promise or constitutes mere predictions or opinions about what the future may bring.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN7]Fraud cannot be predicated upon promises or representations relating to future actions or conduct.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN8]Statements of opinion cannot be reasonably relied on and, therefore, cannot form the basis of a fraud claim.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN9]In Ohio, a claim for fraudulent inducement cannot be made without evidence of a false representation. However, oral or written communication is not required to find misrepresentation sufficient to constitute fraud. False representation may be made by conduct calculated and intended to produce a false impression as well as by words. Stated differently, a misrepresentation need not be expressed, but may be inferred or implied from acts or circumstances which are in fact equivalent to positive representation.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN10]Fraudulent conduct may not be established by conjecture; it must be proved by direct evidence or justifiable inferences from established facts.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN11]Generally, mere silence does not amount to fraud, but the omission or concealment of a fact may constitute fraud or misrepresentation when a duty to speak exists. The duty to disclose arises in situations where one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. However, a person's duty to speak does not necessarily depend on the existence of a fiduciary relationship. It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN12]A party is liable to speak, and may be liable for nondisclosure, if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another to act and the nondisclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN13]In Ohio, in order to prove fraud in the inducement, a plaintiff must prove that a defendant has made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff has relied upon that misrepresentation to her detriment. In order for representations to have the requisite fraudulent intent, it must have been intended that they should be acted on by the party complaining of fraud.

*Torts > Business & Employment Torts > Negligent Misrepresentation*

[HN14]The elements of negligent misrepresentation are: One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by

their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

**Torts > Business & Employment Torts > Negligent Misrepresentation**

[HN15]A defendant only can be liable for affirmatively supplying false information. Negligent misrepresentation does not lie for omissions; there must be some affirmative false statement. However, a representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession.

**Torts > Business & Employment Torts > Negligent Misrepresentation**

[HN16]A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction.

**Torts > Business & Employment Torts > Negligent Misrepresentation**

[HN17]The special relationship core requirement in a claim for negligent misrepresentation occurs only in "special" circumstances. Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This "special" relationship does not exist in ordinary business transactions.

**COUNSEL:** For David Hayes, Chad E. Cox, Plaintiffs: Terry J. Lodge, Toledo, OH.

For Computer Associates International, Inc., Multigen-Paradigm, Inc., Defendants: A. Michael Anderton, Robert J. Hanna, Arter & Hadden, Cleveland, OH.

**JUDGES:** James G. Carr, United States District Judge.

**OPINIONBY:** James G. Carr

**OPINION:** ORDER

Plaintiffs David Hayes and Chad E. Cox bring this action against defendants Computer Associates International, Inc. and Multigen-Paradigm, Inc. ("Multigen") claiming fraudulent inducement and negligent misrepresentation. This court has jurisdiction pursuant to *28 U.S.C. § 1332*. Pending is defendants' motion for summary judgment pursuant to *Fed. R. Civ. P. 56(c)*. For the following reasons, defendants' motion shall be granted.

**BACKGROUND**

Defendant-Multigen produces and sells visual modeling and simulation computer software products. Multigen is a wholly owned subsidiary of Computer Associates International, Inc.

In August, 2000, plaintiff Hayes, while on vacation in Florida, met Beth Ash, a Multigen sales representative for the South Central [*2] region of the United States. Ash expressed satisfaction with her working conditions, and she indicated that Multigen was looking for a sales representative for its North Central region.

In the fall of 2000, Hayes began communicating with Multigen's Vice President of Sales, Christopher Hawkins. Hawkins told Hayes that it would be best if Hayes were part of a sales "team." A team includes the sales representative and a systems engineer who provides technical product support for the sales representative. At that time, Multigen had no sales team in its North Central territory. Hayes asked his brother-in-law, Chad Cox, to apply for the systems engineer position.

In December, 2000, Hayes and Cox flew to Dallas to interview with Multigen. Plaintiffs interviewed with Hawkins individually.

Hawkins told Hayes that the team would be expected to generate at least $ 1.4 million annually in gross sales. This quota was, however, not based on historical sales performance of the territory. Every sales team in every territory was given the $ 1.4 million annual quota. Hawkins also informed Hayes that the North Central territory had generated approximately $ 500,000 in sales in the past, even though [*3] the region did not have a sales representative. Hawkins additionally discussed various restrictions on sales activity - including the rule that Hayes would not be permitted to sell software to educational institutions. At some point during the interview, Hayes asked Hawkins for documentation regarding past performance of the North Central territory. Hawkins told Hayes that he would compile that information and send it to him.

