# EXHIBIT R

ROBERT I. WAYNE, et al., Plaintiffs, v. 360 COMMUNICATIONS COMPANY, SPRINT CELLULAR COMPANY, PINNACLE MERGER SUB, INC., and ALLTEL CORPORATION, Defendants.

No. 5:99-CV-65-BR(2)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA, WESTERN DIVISION

1999 U.S. Dist. LEXIS 9727

April 30, 1999, Decided
April 30, 1999, Filed

**DISPOSITION:** [*1] Defendants' motion to dismiss ALLOWED as to Plaintiffs' claim of intentional interference with a fiduciary business relationship (Count I) DISMISSED. Defendants' motion to dismiss DENIED as to Plaintiffs' remaining claims.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants moved to dismiss plaintiffs' action, which raised claims of intentional interference with a fiduciary business relationship, intentional interference with contractual relations, fraudulent concealment, and unfair or deceptive acts or practice, for failure to state a claim.

**OVERVIEW:** Plaintiff partners filed suit against defendants, raising claims of intentional interference with a fiduciary business relationship, intentional interference with contractual relations, fraudulent concealment, and unfair or deceptive acts or practices, in connection with an alleged secret deal between defendant employer and plaintiff's former partner. Defendants moved to dismiss plaintiffs' action on the ground that the complaint failed to state a claim. The court granted the motion to dismiss on the intentional interference with a fiduciary business relationship claim because it was not recognized in North Carolina. The court denied, however, the motion as to the remaining claims. The court ruled that because no legitimate business purpose existed for inducing the former partner to conceal defendant employer's offer of employment, plaintiffs alleged sufficient facts to establish its intentional interference with contractual relations claim. The court also held that allegations regarding negotiations between the partnership and defendant employer, and its alleged omissions of material facts therein, were sufficient to satisfy the fraud pleading requirements of *Fed. R. Civ. P. 9(b)*.

**OUTCOME:** The court granted the motion to dismiss on the claim of intentional interference with a fiduciary business relationship because it was not a recognized cause of action in North Carolina. The court denied, however, the motion as to the remaining claims because plaintiffs raised sufficient allegations to support the claims and entitle them to relief.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*

[HN1]A motion to dismiss for failure to state a claim should not be granted unless it appears certain that plaintiff can prove no set of facts which would support his claim and entitle him to relief.

*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*

[HN2]In deciding on a motion to dismiss, the court must accept all well-pleaded allegations in the complaint as true and must construe any ambiguities in favor of the plaintiff.

*Torts > Business & Employment Torts > Interference With a Contract*

*Torts > Business & Employment Torts > Interference With Prospective Advantage*

[HN3]North Carolina law recognizes a cause of action for tortious interference with contractual relations and for tortious interference with prospective contractual relations.

*Torts > Business & Employment Torts*

[HN4]North Carolina does not recognize a cause of action for tortious interference with business relations.

*Torts > Business & Employment Torts > Interference With a Contract*

[HN5]To state a claim for tortious interference with contractual relations, a plaintiff must allege that: (1) a valid contract existed between the plaintiff and a third person, conferring on plaintiff some contractual right against the third person, (2) defendant had knowledge of the plaintiff's contract with the third person, (3) defendant intentionally induced the third person not to perform his contract with the plaintiff, (4) defendant

acted without justification, and (5) defendant's act caused plaintiff actual damages.

*Torts > Business & Employment Torts > Interference With a Contract*

[HN6]Interference with a contract is justified when it is motivated by a legitimate business purpose.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN7]The elements of fraud are: (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN8]For silence to constitute actionable fraud, it must relate to a matter known by the party which they had a legal duty to communicate to plaintiff.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN9]A legal duty to disclose may arise from a relation of trust or confidence, inequality of condition or knowledge, or other attendant circumstances.

*Torts > Business & Employment Torts > Deceit & Fraud*

[HN10]A legal duty to disclose may arise in situations where parties are dealing at arm's length and one party has taken affirmative steps to conceal material facts from the other.

*Business & Corporate Entities > Agency*

[HN11]An agent's knowledge is not imputed to his principal when the agent is in reality acting in his own business or for his own personal interest and adversely to the principal, or has a motive in concealing the facts from the principal.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*

[HN12]*Fed. R. Civ. P. 9(b)* provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*

[HN13]*Fed. R. Civ. P. 9(b)* provides that malice, intent, knowledge, and other conditions of the mind of a person may be averred generally.

