# EXHIBIT G

# PLAINTIFF'S DEPOSITION EXHIBIT # 7

CONFIDENTIAL

## April 4th Unifi Meeting Summary
2001    (At Unifi Headquarters)

Attendees:
1. **Michael E. Delaney**, Sr. V.P. Marketing and Strategic Planning (336-316-5511). He is Ron Smith's boss and was recruited by the new CEO 15 months ago from Volvo truck (top marketing person), is from Seattle, lived on Long Island, in Phila. (Devon), outside Morristown, NJ and I think Chicago. He is approx. 5'10", 160#, gray hair, blur eyes, no glasses, direct personality, a little in your face type, corporate type, sailor who has a sailboat on local lake; sailed on Long Island Sound. Mike was pretty aggressive when we started but calmed down as we discussed things. He was mad about the rumors and holds Cleaver Associated responsible. He seemed to be put out with Mebane as well. He professes to be a solid supporter of the nonwoven business, but some of what he said doesn't support that. Neither he nor any of the others present understand the nonwoven business or its development. I think he will stay close to this transaction, but that Ron will do or supervise most of the work. Ron will have a big influence on Mike. In the end, I think Mike will be supportive unless the rumor thing starts again or unless he get nervous that Avgol won't show up with the money in the end.
2. **Ronald L. Smith**, Director of Business Development (336-316-5545). Recruited from Ernst and Young as Chief Accounting Officer for Unifi. After that was put in charge of developing Six Sigma program for the company to develop cost savings to get the company to the "right" cost structure. Now, has been promoted to new job working for Mike Delaney. The Business Development group handles strategy development, purchasing for the corporation, and M&A. Ron is about 37yrs, 6'2", 220#, red hair, no glasses, easy smile, approachable, good listener. Seems to be solidly in favor of selling the business – at one point he said "this is not the only thing we are getting out of." He will clearly be the main person driving the transaction, but Mike Delaney will be the final person making the recommendation to the CEO and board. I expect Mike will be significantly influences by Ron, although Mike is very opinionated (and not well informed about the nonwoven business which is dangerous for us). Ron gave me projections from their business plan that I think are unachievable (EBIT of approximately 26% which is what they evidently the basis for their entry into the business).
3. **Christopher P. Dixon**, Financial Modeling Analyst (336-679-8891). Works as analyst for Ron Smith.
4. **Bill Rhew**, title unknown, manufacturing technology background. Works for Ron Smith.


EXHIBIT
Pl. 7

HAGY 1172

CONFIDENTIAL

Items Discussed:
1) **Communication Protocol** – all communications between the two companies to be channeled through Ron Smith and me.
2) **History** of both company's background in nonwovens and discussions between the two companies related to working together, with emphasis on the recent discussions.
   a) Ron questioned how we got to a discussion of acquisition vs. joint venture. I told him that I wasn't sure, but I thought it was because Mike Mebane insisted on majority control for Unifi.
   b) I covered in detail the points we made in the letter Moshe sent re the reasons for the delay, etc. I think they are satisfied on those points.
3) **Process** – There was considerable discussion of what the process should be. I reviewed with them our time schedule, including our need to know for sure if we were going forward within 30 days. They indicated that time schedule was attractive to them. We discussed their needs, which include:
   a) A new confidentiality agreement (the old one lapsed). I agreed that Avgol and I would sign such an agreement. They will draft it.
   b) A purchase price (range) and reasons for adjustments including mechanisms. Based on my discussion with Moshe the other day I gave them the following verbal indication:
      i) Target Purchase Price of $38 million (maximum $40mm, minimum $35mm) adjusted
         (1) Higher/lower productivity and costs than expected
         (2) Higher/lower quality than required, particularly if machine upgrades or other incremental modifications are required since their technology is two years old now.
         (3) Higher/lower based on any sales contracts in place considering duration and profitability.
      ii) Avgol would purchase qualified inventories and receivables net of any assumed liabilities.
      iii) Purchase price would be paid in cash at closing.
   c) Evidence of Avgol's capability of financing such a transaction. I indicated Avgol's bank was Bank Hapoalim, B.M., and that I would send a copy of the letter from them that Moshe sent me. This letter will probably by ok for now, but I do not think it will be sufficient for them to sign a binding letter of Intent, and we need to work hard and fast to develop a more acceptable commitment without actually getting a commitment letter (which typically costs a lot of money).
   d) A description of the due diligence process we intend to use. I gave the briefest summary. We will need to decide the specifics SOON!
   e) A list of due diligence items required by us. (This will ultimately need to include the assignment list for our auditors.) We sent a partial list to Mike Mebane, which I don't think Ron Smith has seen. A full list, to the extent we know it, needs to be developed SOON!!
   f) A firm timetable to complete the transaction. I reiterated our need for a decision within 30 days. Based on that the following time schedule was agreed upon, assuming we can agree on a Letter of Intent by next Wednesday or Thursday:

