# EXHIBIT V

**PLAINTIFF'S DEPOSITION EXHIBIT # 12**

April 20, 2001

UNIFI, INC.
7201 West Friendly Avenue
Greensboro, NC 27419-9109

Attention: Michael E. Delaney, Senior Vice President

Gentlemen and Ladies:

This letter will summarize the conversations we have had concerning the Acquisition referred to below.

1. *The Proposal.* We hereby confirm our intentions regarding the acquisition (the "*Acquisition*") of certain of the assets, and assumption of certain of the liabilities, of your operations as conducted by Unifi Technical Fabrics, LLC in Mocksville, NC (related to the manufacture and sale of spunbonded nonwoven fabric primarily used in the healthcare and personal hygiene industries, hereinafter the "*Business*") by a company owned and controlled by AVGOL, LTD (the "Purchaser"). When accepted by you as set forth below, this letter will constitute the preliminary understanding of the parties concerning the Acquisition.

   a. *Assets.* The assets will consist of all assets used primarily in connection with the Business as of the Closing Date (as hereinafter defined), and will include, without limitation, the Mocksville, NC real estate, fixed assets including spare parts, intellectual property and contract rights, and will exclude all other assets not specifically enumerated in the definitive documentation, including without limitation, cash and cash equivalents. The assets conveyed will include all of your assets reasonably necessary for the conduct of the Business as conducted on the Closing Date and will include all assignable performance bonds (if any), all rights and guarantees of suppliers of machinery and equipment and all governmental incentives. The treatment of accounts receivable and inventories will be determined during negotiations between the parties.

   b. *Liabilities.* The liabilities to be assumed by the Purchaser may include certain of the accounts payable and accrued liabilities of the Business existing as of the Closing Date as shall be mutually agreeable to the parties, all obligations under assumed contracts and all obligations with respect to the conduct of the Business after the Closing Date.

2. *Purchase Price.* Based upon the information you have provided us, our understanding of the Business and related industry, and our due diligence investigations to date, AVGOL is prepared to provide you aggregate transaction consideration (the "*Transaction Consideration*") of $42.7 million for the Mocksville, NC real estate and fixed assets (including fixed assets



HAGY 0002

April 20, 2001
Page 2

located in other Unifi operations necessary for the conduct of the Business) of the Business less any liabilities assumed, payable in cash to be delivered to you at the closing of the Acquisition (the "*Closing*"), subject to satisfactory completion of our due diligence.

3.   *Financing*. The Purchaser's proposal to acquire the Business is subject to the Purchaser obtaining necessary financing from Bank Hapoalim. No later than May 1, 2001, we will provide you with a binding commitment letter from this source (or replacement sources reasonably satisfactory to you), which may contain usual and customary conditions to closing, including completion by the lender of its due diligence relating to the Business or the Acquisition. If such commitment letters are not so furnished, all rights and obligations under this letter shall cease.

4.   *Definitive Documentation; AVGOL Guarantee*. Upon the completion of our due diligence, the parties will promptly draft, negotiate and execute a binding letter agreement in such form as shall be mutually satisfactory, containing such representations, warranties and indemnities as are customary in transactions of this nature which shall serve as the basis for a definitive asset purchase agreement. You will agree that, for a period of five years after the Closing Date, you and your affiliates will not engage in the Business.

AVGOL will guarantee all of the Purchaser's obligations under the Purchase Agreement until such time (if any) as the Acquisition is consummated by the Purchaser. You and we agree to negotiate in good faith to finalize and execute, the Purchase Agreement and other definitive documents for the Acquisition as soon as is reasonably practicable, and otherwise to consummate the Acquisition on an expeditious basis.

5.   *Conditions*. Conditions to closing to be contained in the definitive documentation will include conditions customary or appropriate for transactions of this type, including without limitation (a) the absence of any material adverse change in the Business  (b) obtaining all governmental and third party consents and approvals necessary or desirable to facilitate consummation of the transaction, including without limitation filings (the "*H-S-R Filings*"), and expiration of the waiting period (the "*H-S-R Waiting Period*"), under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, (c) our satisfaction with the results of our due diligence review of the Business, (d) our reasonable satisfaction with the results of a Phase I Environmental Report prepared by environmental consultants of your choosing and (e) the execution of mutually agreeable legal documentation for the Acquisition (including without limitation employment and non-competition agreements, reasonably satisfactory to us, with key members of the Business's management, whom we will have previously identified to you by reference to employment position). We expect that we will be able to complete our due diligence investigation within 3 weeks after your acceptance of this letter. It may not be necessary to make the H-S-R Filings due to the "size" of the Purchaser for purposes of determining if the H-S-R Filings must be made, and, in the event we determine that the H-S-R Filings do not have to be made, we will give you appropriate representations with respect to this issue. If the H-S-R

HAGY 0003

April 20, 2001
Page 3

Filings are required to be made, you and we shall use all commercially reasonable efforts to make the H-S-R Filings and have the H-S-R Waiting Period terminated as promptly as practicable.

