**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Q & R ASSOCIATES, INC., | : | Case No.: C-1-01-641 |
| | : | |
| Plaintiff, | : | Judge Beckwith |
| | : | |
| v. | : | **DEFENDANTS' MEMORANDUM IN** |
| | : | **OPPOSITION TO PLAINTIFF'S MOTION** |
| | : | **FOR PARTIAL SUMMARY JUDGMENT.** |
| | : | |
| | : | |
| UNIFI TECHNICAL FABRICS LLC, et | : | |
| al., | : | |
| | : | |
| Defendants. | : | |

## I.    INTRODUCTION

Q&R's Motion for Partial Summary Judgment should be denied on the grounds,
*inter alia,* that it cannot establish justifiable reliance on any alleged oral statements by
UTF or its agents, because written communications directly contradict the alleged oral
statements.    Specifically, four written communications show that Q&R could not have
reasonably relied on any alleged oral statements of job security or protection against the
possible change of control of UTF.  They are:

> (1)    Mebane's March 30, 2001 email to Quinn (attached as Exh. A);
> (2)    Quinn's April 1, 2001 reply email to Mebane (attached as Exh. B);
> (3)    Mebane's April 2, 2001 reply email to Quinn (attached as Exh. C); and
> (4)    Mebane's April 25, 2001 letter to Quinn (attached as Exh. D).

Not only do the facts show that there could be no reasonable reliance by Q&R, the
relevant case law shows that similar issues have been decided on summary judgment in
favor of the former employer.    Therefore, Q&R's Motion should be denied, and the
Defendants' pending Motion for Summary Judgment should be granted.

1

## II.    RELEVANT FACTS

On March 27, 2001, UTF and Q&R negotiated a possible agreement whereby Q&R would market, sell, and distribute UTF's products.  On March 30, 2001 Mebane (UTF) sent an email to Quinn (Q&R) detailing the "conditions we discussed" and requesting feedback "if I got any of it wrong or I misunderstand anything we agreed to." *See* Exh. A.  Nowhere in this email is a term concerning the protection of Q&R against a possible change of control of UTF.  Q&R rejected this proposal, because it did not provide "dollar amount protection" if UTF were sold and for other reasons.

On April 1, 2001, Quinn replied to Mebane's March 30 email noting that he agreed to the terms in the March 30 email "with 2 exceptions."  *See* Exh. B.  One of those exceptions was the absence of a term protecting Q&R if UTF was sold.  Q&R wanted a term providing such protection.  Mebane's prompt and responsive email did not agree to add such a term.

On April 2, 2001, Mebane responded to Quinn's April 1 email.  *See* Exh. C. Regarding a term protecting Q&R in the event that UTF was sold, Mebane stated:

> . . . I don't know how to approach without a long drawn-out legal department process which usually doesn't work out very well either.  As we discussed this AM, lets commit to making this a mute [sic] point by doing great.  If something does change down the road, I'll look after you guys the same way I am looking after Gene today.

*See Id.*  Q&R did not provide a written response to this email.

On April 25, 2001, Mebane sent a $25,000.00 check to Quinn covering Q&R's April draw.  *See* Exh. D. This letter is relevant for three reasons.  First, it reiterates that UTF and Q&R did not agree on a term to protect Q&R in the event that UTF was sold. Specifically, the letter states that " . . . you [Quinn] understood that I was not able to bind

2

Unifi to anything regarding change of control." *See* Exh. D.  Second, this letter reiterates the parties' agreement to draft a definitive written contract.  Moreover, it states that "without a definitive agreement . . . we are just operating on a month by month basis." *Id.*  Third, the final paragraph shows that the parties did not even agree on the exact nature of the 120-day notice provision, because Mebane requests feedback from Quinn. *Id.*  Once again, Q&R did not provide a written response concerning these issues, although it did cash the check.

