**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Q&R ASSOCIATES, INC., | ) | Case No. C-1-01-641 |
| | ) | |
| Plaintiff, | ) | (Judge Beckwith) |
| | ) | |
| -v- | ) | MEMORANDUM IN OPPOSITION TO |
| | ) | MOTION OF DEFENDANTS UNIFI |
| | ) | TECHNICAL FABRICS LLC AND W. |
| UNIFI, INC., *et al.*, | ) | MICHAEL MEBANE FOR SUMMARY |
| | ) | JUDGMENT |
| Defendants. | ) | |

**I.     INTRODUCTION**

There is no basis for summary judgment in favor of Defendants Unifi Technical Fabrics, LLC ("UTF") and W. Michael Mebane (collectively "Defendants"). The primary argument raised by Defendants in support of summary judgment is that no contract was formed because there was no meeting of the minds as to the specific manner in which Q&R would be compensated in the event of the sale of UTF. This argument fails, however, because the parties clearly entered into a contract that was sufficiently definite to be enforceable. Defendants' other arguments are equally meritless.

**II.    ANALYSIS**

**A.    Ohio Law Applies**

There can be no question that this Court should apply the law of Ohio. Defendants correctly point out that in a diversity action, the district court applies the choice of law rules of the forum state. (Dft's Br. at 10.) "Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be performed

governs." *Schulte Radio Products, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, 438, 453 N.E. 2d 683 (1983); *see also Montana Coal & Coke Co. v. Cincinnati Coal and Coke Co.*, 69 Ohio St. 351, 69 N.E. 613, Syl 1 (1904).

In this case, performance of the contract between Q&R and UTF was to take place in Ohio. Consequently, Ohio law should be applied. Pursuant to its contract, Q&R agreed to exclusively represent UTF's nonwoven products. Q&R, the party performing the contract, was based in three locations, all within the State of Ohio. (*Ranz Aff.*, ¶ 4 (Ex. A); *Quinn Aff.* ¶ 4 (Ex . B).) Although Q&R's sales territory expanded beyond Ohio's borders, its operations (other than some sales calls) and the majority of its work was to be performed entirely within Ohio. In fact, two of the largest accounts Q&R was calling upon, Procter and Gamble and Drypers, are located in Ohio. In contrast, Q&R was not performing any obligations in North Carolina any more than it was performing in any other part of the United States. (*Id*.) Based upon Q&R's substantial performance of the contract within Ohio, the Court should apply Ohio's substantive law to the facts of this case. *Schulte Radio Products, Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St. 3d 436, 438, 453 N.E. 2d 683 (1983).

    **B.**    **Summary Judgment Is Not Appropriate In Favor of UTF On Q&R's Claim For Breach of Contract**

        1.    The existence of a contract is a question of fact not appropriate for summary judgment.

The critical inquiry in determining the existence of a contract is whether the parties intended to be bound. *Oglebay Norton Co. v. Armco, Inc., * 52 Ohio St. 3d 232, 234, 556 N.E.2d 515 (1990). "Whether the parties intended to be bound . . . is a question of fact properly resolved by the trier of fact." *Id.* at 235; s*ee also Normandy Place Associates v. Boyce*, 2 Ohio St. 3d 102, 443 N.E.2d 161, 164 (1982) ("whether the parties intended a contract remains a factual question, not a legal one, and as such is an issue to be resolved by the finder of fact"). As the Sixth Circuit

explained in a case involving Ohio contract law: "At bottom, the question whether the parties intended a contract is a factual one, not a legal one, and, except in the clearest cases, the question is one for the finder of fact to resolve." *Arnold Palmer Golf Co. v. Fuqua Indus., Inc.*, 541 F.2d 584, 588 (6th Cir. 1976). Accordingly, it is inappropriate for this Court to summarily resolve the factual issue of whether the parties intended to be bound.

> 2. The parties' testimony and conduct demonstrates that they intended to be bound.