Within several days of the interview, Hawkins sent Hayes the information he requested in the form of a ten-page spreadsheet ("the List"). Hawkins told Hayes that the List identified products which had been delivered into the North Central territory between 1998 and 2000. After receiving the List, Hayes and Cox placed numbers next to some of the entries on the List which they believed reflected the retail price of the product identified in the specific entry.

On February 15, 2001, Hawkins offered plaintiffs the job. In March, 2001, plaintiffs began working as the sales team for Multigen's North Central territory.

On June 5, 2002, Multigen terminated plaintiffs. According to Multigen, plaintiffs never did well and were fired because of "poor performance, lack [*4] of sales presentation skills, lack of knowledge of Multigen's products, and an overall demonstrated lack of ability to adapt to and be successful in the modeling and simulation software market." Hawkins Aff. P 41. Plaintiffs claim they were fired because they could not meet Multigen's sales quota. Complt. P 12.

In August, 2002, plaintiffs filed this lawsuit, alleging fraudulent inducement to employment and negligent misrepresentation.

Plaintiffs claim that Hawkins fraudulently induced them to work for Multigen by giving them the List, which created a false impression that plaintiffs would not have any difficulty in achieving the sales goals set by Multigen. Complt. at P 7. Hawkins also allegedly told plaintiffs in the December, 2000, interview that there were "big developments in the works ... that would increase sales dramatically." Id. at P 9. After they were hired, plaintiffs learned that the "big development" was a new software program that plaintiffs could begin selling at the end of 2001. Plaintiffs claim the new program was "incomplete and had serious technical problems" which "inhibited or made it impossible for Plaintiffs to market the program." Id. According to [*5] plaintiffs, they left their previous jobs to work for Multigen in reliance on Hawkins's fraudulent misrepresentations about the "previous sales history" of the North Central territory and the "forthcoming 'big development.'" Id. at P 13.

Similarly, plaintiffs claim Hawkins negligently misrepresented the true state of North Central territory's historical sales performance in the course of inducing plaintiffs to accept employment. Id. at P 17.

Defendants move for summary judgment arguing that there is no evidence supporting plaintiffs' claims that Multigen made fraudulent or negligent misrepresentations in the discussions before plaintiffs were hired.

**STANDARD OF REVIEW**

[HN1]Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate [*6] the absence of a genuine issue of material fact. *Id. at 323.* The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)* (quoting *FED. R. CIV. P. 56(e)*).

[HN2]Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* Rather, *Rule 56(e)* "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex, 477 U.S. at 324.*

[HN3]In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable [*7] inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc., 504 U.S. 451, 456, 119 L. Ed. 2d 265, 112 S. Ct. 2072 (1992).* Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *FED. R. CIV. P. 56(c).*

**DISCUSSION**

**I. Fraudulent Inducement/Misrepresentation** n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n1 In *Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 149, 684 N.E.2d 1261 (1996),* the court stated:[HN4]While a plaintiff may allege, in the alternative, both fraud and negligent misrepresentation as to the same course of conduct, a defendant cannot be found to have committed an act both intentionally and negligently. As to [defendant's] conduct in the business transaction at issue, it could be either intentional or negligent, but it could not be both. Where fraud and negligent misrepresentation are claimed as to the same set of underlying facts, if fraud is proved, then the claim of negligent misrepresentation is necessarily subsumed thereby.

- - - - - - - - - - - End Footnotes- - - - - - - -

[*8]

[HN5]To succeed on a claim for fraudulent inducement, a plaintiff must prove:(a) a representation or, where there is a duty to disclose, concealment of a fact,

(b) which is material to the transaction at hand,
(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
(e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance. *Burr v. Bd. of County Comm'rs.*, 23 Ohio St. 3d 69, 73, 23 Ohio B. 200, 491 N.E.2d 1101 (1986) (quoting *Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167, 169, 10 Ohio B. 500, 462 N.E.2d 407 (1984) (quoting *Friedland v. Lipman*, 68 Ohio App. 2d 255, 429 N.E.2d 456 (1980))).

A. False Representation

Defendants argue that they made no false representations to plaintiffs. According to defendants, the List was the only document given to plaintiffs and it did not contain any false, inaccurate, or misleading information. Also, no Multigen representative made statements to plaintiffs before [*9] they were hired that were false, inaccurate, or misleading. Statements relating to plaintiffs' ability to be successful or to the potential success of new software products, defendants argue, were opinions of the individuals who made the statements and, therefore, cannot support a claim of fraud.