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*

[HN14]To state a claim for unfair or deceptive trade practices under the North Carolina Unfair or Deceptive Trade Practices Act, *N.C. Gen. Stat. § 75-1.1* (1994), a plaintiff must allege that: (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce, (3) that proximately caused injury to plaintiff or her business.

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*

[HN15]A fraud claim is sufficient to sustain a claim of unfair or deceptive trade practices.

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*

[HN16]The North Carolina Unfair or Deceptive Trade Practices Act, *N.C. Gen. Stat. § 75-1.1(b)* provides that "commerce" includes all business activities however denominated, but does not include professional services rendered by a member of a learned profession.

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices*

[HN17]The bulk sale of a business' assets falls within the North Carolina Unfair or Deceptive Trade Practices Act, *N.C. Gen. Stat. § 75-1.1* (1994).

**COUNSEL:** For ROBERT I. WAYNE, HOWARD R. IRVIN, III, JOE ALLEN SIMS, ANDREW H. LOGAN, RODMAN E. VAN SCIVER, WILLIAM E. ALEXANDER, RICHARD L. SENIOR, III, GORDON C. SEABERT, CAROL J. SEABERT, FLOYD A. WISDOM, SHAWN A. WISDOM, ROBIN R. FORSBERG, RAYMOND BUCCI, WALTER D. MCLAUGHLIN, plaintiffs: R. Daniel Boyce, Raleigh, NC.

For ROBERT I. WAYNE, HOWARD R. IRVIN, III, JOE ALLEN SIMS, ANDREW H. LOGAN, RODMAN E. VAN SCIVER, WILLIAM E. ALEXANDER, RICHARD L. SENIOR, III, GORDON C. SEABERT, CAROL J. SEABERT, FLOYD A. WISDOM, SHAWN A. WISDOM, ROBIN R. FORSBERG, RAYMOND BUCCI, WALTER D. MCLAUGHLIN, plaintiffs: Kenneth Haber, Rockville, MD.

For 360 COMMUNICATIONS COMPANY, SPRINT CELLULAR CO., PINNACLE MERGER SUB, INC., ALLTEL CORPORATION, defendants: Johnny M. Loper, Womble, Carlyle, Sandridge & Rice, Raleigh, NC.

**JUDGES:** ALEXANDER B. DENSON, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** ALEXANDER B. DENSON

**OPINION:** MEMORANDUM AND RECOMMENDATION

This cause comes before the court on Defendants' [*2] motion to dismiss. Plaintiffs have responded, Defendants have replied, and this matter is now ripe for ruling.

**I. Procedural Background**

On December 10, 1998, Plaintiffs filed this action in Wake County Superior Court. On January 25, 1999, Defendants removed the action to this court. Plaintiffs raise the following claims for relief: intentional interference with a fiduciary business relationship, intentional interference with contractual relations, fraudulent concealment, and unfair or deceptive acts or practices. They seek compensatory and punitive damages.

On March 1, 1999, Defendants filed a motion to dismiss. On March 22, 1999, Plaintiffs responded, and on April 5, 1999, Defendants replied.

**II. Factual Background**

Plaintiffs are former limited partners in the GMD Partnership ("GMD"), a California limited partnership that was voluntarily dissolved on January 31, 1996. n1 The general managing partner of GMD was Gary M. Doyle.

------------- Footnotes ---------

n1 Some Plaintiffs are former partners in the Palmcell General Partnership, a California general partnership that held a limited partnership interest in GMD.

------------ End Footnotes--------

[*3]
GMD's assets consisted almost entirely of a license issued by the Federal Communications Commission and a wireline cellular communications system for Rural Service Area 14 ("RSA 14") in the Greenville, North Carolina area. In April of 1994, GMD began discussions with Defendant Sprint Cellular Company ("Sprint") regarding the possible sale of its assets to Sprint. n2



n2 Defendant Sprint was later renamed 360 Communications Company ("360"). Defendant Pinnacle Merger Sub, Inc. merged into Defendant 360, and Defendant 360 became a subsidiary of Defendant ALLTEL.

------------ End Footnotes--------

On July 27, 1994, several of GMD's limited partners filed a lawsuit in federal district court against Doyle. Although Doyle continued to manage GMD, the plaintiffs in the 1994 action notified Defendant Sprint that they had established an "Oversight Committee" to review transactions regarding GMD.