HAGY 1173

CONFIDENTIAL
===========

i) First draft of LOI to Ron by April 9. I discussed with them our need for a period of exclusivity and a firm understanding of the price and adjustment causes/mechanisms before we would sign a LOI or begin diligence.
ii) Response to our draft by April 10 or 11AM.
iii) Our reply to them April 11 or 12AM for signature. This will need to address the details outlined above in a satisfactory way, or it won't happen! This is their part of the party and they get to choose the song ;-))
iv) Due diligence teams arrive to begin the process o April 16. This would include Avgol personnel, Ernst and Young personnel, lawyers if we need them, and me. They have insisted that Cleaver Associated stay out of the process until a binding agreement is reached (and they indicated their intention to hold Mebane out as well).
v) First round of due diligence completed April 20.
vi) Drafting of amendment to LOI to make it binding needs to go on simultaneously with diligence and early the week after. IT WILL BE IMPORTANT TO FIRM UP THE BANK COMMITMENT!!! HOW MUCH MONEY WILL THEY PROVIDE AND UNDER WHAT CIRCUMSTANCES – INCLUDING SPECIFIC DUE DILIGENCE QUESTIONS. I think it would be worthwhile to bring them in on our due diligence process to get a head start on what they will need to get to the final approval of the financing (as well as a firmer letter for us). Modified LOI signed by April 25th before their board meeting on the 26th.
vii) Definitive Agreement completed and Closing held within 30 to 45 days following binding LOI.

Overall, the meeting went much better than I had thought it would. The concern I have are comments by Mike Delaney that they would be deciding within the next week whether they would sell the business and comments by Mike and Ron that there was one other prospective buyer that approached them, which was qualified and with whom conversations were underway.

However, I think they will sell this business, and I think we are the favored purchaser. To maintain that position, we will have to keep on track. Needless to say, there is a TREMENDOUS amount of work that needs to be done in a VERY short period of time. We will never keep it together if we aren't exactly in synch on the key issues and the things that have to get done. The following is a list we need to address to start with in addition to the items above.
1) We need to have a conference call to be sure we are all on the same page.
2) If you want me to handle things here, I need some kind of authority to commit the company and spend money:
   a) We need to hire a lawyer to do our drafting on very short notice.
   b) We need to hire an accounting firm and arrange for a due diligence team to be on site the week after next. (That will be some trick!)
   c) I will be incurring some expenses like travel and communications and need to know how to handle these and others as they come up.

HAGY 1174

<u>CONFIDENTIAL</u>

3) I know that I need to finish a draft of the agreement between us, but won't likely be able to get to it for the next couple of weeks. I think getting the deal on track is more important, and I don't have time for both. I assume what we discussed, i.e. $300,000 the first year, $250,000 the second and $150,000 for years 3, 4 and 5, each paid in two installments semiannually in advance is still ok with you. I understand Shuki and Nir would like to have a prenuptial agreement, and I am thinking about that. Following our discussions in Miami, I told Moshe that I was thinking about pushing out the payment schedule to be less burdensome on the company. When I have a chance in the next couple of weeks, I will try to get a draft to you.
4) I will send a copy of the bank letter to Ron on Friday.
5) Moshe needs to let me know why the joint venture didn't work out with Unifi and I will pass it on, if it is different than what I already told them.
6) We need to set a schedule to review amongst ourselves the LOI, so we can have it to them Monday PM.
7) Assuming we hire E&Y, I need to give Ron a list of the participating E&Y personnel to see if he worked with them. (they may be conflicted)
8) I need the name and contact information of a person at E&Y you would like me to give to the E&Y people here for reference checks they will make.

I am not in my office Thursday. I may be reachable by cell 864-630-1008 after 2:30PM EST. I will be in Friday after 10:30AM.

Talk to you soon.

Dexter

HAGY 1175