    6.    *Management Arrangements*. AVGOL values its employees and looks forward to long-term relationships with them. We look forward to working with management, and intend to compensate employees consistent with good management and industry practices.

    7.    *Continuation of Employees*. No later than six weeks after your acceptance of this letter, we will identify to you the employees of the Business to whom the Purchaser will not extend offers of employment. The Purchaser will extend offers of employment to all other employees of the Business, and will be responsible for any costs associated with the termination of the employment of such employees who accept employment with Purchaser. You will be responsible for the termination costs, if any, of all employees who are not employed by Purchaser.

    8.    *Timing*. You and AVGOL and its advisers and financing sources will cooperate fully and will devote the necessary resources to consummate the Acquisition expeditiously in accordance with this letter. We anticipate that the Acquisition should be able to be closed promptly following the expiration of the H-S-R Waiting Period. If a binding Letter of Intent has not been executed by May 10, 2001, all rights and obligations under this letter shall cease. Provided however, Avgol, at its option, may elect to pay to Unifi a nonrefundable deposit of $250,000 to extend the term of this agreement through June 30, 2001, such deposit shall be applied to the Transaction Consideration upon consummation of the contemplated acquisition.

    9.    *Conduct of Business*. Prior to the execution of the Purchase Agreement, the Business will be conducted only in the ordinary course of business and you will use your reasonable commercial efforts to maintain the machinery and equipment in good condition and to maintain the value of its business as a going concern.

    10.    *Pre-Closing Agreements*. Subject to such confidentiality agreements as you may reasonably require, and at reasonable times so as not to interfere with the conduct of the Business in any material manner, you agree to provide representatives of AVGOL and its financing sources, including legal, accounting and other representatives, with reasonable access to the Business and all information that any of them reasonably requests. Pending closing of the transaction, neither of the parties will without the consent of the other party make any announcement about such transaction to the public, to the Business' customers or employees, or to any other person or entity unless by law otherwise required.

    11.    *Expenses*. The parties will each bear their own expenses in connection with the transactions contemplated hereby.

HAGY 0004

April 20, 2001
Page 4

12. *Exclusivity.* In consideration of the time and resources that AVGOL will devote to the transactions contemplated hereby and subject to the provisions of paragraph 8 above, you agree that, until June 30, 2001 (so long as good faith negotiations are continuing between the parties), you will not, and you will cause your affiliates, directors, officers, employees, representatives and agents not to, directly or indirectly, solicit or initiate or enter into discussions or transactions with, or encourage, or provide any information to, any corporation, partnership or other entity or group (other than us and our designees) concerning any sale of stock by the stockholders of, or any merger, recapitalization, spin-off or sale of securities or substantial assets of, or any similar transaction or alternative to the Acquisition involving, the Business. You represent that neither you nor any of your affiliated entities is party to or bound by any agreement with respect to any such transaction other than as contemplated by this letter.

13. *Miscellaneous.* This letter sets forth our mutual intentions, but shall not give rise to any binding obligation on the part of any party, except for paragraphs 9,10,11, and 12 of this letter of intent, until execution of a binding letter agreement which we anticipate can be entered into by or before May 10, 2001. This letter constitutes the entire agreement among you, us and/or any of our respective affiliates, and supersedes all prior communications, agreements and understandings, written or oral, with respect to acquisition of the Business by AVGOL. This letter may be signed in counterparts, all of which shall constitute the same agreement, shall be governed by the domestic substantive laws of North Carolina, and shall bind and inure to the benefit of the parties and their respective successors and assigns.

If the foregoing is in accordance with your understanding, please sign this letter in the space indicated below and return it to us.

Very truly yours,

*[signature]*
AVGOL LTD

The foregoing is hereby
agreed to and accepted:

UNIFI, INC

By: *[signature]*
Name: Charles F. McCoy
Title: Vice President, Secretary & General Counsel

UACY 0005