Q&R's "*vividly*" drafted timeline in its memorandum stops short of April 25, 2001, so as not to include Mebane's April 25th letter.  *See Plaintiff's Mot. for Partial Summary Judgment*, at 7, 11-12 (emphasis in original).  Moreover, Q&R's timeline omits all three emails referenced above, even though they fall within dates covered by the timeline and are highly relevant to its Motion.  Finally, Q&R's Motion is nearly void of case law supporting its arguments.

## III.    FRAUDULENT INDUCEMENT FAILS AS A MATTER OF LAW

### A.    No Justifiable Reliance

A mere sentence of Q&R's Motion is dedicated to the element of justifiable reliance.  *See Pl. Mot.*, at 14.  Q&R provides no case law to support its position.  Indeed, Q&R seeks to establish justifiable reliance merely on the *ipse dixit* of Quinn and Ranz. As the case law shows, however, Q&R cannot establish justifiable reliance.

#### 1.    No justifiable reliance when writing contradicts the allegation.

First, it is "well established that Ohio law does not allow a party to prove fraud by claiming that the inducement to enter into an agreement was a promise which is squarely contradicted by the written terms of that agreement."  *National City Bank v. Facilities*

3

*Asset Mgmt, Inc.,* 145 Ohio App. 3d 340, 345, 762 N.E.2d 1060 (2001) (citations omitted).  In this case, the email correspondence between Quinn and Mebane from March 30 through April 2, 2001, together with Mebane's April 25, 2001 letter to Quinn show that there was no agreement to provide protection to Q&R if UTF was sold.  In short, these writings squarely contradict the alleged oral statements offered by Q&R.  Therefore, as a matter of law, Q&R cannot establish the element of justifiable reliance for this reason.

**2.    No justifiable reliance on promises concerning future actions or conduct, or opinions.**

Second, "[f]raud cannot be based predicated upon promises or representations relating to future actions or conduct" because such statements "cannot be justifiably relied upon as a matter of law."  *Gouge v. BAX Global Inc.,* 252 F. Supp. 2d 509, 516, 518 (N.D. Ohio 2003).  *Gouge* is a strikingly similar case where the court granted the employer's summary judgment motion.

In *Gouge,* the employee alleged that the employer fraudulently induced him to quit his current job and accept employment with the employer based on statements that it was not going to purchase a fledgling company.  The employer eventually did purchase that company.  The employee alleged that he would not have accepted the offer if he had known that the employer was going to purchase that company.  The court granted summary judgment to the employer because statements relating to future actions or conduct cannot be justifiably relied upon as a matter of law.

Similar to the employee in *Gouge*, Q&R seeks to base its fraudulent inducement claim on alleged oral statements relating to future actions or conduct.  As a matter of law,

4

such statements cannot be justifiably relied upon.  For this reason, Q&R cannot establish the element of justifiable reliance.

The result is the same under North Carolina law.  *See Norman v. Tradewinds Airlines, Inc.,* 286 F. Supp. 2d 575 (M.D. N.C. 2003).  Indeed, *Norman* is another factually analogous case.  In *Norman*, the court held that an alleged oral promise contradicted by writing could not be used as the basis for a claim of fraudulent inducement.  Therefore, the court granted the employer's motion to dismiss.

**B.      No Misrepresentation; No Duty to Disclose**

Q&R alleges that Mebane misrepresented the possible sale of UTF to Avgol by the alleged oral statement, "ain't gonna happen."  *See Pl. Mot.,* at 13.  First, Mebane and UTF dispute that Mebane made this statement.  Second, this alleged statement cannot be viewed in isolation as Q&R would prefer.  Instead, this statement must be viewed in the context of all existing circumstances and communications between UTF and Q&R.