As explained above, whether the parties intended to be bound is a factual issue that cannot be resolved through summary judgment. Nevertheless, it is worth pointing out that in this case the parties believed they had entered into a binding contract at their March 27, 2002, meeting in Miami, Florida. At the end of that meeting Quinn and Ranz shook hands with Mebane and Mebane asked "Do we have an agreement?" Quinn and Ranz responded affirmatively and the parties discussed memorializing their agreement in a written contract. (*Quinn Aff.* ¶ 27 (Ex. B), *Quinn Depo.* at 183-84 (Ex. C).) Mebane, in fact, used the phrase "North Carolina agreement" to indicate that the parties' verbal understanding constituted a binding agreement. (*Mebane Depo*. at 145-146, 151 (Ex. D).)

Subsequent communication between the parties reiterated that a deal had been reached. On March 30, 2002, Mebane wrote an email to Quinn and Ranz that began: "I am happy that we have agreed on terms for you to represent Unifi Technical Fabrics." (*Delaney Depo.* Ex. 5 (Ex. E).) Mebane also admitted in his deposition that a meeting of the minds occurred at the Miami meeting and that he felt confident the parties had reached a binding contract:

> "Q: As you sit here, today, do you think that you had an agreement then?
>
> A: At that time, I did. It was not until later, when I received a message back from Mr. Quinn on two pretty substantive points that

> indicated to me that he didn't feel like we had an agreement, even though we had agreed upon those same points together, in person."
> (*Mebane Depo.* at 146 (Ex . D).)

In their motion for summary judgment, Defendants do not dispute any of the deposition or affidavit testimony about the March 27, 2002, Miami meeting. Rather, they now claim that e-mails exchanged by the parties <u>after</u> the agreement was reached somehow negate the parties' contractual understanding. (Dft's Br. at 7-8.) Mebane's after-the-fact reservations, however, certainly cannot erase the contractual obligation that was entered into.

Moreover, the surrounding circumstances and the parties' conduct after the March 27 meeting clearly indicates that an agreement was reached. In *Oglebay*, the Ohio Supreme Court, quoting from the Second Restatement, made clear that the existence of a contract may be inferred from **actions** that are consistent with the intent to create a binding agreement:

> "[T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such case courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Oglebay*, 52 Ohio St. 3d at 236 (*qtd.* Restatement (Second) Contracts, Section 33, Comment a).

Here, the parties acted as if a contract had been formed. Q&R informed Cleaver on March 30, 2002, that it was terminating its relationship. (*Ranz Aff.,* ¶ 16 (Ex . A); *Quinn Aff.,* ¶ 19 (Ex . B).) UTF paid Q&R $25,000 for April as the parties had agreed. (*Ex. 83*; *Ranz Depo*. at 89 (Ex . F) and Def's Ex . 83 (Ex . G).) Q&R set out to recruit customers to develop business for UTF. (*See, e.g., Defendant's Ex. 87* (Ex . H).) Quinn and Ranz even traveled to UTF's facility in Mocksville, North Carolina for a "business planning meeting" on April 10 and 11. (*Ranz Depo*. at 91-92 (Ex. F).) Thus, it is clear that not only did the parties leave the March 27 meeting confident that they had a contract, but they also both took actions consistent with this understanding. Under Ohio law an enforceable contract was formed.

    3.  <u>The contract was sufficiently definite to be enforceable.</u>

  The contract is enforceable because the parties agreed on the essential terms at the Miami meeting.  To be enforceable, a contract need only be definite with respect to its "essential terms." *Episcopal Retirement Homes, Inc. v. Ohio Department of Indus. Relations*, 61 Ohio St. 3d 366, 369, 575 N.E.2d 134 (1991); *see also Goodyear v. Goodyear,* 257 N.C. 374, 126 S.E.2d 113, 117 (N.C. 1962); *Sides v. Tidwell*, 216 N.C. 480, 5 S.E.2d 316, 318 (N.C. 1939).  The essential terms are generally the parties to the contract, subject matter and consideration.  *See, e.g. Nilavar v. Osborn*, 127 Ohio App. 3d 1, 13, 711 N.E. 2d 726 (Clark App. 1998); *Huffman v. Kazak Brothers, Inc.*, 2002 WL 549858 (Lake App. Apr. 12, 2002 (Ex. I).)  If these essential terms are supplied, a court will fill in non-essential terms in order to reach a fair and just result.  *Litsinger Sign Co. v. American Sign Co.,* 11 Ohio St. 2d 1, 14, 227 N.E. 2d 609 (1967) ("If it is found the parties intended to be bound, the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result"); *Huffman,* 2002 WL 549858 at *5.  The terms of a contract are sufficiently definite if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Nilivar*, 127 Ohio App. 3d at 13 (quoting *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App. 3d 167, 169 (1983), 464 N.E.2d 586, 589-59).