In response, plaintiffs argue that along with the List, Hawkins gave Hayes a separate price sheet by which plaintiffs priced the products on the List. This representation "created a false idea in Plaintiffs' minds of the potential sales volume from the North Central sales territory." Plaintiffs' Br. at 3. n2 Plaintiffs also argue that Hawkins had a duty to disclose to plaintiffs the fact that not all "sales" on the List were arms' length transactions. Similarly, plaintiffs contend Hawkins had a duty to provide accurate availability dates of the new software and a realistic prediction of the likelihood of its success.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n2 In their Brief in Opposition, plaintiffs state that they made "a specific request for sales information ...." Plaintiffs' Br. at 7. As defendants explain in their Reply Brief, there is no evidence in the record to support plaintiffs' contention that the List provided "sales information" or "sales data." The record is clear that Hawkins told Hayes that the List represented all the products that went into the North Central region. See e.g., Hayes Dep. at 38, 40-41. Plaintiffs' complaint even alleges, "The list reflected merchandise delivered to customers in that region and did not state actual dollar figures of sales." Complt. at P 7. Because there is no evidence in the record that the information on the List was classified as "sales," plaintiffs' mischaracterizations will be ignored.

- - - - - - - - - - - - End Footnotes- - - - - - - -

[*10]

Plaintiffs fail to demonstrate that Multigen made a false representation because 1) some of the alleged representations concern future actions or are opinions, 2) there is no evidence that defendants made a false representation, and 3) defendants had no affirmative duty to explain anything more to plaintiffs.

1. Future Event or Opinions

[HN6]In Ohio, fraud is not predicated on a representation concerning a future event. Such representation is more in the nature of a promise or constitutes mere predictions or opinions about what the future may bring. *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App. 3d 513, 526, 2002 Ohio 5194, 778 N.E.2d 80 (2002) (citing *Link v. Leadworks Corp.*, 79 Ohio App. 3d 735, 742, 607 N.E.2d 1140 (1992)).

In this case, plaintiffs claim Hawkins made false representations concerning the new software and when it would be marketed. Plaintiffs claim Hawkins stated during the interview that "there were big developments in the works." n3 Complt. at P 9. This cannot constitute a basis for a fraud claim. [HN7]"Fraud cannot be predicated upon promises or representations relating to future actions or conduct." *Tibbs v. Nat'l Homes Constr. Corp.*, 52 Ohio App. 2d 281, 286, 369 N.E.2d 1218 (1977); [*11] see also *Kondrat v. Morris*, 118 Ohio App. 3d 198, 692 N.E.2d 246 (1977) ("Mere predictions about the future are not actionable misrepresentations.") (citation omitted).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n3 In their Brief in Opposition, plaintiffs state that the timetable of the new software program was not kept by Multigen. Plaintiffs' Br. at 2. In their complaint, however, plaintiffs allege that in the May, 2001, sales meeting - two months after they were hired - they first learned of the new software program. Complt. P 9. In their depositions, neither plaintiff testifies that Hawkins informed them that the "big development" was the new software. See Hayes Dep. at 45-46; Cox Dep. 104. Thus, plaintiffs apparently did not know the "big development" was the new software program until after they were hired. Therefore, there is no evidence in the record that Hawkins did more than make general, unspecified statements regarding upcoming developments at Multigen during the interview. As explained above, these statements cannot support a claim of fraud.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*12]

Similarly, any statements Hawkins made about how the new software would positively impact sales or Multigen's alleged reputation in the software market were merely his opinions. [HN8]Statements of opinion cannot be reasonably relied on and, therefore, cannot form the basis of a fraud claim. *J.B. Colt Co. v. Wasson, 15 Ohio App. 484, 487, 32 Ohio C.A. 369, 32 Ohio C.C. (n.s.) 369 (1922)*.