On September 11, 1995, Defendant Sprint offered $ 28 million for GMD's assets, which GMD did not accept. On October 2, 1995, Defendant Sprint raised its offer [*4] to $ 32.6 million and GMD did not accept. However, on October 6, 1995, Defendant Sprint again offered $ 32.6 million, and Doyle, on behalf of GMD, accepted the offer. On October 12, 1995, Doyle notified all partners of GMD of the proposed sale to Defendant Sprint.

On December 11, 1995, Doyle signed a final Asset Purchase Agreement ("APA") with Defendant Sprint. Doyle sent copies of the APA to Plaintiffs.

On January 31, 1996, the plaintiffs in the 1994 action settled their lawsuit with Doyle and discharged Doyle from all claims involving GMD. Also on that day, the transaction involving the sale of GMD's assets to Defendant Sprint closed. For approximately one year after the closing, Doyle was employed by Defendant Sprint.

Plaintiffs allege that Defendant Sprint induced Doyle to sell GMD's assets at a price below fair market value by offering him employment with Sprint. (Id. PP 63, 72) They further allege that Defendant Sprint "caused Gary M. Doyle to fail to disclose to his partners the existence or the contents of his ancillary employment agreement." (Id. P 83) On June 22, 1998, an independent appraiser concluded that the fair market value of RSA 14 on January 31, 1996 was [*5] $ 44 million. (Id. P 62)

**III. Standard for Motion to Dismiss**

[HN1]A motion to dismiss for failure to state a claim should not be granted unless it appears certain that plaintiff can prove no set of facts which would support his claim and entitle him to relief. See *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957), cited in *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995). [HN2]The court must accept all well-

Page 3

pleaded allegations in the complaint as true and must construe any ambiguities in favor of the plaintiff. See *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).*

### IV. Defendants' Motion to Dismiss

A. Intentional Interference With a Fiduciary Business Relationship (Count 1)

Defendants argue that North Carolina courts have not recognized a claim of intentional interference with a fiduciary business relationship.

[HN3]North Carolina law recognizes a cause of action for tortious interference with contractual relations, see *Childress v. Abeles, 240 N.C. 667, 84 S.E.2d 176 (1954)*, and for tortious interference with prospective contractual [*6] relations, see *Johnson v. Gray, 263 N.C. 507, 139 S.E.2d 551 (1965).* However, although many jurisdictions recognize a cause of action for tortious interference with business relations, see, e.g. *Beall v. Abbott Lab., 130 F.3d 614, 621 (4th Cir. 1997)* (applying Maryland law); *Larouche v. National Broad. Co., Inc., 780 F.2d 1134, 1138 (4th Cir. 1986)* (applying Virginia law), [HN4]North Carolina has not recognized this cause of action, see *Noell v. Winston, 51 N.C. App. 455, 457, 276 S.E.2d 766, 768 (1981)* (declining to reach issue); *American Hot Rod Ass'n, Inc. v. Carrier, 500 F.2d 1269, 1275 (4th Cir. 1974)* (finding no error in district court's denial of motion to amend to add tortious interference with business relations claim).

Even if North Carolina courts were to recognize a cause of action for tortious interference with business relations, it is unlikely that they would do so in this case, where a valid, enforceable contract existed between parties involved in a fiduciary relationship. Plaintiffs allege that Defendants interfered with the fiduciary relationship between GMD's general partner, Gary M. Doyle, and its limited partners. This relationship is governed [*7] by the parties' partnership agreement. Therefore, Plaintiffs' remedy lies in a cause of action for tortious interference with contractual relations, and Plaintiffs' claim of intentional interference with a fiduciary business relationship (Count I) should be DISMISSED.

B. Intentional Interference With Contractual Relations (Count II)

Defendants argue that Plaintiffs' claim for intentional interference with contractual relations fails because the proximate cause of Plaintiffs' damages was Plaintiffs' failure to satisfy themselves of the "fairness" of Defendant Sprint's offer.