Clearly, exhibits A-D attached hereto show that UTF did not commit to protecting Q&R in the event of a possible sale.  Moreover, when Q&R asked Mebane about industry rumors of a sale between UTF and Avgol, Mebane informed Q&R that meetings between the two parties had occurred, but he could not say more because there was a confidentiality agreement in place between UTF and Avgol. Ranz depo. at 59 (Exh. E); Quinn depo. at 160-161 (Exh. F).  Importantly, Quinn admits he understands that when a confidentiality agreement is in place that serious negotiations are occurring.  Quinn depo. at 156 (Exh. F).  Finally, Quinn admits that at the March 27, 2001 meeting in Florida, Mebane was unable to provide a specific commitment to Q&R in the event of an UTF-Avgol transaction. Mr. Quinn testified:

5

A.      We discussed, again, the rumors of UTF being sold, especially to Avgol, that we would be protected, that there was a commitment being made to Q&R Associates.

Q.      What did Mr. Mebane say?

A.      <u>He said he would have to talk to in-house counsel.</u>

. . . .

Q.      I'm trying to find out what he said.

A.      He said there will be a commitment to Q&R.  <u>He didn't say what that commitment was.</u>

Q.      He didn't say what the commitment was, but he said he wold have to talk to in-house counsel about what that commitment would be?

A.      Right.  <u>I requested a dollar amount.</u>

Q.      And he said he couldn't?

A.      <u>He said we'll have to get the attorneys involved and I said okay.</u>

. . . .

Q.      In fact, you left that meeting not knowing what the commitment was; isn't that true?

A.      I took the man at his word.

Q.      <u>You said there was a commitment, but you didn't know what the commitment was, did you?</u>

A.      <u>I did not</u> [emphasis added].

Quinn depo. at 179-181 (Exh. F); see Ranz depo. at 75, 76 (Exh. E); see

Mebane depo. at 107-109 (Exh. G).

Thus, the correspondence and Q&R's own admissions contradict Q&R's assertion that

UTF misrepresented its discussions with Avgol.

**1.      Q&R misrepresents Mebane's Role in the UTF-Avgol Sale**

6

In support of its Motion, Q&R seeks to place Mebane at the center of the UTF-Avgol sale, thereby attempting to bolster its misrepresentation argument. The evidence on record, however, shows that while Mebane had preliminary discussions with Avgol, he terminated the discussions and referred Avgol to Michael Delaney and Ronald Smith.

Mebane states in his Affidavit that "[w]hen discussions between Avgol and UTF did not proceed satisfactorily, I terminated them in March 2001." Mebane Aff. ¶ 12 (Exh. H). Mebane's sworn statement is supported by the deposition testimony of Michael Delaney and Ron Smith. Delaney testified:

Q: He [Mebane] removed himself from the negotiations [with Avgol]?

A: Yes.

Delaney depo. at 51 (Exh. I). Further, Ron Smith testified that Mebane "blew up the negotiations" and that negotiations were not going forward. Smith depo at 45 (Exh. J). Indeed, Smith even received the same message from Avgol: "I got it from Avgol that Mike [Mebane] was upset about something and that he had cut off the negotiations and said, 'This is it. We're not doing - - we're not moving forward with this.'" *Id.* When asked for elaboration on what he meant by "blew up the negotiations," Smith responded as follows:

> Q: I've heard words like "resurrect" and "blow up the deal." Was the deal dead by mid-March 2001?
> . . .
> A: Yes.
> Q: Okay. Why do you say that it was dead?
> A: I think from Mike's [Mebane] perspective, he was walking away from the deal. . . .

*Id.* at 54.

7

In short, Q&R's Motion misrepresents Mebane's role in the UTF-Avgol negotiations during the time period relevant to this matter.

Regardless, statements of opinion or future conduct simply cannot form the basis of a fraudulent inducement claim. *See Gouge,* 252 F. Supp. 2d at 516. Thus, statements like "ain't gonna happen" cannot form the basis of a fraudulent inducement claim because they relate to future conduct and are opinion.