  In this case, there can be no question that the parties agreed to all the essential terms.  The parties agreed as to the subject matter of the contract (a sales relationship), the parties to the contract (Q&R and UTF) and consideration (a detailed payment schedule).  They even agreed that Q&R would be protected in the event Mebane's assurance that UTF would not be sold turned out to be untrue.  (*Ranz Aff.*, ¶ 12 (Ex . A); *Quinn Aff.* ¶ 13 (Ex . B).)  The contract is enforceable; it is the Court's role to fill in the missing term as to compensation for the sale to Avgol.

    **C.    Summary Judgment is not Appropriate in Favor of Defendants on Q&R's Claim for Promissory Estoppel**

        1.    <u>Q&R has set forth the elements of promissory estoppel.</u>

The Ohio Supreme Court has adopted the Second Restatement's doctrine of promissory estoppel:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Talley v. Teamsters Loc. 377*, 48 Ohio St. 2d 142, 146, 357 N.E. 2d 44 (1976).

In this case, there can be no question that elements of promissory estoppel are met. Unquestionably, the element of a promise is met. Mebane promised Q&R that no sale of UTF was in the works, that UTF would not be sold, and that Q&R would be protected in the event anything did happen. There is substantial evidence in the record that Mebane repeatedly represented that there were no ongoing sales negotiations between Avgol and UTF and that UTF would not be sold. For example, Michael Quinn testified in his deposition as follows:

> "Q.    When did you first hear that Avgol was talking to UTF about buying UTF's plant?
>
> A.    There were rumors in the marketplace in late 2000, early 2001.
>
>                     * * *
>
> Q.    And did you try to follow up or investigate the rumors?
>
> A.    The only follow-up was we asked Mr. Mebane were these, you know, were true, and he responded no." (*Quinn Depo.* at 155 (Ex . C).)

Mebane flatly promised Quinn and Ranz that a sale of Avgol to UTF "ain't gonna happen." (Quinn Depo at 160-161 (Ex . C); Quinn Aff. ¶ 9 (Ex . B.)  Mebane also promised Q&R that if any sale did occur, Q&R would be protected. (*Ranz Aff.* ¶ 12 (Ex . A); *Quinn Aff.* ¶ 13 (Ex . B).)

Certainly, Q&R could reasonably be expected to rely upon Mebane's promises. In fact, Mebane used the term "North Carolina agreement" to emphasize the fact that his word was allegedly as good as a written contract. (*Quinn Aff.*, ¶ 9 (Ex . B); *Ranz Aff.*, ¶ 9 (Ex . A); *Mebane Depo*. at 145-146 (Ex . D).) Ranz explained what the parties understood Mebane to mean when he referred to a "North Carolina agreement:" "here in North Carolina our word is bond, and that's what we call a North Carolina Agreement. So if I tell you something, you can take it to the bank and you can trust it to be truthful." (*Ranz Depo*. at 60 (Ex. F).) There is also no question that Q&R did in fact rely upon Mebane's representations when it terminated its existing relationship with Cleaver and Avgol to begin selling UTF's competing products. (*Quinn Aff.* ¶ 13 (Ex . B); *Ranz Aff.* ¶ 12 (Ex . A).)

Under the circumstances, Q&R's reliance was fully reasonable, particularly in light of Mebane's repeated assurances and promises that there were no talks between UTF and Avgol about sale of the plant and that UTF would not be sold. Q&R left a profitable sales relationship and did incalculable damage to their careers as a result of their reliance upon Mebane's and UTF's promise. Injustice can only be avoided by enforcement of the promise.