**2. Evidence of False Representations**

[HN9]In Ohio, a claim for fraudulent inducement cannot be made without evidence of a false representation. *Countrymark Coop., Inc. v. Smith, 124 Ohio App. 3d 159, 172, 705 N.E.2d 738 (1997)* (citing *Burr, 23 Ohio St. 3d at 69*)). However, oral or written communication is not required to find misrepresentation sufficient to constitute fraud. False representation may be made by conduct calculated and intended to produce a false impression as well as by words. *Davidson v. Hayes, 69 Ohio App. 3d 28, 32, 590 N.E.2d 18, 6 Anderson's Ohio App. Cas. 273 (1990)* (citing *Fulton v. Aszman, 4 Ohio App. 3d 64, 74, 4 Ohio B. 114, 446 N.E.2d 803 (1982))*. Stated differently, a misrepresentation need not be expressed, but may be inferred or implied from acts or circumstances which are in fact [*13] equivalent to positive representation. 50 Ohio Jurisprudence 3d, Fraud and Deceit § 21 (2002).

Plaintiffs claim that the List, the price sheet, and corresponding statements by Hawkins created a false representation. Plaintiffs have not, however, produced sufficient evidence of a false representation or evidence of circumstances in which a false representation may be inferred.

It is undisputed that the List represented products that were delivered into the North Central territory between 1998 and 2000. The List does not record sales, and it contains no numbers which are or could be sales dollar volume numbers. The List does not indicate there are enough sales of products on the List to satisfy the annual sales quota. The List does not make any distinction between products that would result in a credit toward the sales quota and those that would not.

Most important, there is no price information on the List. Plaintiffs claim they received a price sheet along with the List, but no such sheet has been produced. Its absence from the record is fatal to plaintiffs' claim. Without price information, there is no basis on which plaintiffs can show the statements on the List and in the [*14] price sheet were inaccurate or that defendants knew them to be inaccurate. Absent the price sheet, a jury would be left to speculate as to an essential element of plaintiffs' fraud claim. [HN10]"Fraudulent conduct may not be established by conjecture; it must be proved by direct evidence or justifiable inferences from established facts." *Doyle v. Fairfield Mach. Co., 120 Ohio App. 3d 192, 207, 697 N.E.2d 667 (1997)*.

Because the List is simply a spreadsheet of the products delivered into the area, no reasonable jury could find that the information on the List was false or that it created a false impression.

**3. Duty to Disclose**

[HN11]Generally, mere silence does not amount to fraud, but the omission or concealment of a fact may constitute fraud or misrepresentation when a duty to speak exists. *Sammarco v. Antem Ins. Cos., Inc., 131 Ohio App. 3d 544, 559, 723 N.E.2d 128 (1998)* (citing *Burr, 23 Ohio St. 3d at 69*). The duty to disclose arises in situations where one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. *Steinfels v. Ohio DOC, Div. of Sec., 129 Ohio App. 3d 800, 807, 719 N.E.2d 76 (1998)*. [*15] However, a person's duty to speak does not necessarily depend on the existence of a fiduciary relationship. "It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Leal v. Holtvogt, 123 Ohio App. 3d 51, 76, 702 N.E.2d*

*1246 (1998)* (quoting *Mancini v. Gorick, 41 Ohio App. 3d 373, 374-75, 536 N.E.2d 8 (1987))*.

Similarly, [HN12]a party is liable to speak, and may be liable for nondisclosure, if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another to act and the nondisclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading. *Doe v. Flair Corp., 129 Ohio App. 3d 739, 745, 719 N.E.2d 34 (1998)*.

There was no duty on behalf of Hawkins to tell plaintiffs that all the products on the List could not be counted toward their sales quota. Given the contents of the List and the undisputed fact that Hawkins told Hayes that the List represented products "delivered" to the North Central territory, Multigen could not have [*16] known that failing to further explain the List would render a prior statement false or misleading. It was not reasonable for plaintiffs to make any assumptions about the ease of potential sales based on the List.

Similarly, Hawkins did not have a duty to further disclose the timing of the rollout of the new software or its sales potential. Plaintiffs cite no legal authority for the proposition that a company has a duty to disclose to potential employees the specifics about a developing product. Regardless, plaintiffs have not shown there is a genuine issue of fact as to whether these assertions were false. There is no evidence that Hawkins did not believe in the accuracy of these alleged statements.

### B. Intent to Mislead

Defendants also argue that plaintiffs' fraudulent inducement claim fails because plaintiffs cannot prove an intent to mislead.