[HN5]To state a claim for tortious interference with contractual relations, a plaintiff must allege that: (1) a valid contract existed between the plaintiff and a third person, conferring on plaintiff some contractual right against the third person; (2) defendant had knowledge of the plaintiff's contract with the third person; (3) defendant intentionally induced the third person not to perform his contract with the plaintiff; (4) defendant acted without justification; and (5) defendant's act caused plaintiff actual damages. See *Childress v. Abeles, 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954).*

Plaintiffs [*8] allege that a valid partnership agreement existed between Plaintiffs, GMD's limited partners, and Gary M. Doyle, GMD's general partner. (Compl. P 77) Plaintiffs also allege that "Defendant Sprint Cellular was provided with copies of both the original and restated written Partnership Agreement of GMD." (Id. P 79) Plaintiffs allege that Defendant Sprint induced Doyle to breach his fiduciary duty under the partnership agreement by offering him employment. Id. P 81) Moreover, Plaintiffs allege that Defendant Sprint "caused Gary M. Doyle to fail to disclose to his partners the existence or the contents of his ancillary employment agreement." Id. P 83) In addition, Plaintiffs allege that Defendant Sprint's acts caused them actual damage because Defendant Sprint obtained a "significantly lower than market-value sales price" for GMD's assets. (Id. P 85)

Plaintiffs have sufficiently alleged that Defendant Sprint's tortious behavior was the proximate cause of their damages. Although Plaintiffs could have obtained an independent appraisal of GMD's assets, they had no duty to do so. Likewise, Plaintiffs had no duty to inquire whether Defendant Sprint offered Doyle, their fiduciary, [*9] an employment opportunity. Therefore, assuming Plaintiffs' allegations to be true, the proximate cause of their damages was Defendant Sprint's act of inducing Doyle to conceal his employment negotiations from his partners. (Compl. P 83)

Defendants also argue that Defendant Sprint acted with justification in offering Doyle an employment opportunity with Sprint. [HN6]Interference with a contract is justified when it is motivated by a legitimate business purpose. See *Embree Constr. Group, Inc. v. Rafcor, Inc. 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).*

Plaintiffs allege not only that Defendant Sprint offered Doyle an employment opportunity, but also that it induced him to conceal from his partners the existence

of that opportunity. Because no legitimate business purpose exists for inducing Doyle to conceal Defendant Sprint's offer of employment from his partners, Plaintiffs have alleged facts that contradict Defendants' assertion that Defendant Sprint acted with justification.

Accordingly, Defendants' motion to dismiss Plaintiff's claim of intentional interference with contractual relations (Count II) should be DENIED.

C. Fraudulent Concealment (Count III)

Defendants argue [*10] that Plaintiffs have failed to state a claim for fraud because Defendants did not owe a duty to disclose any information to Plaintiffs.

[HN7]The elements of fraud are: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; and (5) results in damage to the injured party. See *Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)*. [HN8]For silence to constitute actionable fraud, "it must relate to a matter known by the defendants which they had a legal duty to communicate to plaintiff." *Breeden v. Richmond Community College, 171 F.R.D. 189, 196 (M.D.N.C. 1997)*.

[HN9]A legal duty to disclose may arise from a relation of trust or confidence, inequality of condition or knowledge, or other attendant circumstances. See id. [HN10]It may also arise "in situations where parties are dealing at arm's length and one party has taken affirmative steps to conceal material facts from the other." See id.

Plaintiffs allege that Defendant Sprint had superior knowledge regarding its employment negotiations with Doyle. (Compl. PP 91, 92) Plaintiffs also allege that Defendant Sprint took [*11] affirmative steps to conceal its employment negotiations from them. (Compl. PP 90, 92) Taking these allegations as true, a duty to disclose arose on the part of Defendant Sprint to inform Plaintiffs of its employment negotiations with Doyle.

Defendants also argue that Doyle's knowledge is imputed to Plaintiffs because knowledge possessed by one partner in a partnership is imputed to the other partners. However, [HN11]an agent's knowledge is not imputed to his principal when the agent "is in reality acting in his own business or for his own personal interest and adversely to the principal, or has a motive in concealing the facts from the principal." *Federal Reserve Bank v. Duffy, 210 N.C. 598, 603, 188 S.E. 82, 84 (1936)*. Because Plaintiffs allege that Doyle acted adversely to GMD's interests and concealed facts from his partners, his knowledge is not imputed to Plaintiffs.

In addition, Defendants argue that Plaintiffs failed to plead fraud with particularity, as required by *Rule 9(b) of the Federal Rules of Civil Procedure*. Specifically, Defendants contend that Plaintiffs do not identify Defendants' agents who had a duty to disclose and do not allege facts from which a duty to disclose [*12] could arise.

[HN12]Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b)*; see also *Breeden v. Richmond Community College, 171 F.R.D. 189, 195 (M.D.N.C. 1997)* (stating pleading requirements under Rule 9(b) with respect to fraud by omission). [HN13]The rule further provides that "malice, intent, knowledge, and other conditions of the mind of a person may be averred generally." Id.