In the alternative, Q&R asserts that even if there was no misrepresentation, UTF had a duty to disclose the possibility of a change of control of UTF. Once again, *Gouge* is instructive. In *Gouge,* the employee asserted that the employer's "statements that it would not purchase ATI were partial and misleading when made in October and November 1997 . . . because company officials did not disclose the fact that BAX then was engaged in the preliminary investigation of purchasing ATI." *Gouge,* 252 F. Supp. 2d at 517. The court rejected this argument because the employee "cited no legal authority for the proposition that as a job applicant he was entitled to learn" of the employer's interest in purchasing another company. *Id.; see also Sneyd v. Int'l Paper Co.,* 142 F. Supp. 2d 819 (E.D. Mich 2001).

Similarly, UTF had no duty to disclose its possible interest in a change of control. Indeed, the relevant facts in *Gouge* and this case are virtually identical. Therefore, as a matter of law, Q&R cannot meet this element of fraudulent inducement.

Moreover, Q&R's assertion that "there can be no doubt that a relationship of trust and confidence existed between the parties" is unsupported by the record.

> This relationship only occurs in "special" circumstances. Usually the defendant is a professional (e.g. an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class.

8

> This "special" relationship does not exist in ordinary business transactions."

*Hayes v. Computer Assoc. Int'l, Inc.,* 2003 U.S. Dist. LEXIS 10712, *19 (N.D. Ohio June 24, 2003) (citation omitted) (Exh. K). Q&R and UTF are sophisticated parties who were dealing at arms-length in an ordinary business transaction. *See Id.* at *20. Q&R had heard the industry rumors that UTF was negotiating with Avgol at the same time it was negotiating with UTF. *See* Quinn depo. at 153-157 (Exh. F). Therefore, Q&R had actual notice that a confidentiality agreement existed between UTF and Avgol. *See* Ranz depo. at 59 (Exh. E); *see also* Quinn depo. at 160-161 (Exh. F). Q&R knew that when confidentiality agreements were in place that the levels of negotiations were serious. *See* Quinn depo. at 156 (Exh. F). And, Q&R knew, based on written correspondence that UTF did not agree to a term protecting Q&R in the event of a possible change of control of UTF. *See* Exh. A-D. In short, because this was an ordinary business transaction, Q&R had no duty to disclose a possible transaction with Avgol. Moreover, by Q&R's own admissions, it knew of the serious level of negotiations between UTF and Avgol before it agreed to work for UTF.

Because Q&R cannot establish justifiable reliance, misrepresentation, or a duty to disclose, its Motion on fraudulent inducement should be denied.

## IV.   PROMISSORY ESTOPPEL FAILS AS A MATTER OF LAW

In its pending Motion for Summary Judgment, UTF contends that Ohio's conflict of laws analysis shows that North Carolina law should apply to this case. If the Court agrees, then Q&R's promissory estoppel claim must fail because "North Carolina does not recognize the doctrine of promissory estoppel in actions for breach of an employment agreement." *See Swanson v. Chem-Nuclear Sys. Inc.,* 1997 U.S. Dist. LEXIS 16054, *6

(E.D. N.C. September 15, 1997) (Exh. L). UTF does not waive this, or any other position, taken in its pending Motion for Summary Judgment.

Without citing a single case, Q&R asserts that summary judgment is appropriate on its promissory estoppel claim. Once again, the case law shows that it is UTF, not Q&R that should be granted summary judgment.

First, Q&R notes that Mebane informed Quinn that UTF would take care of UTF as it did for Gene Kelly. *Pl. Mot.*, at 4; Exh. C. This statement, however, does not support a promissory estoppel claim. In *Gouge*, the employee alleged that after the employer acquired another company he was told not worry about it and that "we're going to take care of you." *Gouge,* 252 F. Supp. 2d at 520. The *Gouge* court held that this statement would not support a promissory estoppel claim: "Courts do not allow vague assurances of job security to serve as the basis for a promissory estoppel claim." *Id.* at 519. The statement made in this case is virtually identical to that in *Gouge.* For this reason, the Court should follow *Gouge* and grant summary judgment to UTF, not Q&R.

Second, the reasons offered in the fraudulent inducement section above for why Q&R cannot establish justifiable reliance also apply here. For these reasons, the Court should deny Q&R's Motion.