  2. <u>The cases cited by Defendants are not on point.</u>

Q&R has set forth the elements of promissory estoppel. The cases cited by Defendants in their brief are simply not on point. (Dft's Br. at 14.) The case of *Snider v. A.J. Trucking Company, Inc.*, 57 F.3d 484, 489 (6th Cir. 1995), for example, simply held that "general comments about career growth and company policy" are not sufficiently definite to induce reliance and support a claim for promissory estoppel. In the case at bar, in contrast, the statements made by Mebane and UTF went well beyond general comments about career growth and company policy. As explained above, there is substantial evidence in the record that Mebane, on behalf of UTF, provided specific assurances to Quinn and Ranz that there were no

ongoing sales negotiations and that UTF would not be sold to Avgol. (*Ranz Aff.* ¶¶ 7, 12 (Ex . A); *Quinn Aff.* ¶¶ 9, 10 (Ex . B); *Quinn Depo.* at 155, 160-161 (Ex . C).) *Cf. Pertz v. DeBartolo Corp.,* 1999 WL 644339 (6th Cir. Aug. 18, 1999 (Ex . I)) (statement that employee's job would be secure as long as Defendant owned business was sufficient predicate for promissory estoppel claim to overcome summary judgment).

The other case cited by Defendants, *Gouge v. BAX Global, Inc.,* 252 F.Supp. 2d 509, 518 (N.D. Ohio 2003), is equally off point. In that case, the court noted that "Defendants' representations amount to statements of future intentions and conduct, and opinions, which cannot justifiably be relied upon as a matter of law." In contrast, in the case at bar, Mebane misrepresented an existing fact – the ongoing negotiation and sales discussions between Avgol and UTF. Accordingly, summary judgment is not appropriate in favor of Defendants on Q&R's claim for promissory estoppel.

> 3.   The result is no different under North Carolina law.

There is no basis for Defendants' contention that the result is somehow different under North Carolina law. First, Ohio law, not North Carolina law, covers this dispute because the contract was to be performed in Ohio. *Schulte*, 6 Ohio St. 3d at 437.

Furthermore, the case law relied upon by Defendants relating to "employment agreements" is irrelevant to this dispute. (Defendants' Br. at 14.) The *Swanson v. Chem-Nuclear Sys., Inc.,* case cited by Defendants simply held that "North Carolina does not recognize the doctrine of promissory estoppel in an action for breach of an employment contract." 1997 U.S. Dist. Lexis. 16054 at *6. But this is not a case where an employee entered into an employment contract. It is a case where two commercial entities, Q&R and UTF, reached an agreement as to a sales and commission relationship. Under the agreement, Quinn and Ranz were not UTF employees, they were employees of Q&R. (*Ranz Aff.* ¶¶ 1, 2 (Ex . A); *Quinn Aff.*

¶¶ 1, 2 (Ex. B).)  Accordingly, the case law cited by Defendants is simply inapplicable. Unquestionably, the contract at issue in this case is not an "employment contract."

### D. There is No Basis for Summary Judgment in Favor of Defendants on Q&R's Negligent Misrepresentation

#### 1. The economic loss doctrine does not bar Q&R's negligent misrepresentation claim.

Defendants argue that the negligent misrepresentation claim should be dismissed on the basis that a party may not bring an action in tort for economic loss.  (Defendants' Br. at 17.) This is clearly not an appropriate statement of the economic loss doctrine.  Ohio law is clear that a party may assert a negligent misrepresentation claim for economic loss provided contractual privity exists between the parties.  *See* e.g., *McElroy v. Ohio Department of Transportation*, 2004 WL 67231, at *6 (Ct. Cl. Jan. 14, 2004 (Ex . I)) ("general rule requires contractual privity to assert a cause of action in negligence for purely economic damages"); *Laurent v. Flood Data Services*, 146 Ohio App. 3d 392, 401, 766 N.E.2d 221 (Lorain App. 2001) (same).

Defendants concede that both Ohio and North Carolina have adopted the Restatement (Second) of Torts definition of a claim for negligent misrepresentation.  (Defendants' Br. at 18.) The Second Restatement makes clear that economic damages are recoverable for negligent misrepresentation.  Section 552(B) provides:

> "(1)  The damages recoverable for a negligent  misrepresentation are those necessary to compensate the plaintiff for ***the pecuniary loss*** to him of which the misrepresentation is a legal cause including:
>
> (a)  the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>
> (b)  pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

> (2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant."