[HN13]In Ohio, "in order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation *with the intent* of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *ABM Farms v. Woods, 81 Ohio St. 3d 498, 502, 1998 Ohio 612, 692 N.E.2d 574 (1998)* [*17] (emphasis added) (citing *Beer v. Griffith, 61 Ohio St. 2d 119, 123, 399 N.E.2d 1227 (1980))*. In order for representations to have the requisite fraudulent intent, it must have been intended that they should be acted on by the party complaining of fraud. *Hines v. Amole, 4 Ohio App. 3d 263, 4 Ohio B. 480, 448 N.E.2d 473, (1982)* (citing *Mason v. Moore, 73 Ohio St. 275, 76 N.E. 932 (1906))*.

Plaintiffs argue that Hawkins's self-serving statements that he did not intend to mislead plaintiffs are contradicted by the facts suggesting "an inferable intention" to mislead. Plaintiffs' Br. at 9. No reasonable jury could conclude, however, that Hawkins intended to mislead plaintiffs simply by giving Hayes the List without prices on it. Because plaintiffs' have failed to produce sufficient evidence to even infer intent to defraud, they fail to prove an essential element of their fraudulent inducement claim.

Defendants made no false representations and created no false impressions by failing to disclose. Even if defendants had done so, plaintiffs have not produced sufficient evidence of defendants' intent to mislead plaintiffs. Defendants' motion for summary [*18] judgment on plaintiffs' claim for fraudulent inducement to employment shall therefore be granted.

### II. Negligent Misrepresentation

[HN14]The elements of negligent misrepresentation are:One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. City of Cleveland Heights, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835 (1989)* (emphasis in original) (quoting *Restatement (Second) of Torts S.552(1) (1965))*; *Gutter v. Dow Jones, Inc., 22 Ohio St. 3d 286, 22 Ohio B. 457, 490 N.E.2d 898 (1986)*; *Haddon View Inv. Co. v. Coopers & Lybrand, 70 Ohio St. 2d 154, 436 N.E.2d 212 (1982))*.

[HN15]A defendant only can be liable for affirmatively supplying false information. See *Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 150, 684 N.E.2d 1261 (1996)* [*19] ("Negligent misrepresentation does not lie for omissions; there must be some affirmative false statement."). However, a representation made with an honest belief in its truth may still be negligent, "because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession." *Martin v. Ohio State Univ. Found., 139 Ohio App. 3d 89, 104, 742 N.E.2d 1198 (2000)*.

[HN16]A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction. *Picker Intern., Inc. v. Mayo Found., 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998)*. As explained in Picker,[HN17]This

relationship occurs only in "special" circumstances. Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This "special" relationship does not exist in ordinary business transactions. *Id.*

Plaintiffs' claims [*20] for negligent misrepresentation fail as a matter of law. First, as stated earlier, plaintiffs have not demonstrated defendants provided plaintiffs with any false information. Furthermore, no reasonable juror could conclude that by providing the List, defendants were not acting with reasonable care.

Second, Hawkins and plaintiffs did not have the type of "special" relationship that would allow plaintiffs to bring a negligent misrepresentation claim. Negligent misrepresentation applies to business transactions where the defendant is in the business of giving guidance to others in their business transactions. In this case, Multigen sells software products, not business performance data. Moreover, nothing indicates that the relationship between Hawkins and plaintiffs -- before they were hired -- was anything other than an arms length agreement between two sophisticated parties.

Third, plaintiffs cannot claim justifiable reliance. No reasonable juror could conclude that the List should be interpreted to contain sales dollar volume information. Furthermore, no reasonable juror could conclude that the List could be used to calculate the potential likelihood of meeting the annual sales quota. [*21] Also, any alleged statements by Hawkins or other Multigen employees about the new software or Multigen's reputation were opinions or statements about future actions. As stated earlier, such representations cannot justifiably be relied on as a matter of law. n4 *Tibbs, 52 Ohio App. 2d at 286*; *J.B. Colt, 15 Ohio App. at 487.*

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n4 As explained above, a negligent misrepresentation claim does not lie for omissions. There must be an affirmative false statement. Therefore, plaintiffs must prove either that the List or a statement made to them by a Multigen representative was false. Plaintiffs cannot claim justifiable reliance based on Hawkins's alleged failure to disclose.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Defendants made no false representations, and there was no "special" relationship between the parties. Even if there were such a relationship, plaintiffs could not justifiably have relied on the representations. Defendants' motion for summary judgment on plaintiffs' claims for negligent misrepresentation shall therefore [*22] be granted.

**CONCLUSION**

It is, therefore,

**Ordered that:**

Defendants' motion for summary judgment be, and hereby is, granted.

**So ordered.**

6/24/03

/s/ James G. Carr

United States District Judge