As mentioned previously, Plaintiffs have alleged facts from which a duty to disclose would arise. Plaintiffs allege that Defendant Sprint had superior knowledge regarding its employment negotiations with Doyle and caused Doyle to conceal those negotiations from Plaintiffs. (Compl. PP 90-94) Although Plaintiffs do not name Defendant Sprint's agents whom they believe had a duty to disclose, they do allege that information regarding Defendant Sprint's employment negotiations with Doyle should have been disclosed in the Asset Purchase Agreement. (Compl. P 93) Plaintiffs also describe in detail the negotiations between GMD and Defendant Sprint, Defendant Sprint's alleged omissions of material facts during [*13] those negotiations, and the circumstances surrounding Doyle's alleged breach of fiduciary duty. These allegations are sufficient to satisfy the pleading requirements of Rule 9(b).

Since Plaintiffs have stated a claim for fraud with particularity, Defendants' motion to dismiss Plaintiffs' fraudulent concealment claim (Count III) should be DENIED.

D. Unfair and Deceptive Trade Practices Claim (Count IV)

Defendants argue that Plaintiffs have failed to state a claim for unfair and deceptive trade practices because a breach of contract claim ordinarily cannot sustain a claim for unfair trade practices.

[HN14]To state a claim for unfair or deceptive trade practices under the North Carolina Unfair or Deceptive Trade Practices Act ("the Act"), a plaintiff must allege that: (1) defendants committed an unfair or deceptive act or practice; (3) in or affecting commerce; (3) that proximately caused injury to plaintiff or her business.

See *N.C.G.S. § 75-1.1* (1994); *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). A simple breach of contract, absent aggravating circumstances, does not violate the Act. See *Bartolomeo v. S.B. Thomas, Inc.*, 889 [*14] F.2d 530, 535 (4th Cir. 1989).

Plaintiffs do not raise a breach of contract claim in their complaint. (Pl.s' Mem. in Opp. to Mot. to Dismiss at 11) Instead, Plaintiffs state claims for tortious interference with contractual relations and fraudulent concealment. [HN15]A fraud claim is sufficient to sustain a claim of unfair or deceptive trade practices. See *Johnson v. Beverly-Hanks & Associates, Inc.*, 328 N.C. 202, 211-12, 400 S.E.2d 38, 43 (1991); *Douglas v. Doub*, 95 N.C. App. 505, 515, 383 S.E.2d 423, 428 (1989).

Defendants also argue that the sale of a business' assets does not constitute commerce. [HN16]The Act provides that "'commerce' includes all business activities, however, denominated, but does not include professional services rendered by a member of a learned profession." *N.C.G.S. § 75-1.1(b)*. Courts have found that [HN17]the bulk sale of a business' assets falls within the Act. See *First Atlantic Management, Corp. v. Dunlea Realty, Co.*, 131 N.C. App. 242, 507 S.E.2d 56, 63 (1998) (noting that sale of realty company's property management accounts falls within the purview of the Act); *Pridgen v. Shoreline Distrib., Inc.*, 114 N.C. App. 94, 95-96, 441 S.E.2d 184, [*15] 185 (1994) (upholding finding of unfair trade practice for fraudulent concealment during sale of plaintiffs' business); *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041, 1046 (E.D.N.C. 1979) ("The [Act] would apply to a bulk sale of a business' assets as much as it would to a consumer sale.").

Therefore, Plaintiffs have alleged that Defendants committed an unfair or deceptive act in or affecting commerce, thereby stating a claim for unfair or deceptive trade practices. The undersigned recommends that Defendants' motion to dismiss this claim be DENIED. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n3 Defendants also argue that Plaintiffs' damages were not proximately caused by Defendants' acts. However, as mentioned previously, assuming Plaintiffs' allegations to be true, Plaintiffs' damages were proximately caused by Defendant Sprint's inducing Doyle to conceal his employment negotiations from his partners.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

## V. Conclusion

The undersigned recommends that Defendants' motion to dismiss be ALLOWED as to Plaintiffs' claim of intentional [*16] interference with a fiduciary business relationship (Count I) and that this claim be DISMISSED. The undersigned recommends that Defendants' motion to dismiss be DENIED as to Plaintiffs' remaining claims.

SO RECOMMENDED, this the 30th day of April, 1999.

ALEXANDER B. DENSON

UNITED STATES MAGISTRATE JUDGE