## V. Q&R IS NOT ENTITLED TO ANY COMMISSIONS BECAUSE THERE WAS NO MEETING OF THE MINDS

Summary judgment in favor of Q&R concerning the alleged "guaranteed payments" should be denied because there was no meeting of the minds on all essential terms. As a result, an express or written contract was not formed.

"If the alleged contract is made by conversations and correspondence . . . [and] if the whole correspondence and negotiations show that there were other terms

10

contemplated by both parties, as essential to the proposed contract, on which they fail to agree, there is no contract." *Elks v. N. State Ins. Co.*, 159 N.C. 619, 75 S.E. 808, 810 (N.C. 1912); *see also Noroski v. Fallet*, 2 Ohio St. 3d 77, 79, 442 N.E.2d 1302 (1982) ("The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other").    Such is not the case here.   Q&R never accepted UTF's proposal in Mebane's March 30, 2001 email, and UTF never accepted Q&R's proposal for "dollar amount protection" for Q&R if UTF were sold.

The correspondence between Mebane and Quinn discussed above shows that the parties were still negotiating significant terms of a potential agreement as late as April 25, 2001.  The parties did not agree on a term that would protect Q&R if there was a change of control.  The parties did not even agree on the exact nature of 120-day notice provision that was discussed. *See* Exh. D; *see also Pl. Mot.* at 10. Therefore, no written or express contract existed because there was no meeting of the minds on all proposed, essential terms.

Nonetheless, Q&R began to perform services for UTF without finalizing the terms of the agreement, and thus, without a definitive written or express contract.  Indeed, when Mebane sent a check to Q&R for its April services, the cover letter also stated that the parties were operating on a month-to-month basis until a definitive written agreement was reached.  *See* Exh. D.  Thus, at most, Q&R and UTF had an agreement for UTF to pay a draw against commissions for each month that Q&R provided services.   Q&R received and accepted the only compensation to which it was entitled, the twenty-five thousand-dollar check Mebane enclosed with his April 25, 2001 letter.

11

While the parties discussed a 120-day notice of termination provision, these discussions never resulted in a definitive agreement. Indeed, it appears that Q&R rejected the application of the 120-day notice provision to a situation where there was a change of control of UTF. *See Pl. Mot.* at 10. As Quinn wrote in his April 2, 2001 email: "We do need to discuss a dollar amount." *See* Exh. B. In other words, Q&R wanted more protection than the 120-day notice provision would provide in case of a change of control. Moreover, as discussed above and in UTF's Motion, there was no agreement on a term protecting Q&R in event of a change of control. Thus, there was no meeting of the minds on compensation for Q&R in the event of a change of control.

## VI.    CONCLUSION

Because written correspondence between Q&R and UTF directly contradicts any alleged oral statements by Mebane concerning a change of control of UTF, Q&R cannot establish the element of justifiable reliance. Because there was no meeting of the minds on all essential terms of a potential agreement, Q&R is not entitled to any "guaranteed payments." Therefore, Q&R's Motion for Partial Summary Judgment should be denied.

/s/ Frederick J. McGavran
Frederick J. McGavran (0011284)
Trial Attorney for Defendants Unifi
Technical Fabrics, LLC and
W. Michael Mebane
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6940 Telephone
(513) 651-6981 Facsimile
fmcgavran@fbtlaw.com

12

OF COUNSEL FOR DEFENDANT
UNIFI TECHNICAL FABRICS LLC
Gregory A. Wendling
426 W. Friendly Avenue, Suite A
Greensboro, North Carolina 27401
(336) 274-0001
(336) 375-2625

OF COUNSEL FOR DEFENDANTS
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6800
(513) 651-6981 Facsimile

## CERTIFICATION

I hereby certify that a copy of the foregoing was electronically filed on this 26th day of April 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Frederick J. McGavran_____
Frederick J. McGavran (0011284)

CinLibrary/1392260.1

13