"'Pecuniary loss' is by its very definition 'economic loss.'" *McCarthy, Lebit, Crystal & Haiman Co., L.L.P. v. First Union Management Inc.*, 87 Ohio App. 3d 613, 632 (Cuyahoga App. 1993). Under the Restatement, and well settled Ohio law, Defendants may recover the economic losses caused by Defendants' negligent misrepresentation.

> 2.  The caselaw cited by Defendants relating to a "special relationship" is irrelevant to this dispute.

Defendant's also claim that they are entitled to summary judgment on the negligent misrepresentation claim because there was no "special relationship" between Q&R and UTF. (Defendants' Br. at 18 (quoting *Hayes v. Computer Associates International, Inc.*, 2003 U.S. Dist. Lexis 10712, at *19 (N.D. Ohio June 24, 2003)). The requirement of a "special relationship" only applies in situations in which there is no "contractual privity." *See Floor Craft Floor Covering Inc. v. Parma Community Gen. Hosp. Ass'n,* 54 Ohio St.3d 1, 560 N.E. 2d. 206, 212 (1990). Under this line of cases – for example those involving accountants and lawyers – a special relationship is a "substitute for the lack of contractual privity." *See, e.g., Laurent*, 146 Ohio App. 3d at 401. In the case at bar, Q&R and UTF were obviously in contractual privity and the line of cases cited by Defendants is completely off point.

> 3.  Ohio follows the doctrine of comparative negligence, not contributory negligence.

Next, Defendants claim that Q&R may not recover because they were "contributorily negligent." (Defendant Br. at 18-19.) Ohio, of course, does not follow the doctrine of contributory negligence and has instead adopted a doctrine of comparative negligence. Certainly the comparative negligence of Q&R, if any, is a question for the jury, not a matter for summary

judgment. *See LeFort v. Century 21-Maitland Realty Co.*, 1986 WL 4395 (Cuyahoga App. Apr. 10, 1986 (Ex . I)).

      **E.    There is No Basis For Summary Judgment in Favor of UTF on Q&R's Claim for Fraudulent Inducement**

Defendants make the remarkable argument that summary judgment is somehow appropriate on Q&R's fraudulent inducement claim on the basis that the claim is "directly contradicted by a writing." (Defendants' Br. at 16.) In support of their argument, Defendants cite *National City Bank v. Facilities Asset Management*, 145 Ohio App. 3d 340, 345, 762 N.E.2d 1060, 1064 (2001), for the proposition that a party may not "prove fraud by claiming the inducement to enter an agreement was a promise which was squarely contradicted by the written terms ***of that agreement***." *Id.* at 16 (emphasis supplied). Defendants either misunderstand or are deliberately misconstruing, the proposition of law they are citing. The rule set forth in *National City Bank* is simply a restatement of the parol evidence rule. A party cannot rely on parol evidence to contradict the terms of a written agreement. The rule has absolutely no applicability in this case. **There is quite simply no contradiction between the fraudulent inducement (the misrepresentation about the ongoing negotiations and the pending sale of the business) and any written agreement.** The only "contradictions" that Defendants ever came up with involve Mebane's letters and e-mails sent to Q&R well after the oral agreement was reached on March 27. (Dft's Br. at 16.) Certainly one party's self-serving, after-the-fact communication does not constitute the "written terms of that agreement" as required by the *National City Bank* case and the parol evidence rule. 145 Ohio App. 3d at 345.

As explained in Q&R's Brief in Support of its Motion for Summary Judgment, the undisputed facts establish all the elements necessary for a claim of fraudulent inducement. (*See* Q&R Brief in Support of Summary Judgment at pp. 13-15.) Accordingly, summary judgment

should be entered in Q&R's favor on the fraudulent inducement claim and Defendants' Motion for Summary Judgment should be denied.

> F. **There is no Basis For Summary Judgment in Favor of UTF on Q&R's Claim for Intentional Interference With a Business Relationship**
>
> 1. North Carolina recognizes a claim for tortious interference where a contract exits between the parties.

Defendants argue that the tortious interference claim should be dismissed because Q&R pled "tortious interference with a business relationship" while North Carolina recognizes the doctrine of "tortious interference with contractual relations." (Defendants' Br. at 19.) As explained previously, the law of Ohio, not the law of North Carolina, governs this dispute. Nevertheless Defendants' argument about the nomenclature attached to the claim is just plain silly. Regardless of how the claim is labeled, the gist of the claim is UTF's unjustified interference with the **contractual** relationship that existed between Q&R and Cleaver. North Carolina unquestionably recognizes a claim for tortious interference with an existing contract.

In fact, the North Carolina Superior Court recently advised that a party may assert exactly the claim set forth by Q&R: "it is sufficient for a party to state a claim for interference with 'relations' or 'business relations' when referring to interference with existing contracts or the prospective likelihood of future contracts." *Pack Brothers Body Shop Inc. v. Nationwide Mutual Ins. Co.*, 2003 WL 21017395 (N.C. Super Jan. 10, 2003 (Ex . I)).

In the case relied upon by Defendants, *Wayne v. 320 Comm. Co.*, 1999 U.S. Dist. Lexis 9727 at *6 (E.D.N.C. April 30, 1999), the court dismissed a claim for intentional interference with a fiduciary business relationship. At the same time it noted that "North Carolina courts have recognized a cause of action for tortious interference with contractual relations . . . and for tortious interference with prospective contractual relations." *Id.* at *6. Because a written contract existed, the Court held that "Plaintiffs remedy lies in a cause of action for tortious

interference with contractual relations" and proceeded to examine the claim under that theory. *Id* at *7-8. Similarly in this case, Q&R may properly proceed based upon UTF's interference with its existing contract.

> 2. Under Ohio law, Defendants may not rely upon "competition" as a justification for their tortious interference because they employed "wrongful means."

Under Ohio law, Defendants argue only that they were justified in interfering with Q&R's contractual relationships with Avgol and Cleaver based on the fact that UTF was a competitor of Avgol. (Defendants' Br. at 20.) Ohio recognizes competition as a justification for interference with a business relationship, but only in certain limited circumstances:

> "competition is proper if (a) the relation between the actor . . . and his or her competitor . . . concerns a matter involved in the competition between the actor and the other, and (b) the actor does not employ wrongful means, and (c) his action does not create or continue an unlawful restraint of trade, and (d) his purpose is at least in part to advance his interest in competing with the other."
> *Fred Siegel Co. L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 180, 707 N.E. 2d 853 (1999).

Here there was at least a jury question as to whether UTF used improper means in its competition with Avgol. In *Siegel*, the Ohio Supreme Court found the trial court improperly granted summary judgment on a claim for tortious interference with contract when there were unresolved issues as to whether a defendant used wrongful means in competition. *Id.* at 180-181. Here there is at least a jury issue as to whether UTF's misrepresentations and/or nondisclosures as to the possible sale to Avgol constituted "improper means."

Besides, Q&R was not even a "competitor" of UTF when those two parties entered into their contract. Any competition between UTF and Avgol does not shield UTF from liability to Q&R. The purpose of the competition defense is to prevent trade rivals from suing each other every time a customer changes brands. The rule was never intended to bar third-parties, like

Q&R, from being made whole.  Accordingly, summary judgment is not appropriate on Q&R's claim for a tortious interference with contract.

### III.  CONCLUSION

For all of these reasons this Court should deny the motion of Defendants for summary judgment, grant Q&R's motion for partial summary judgment, and set all remaining issues for trial to a jury.

Respectfully submitted,

___s/Dwight A. Packard, II_____
James E. Burke (0032731)
Dwight A. Packard, II (0067182)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202
Tel.:  (513) 579-6429
Fax:  (513) 579-6457
jburke@kmklaw.com
dpackard@kmklaw.com
*Attorneys for Plaintiff,*
*Q&R Associates, Inc.*

OF COUNSEL:

KEATING, MUETHING & KLEKAMP
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202
(513) 579-6400

## CERTIFICATE OF SERVICE

      I hereby certify that on April 26, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

> Frederick J. McGavran
> Frost Brown Todd, LLC
> 2200 PNC Center
> 201 East Fifth Street
> Cincinnati, Ohio 45202

                                                                ___s/Dwight A. Packard, II_____
                                                                 Dwight A. Packard, II

1244154.1