UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Q & R ASSOCIATES, INC., | : | Case No.: C-1-01-641 |
| | : | |
| Plaintiff, | : | Judge Beckwith |
| | : | |
| v. | : | **REPLY MEMORANDUM OF** |
| | : | **DEFENDANTS UNIFI TECHNICAL** |
| | : | **FABRICS LLC AND W. MICHAEL** |
| | : | **MEBANE IN SUPPORT OF THEIR** |
| | : | **MOTION FOR SUMMARY JUDGMENT** |
| | : | |
| UNIFI TECHNICAL FABRICS LLC, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**I.    INTRODUCTION**

Q&R's Memorandum in Opposition to Defendants' Motion for Summary Judgment misstates the law and fails to address the facts of this case. Of particular note:

(1)    Q&R does not apply the correct Ohio conflict of law test;

(2)    In light of Q&R's own admissions and the written evidence on file:

(a)    Q&R cannot establish a meeting of the minds on all essential terms on March 27, 2001, or at any other time; and

(b)    Q&R cannot establish justifiable reliance; and

(3)    Q&R misstates North Carolina law on tortious interference with business relationships.

For these reasons, as well as others discussed below, summary judgment should be granted for Defendants.

## II. OHIO APPLIES THE "MORE SIGNIFICANT RELATIONSHIP" TEST.

Q&R cites a 1983 Ohio Supreme Court case for the proposition that "the law of the state where the contract is to be performed governs." Plaintiff's Memorandum at 1-2, *citing Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St. 3d 436, 438 453 N.E.2d 683 (1983). Q&R is wrong. In 1984 the Ohio Supreme Court expressly adopted the "more significant relationship test" for resolving conflict of law disputes based in contract. *Gries Sports Ent. v. Modell*, 15 Ohio St. 3d 284, *syllabus*, 473 N.E.2d 807 (1984). Moreover, the Ohio Supreme Court applied the "more significant relationship" test as recently as 2001. *See Ohayon v. Safeco Ins. Co.*, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001). As Defendants showed in their Memorandum, North Carolina has "more significant relationships" with this case than Ohio. Therefore, North Carolina law should apply.

## III. THERE WAS NO MEETING OF THE MINDS.

In clear cases, summary judgment on breach of contract claims is appropriate. *Arnold Palmer Golf Co. v. Fuqua Indus., Inc.*, 542 F. 2d 584, 588 (6th Cir. 1976). Based on the testimony of Quinn and the written evidence, this is a clear case of no meeting of the minds.

Quinn admits in his deposition that when he left the March 27, 2001 meeting, he did not know what commitment UTF made to Q&R in the event of a change of control of UTF.

> Q: You said there was a commitment, but you didn't know what that commitment was, did you.
>
> A: I did not.

Quinn depo. at 181; Defendants' Memorandum, Ex. A

Q&R argues that the terms of the contract were agreed to at this March 27, 2001 meeting. Yet, Q&R also admits that it did not know what all the terms were after this meeting. At page 5 of its Memorandum, Q&R asks the Court to provide the "missing term".

> The contract is enforceable; it is the Court's role to fill in the missing term as to compensation for the sale to Avgol.

There is no authority in Ohio or North Carolina for a court "to fill in the missing term." By making this argument, Q&R admits that there was no meeting of the minds on the critical term in this case.

The Emails between Mebane and Quinn from March 30 through April 2 show there was no meeting of the minds on a term protecting Q&R if there were a change of control of UTF or "sharing the pain" if the price of the product fell. These emails are discussed in detail in Defendants' Memorandum in Support of its Motion and in Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment.

Moreover, Quinn's April 1, 2001 email shows that he himself did not believe a final agreement had been reached. Quinn wrote: "Other then [sic] these two issues I'm ok with the agreement, but I do want John's [Ranz] input." Defendants' Memorandum in Opposition to Q&R's Motion, Ex. B. Therefore, Q&R's premise that there was an agreement as to all essential terms as of March 27, 2001 is contradicted by its own writings. Because Rantz never agreed to all the terms of the proposed agreement, there never was any agreement between the parties on anything.

Q&R admits that at the March 27, 2001 meeting, the parties only agreed to draft a definitive written contract. Quinn depo. at 114-115; Defendants' Memorandum in

Opposition to Q&R's Motion, Ex. A; Ranz Aff. ¶17, Plaintiff's Memorandum Ex. A. Indeed, Quinn states in his affidavit that at the March 27, 2001 meeting the parties "began finalizing a business relationship." Plaintiff's Memorandum Ex. B. Thus, even the affidavit of a Q&R principal admits there was no contract on March 27, 2001.

As discussed in UTF's Memorandum in Support of its Motion for Summary Judgment, Mebane's April 25, 2001 letter to Quinn shows (1) that there was no definitive written agreement and the parties were operating on a month to month basis; and (2) that UTF once again informed Q&R that it was "not able to bind Unifi to anything regarding a change of control." Defendants' Memorandum in Support of Motion, Ex. N.

Courts should only consider objective manifestations of intent in determining whether there is a meeting of the minds. *Huffman v. Kazak Brothers, Inc.,* 2002 WL 549858, *4 (Ohio App. 2002); Plaintiff's Memorandum, Ex. I*; Boyce v. McMahan*, 285 N.C. 730, 208 S.E.2d 692 (1974; *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217; 108 S.E. 735, 737 (N.C. 1921). The uncontested facts here show there was no final agreement on all essential terms of an agreement on March 27, 2001 or at any other time.

Q&R's argument that there was a final agreement on March 27, 2001 is belied by its plea for the Court to write the missing term of the agreement. Plaintiff's Memorandum at 5. Indeed, it is even contradicted by the testimony of Q&R's principals. In other words, Q&R cannot point to any objective manifestations that support its position, and the evidence contradicts its position. Therefore, Defendants are entitled to summary judgment on the breach of contract claim.

IV.   **NO JUSTIFIABLE RELIANCE**

   A.   <u>Summary</u>

   Q&R asserts three counts that require a showing of reasonable reliance: (1) promissory estoppel; (2) fraudulent inducement; and (3) negligent misrepresentation. Because the evidence shows that this element cannot be established as a matter of law, Defendants are entitled to summary judgment on these three counts.

   B   <u>Q&R's Memorandum Mischaracterizes the Dispute.</u>

   Q&R alleges that that Mebane misrepresented the "ongoing negotiation and sales discussions between Avgol and UTF." Plaintiff's Memorandum at 8. Q&R then alleges that it justifiably relied on this misrepresentation. The evidence, however, shows that (1) UTF did not misrepresent its discussions with Avgol; and (2) Q&R could not have reasonably relied on any of the alleged misstatements.

   Mebane informed Q&R that UTF and Avgol had been in business discussions. Moreover, both Quinn and Ranz admit that Mebane informed them he could not discuss all that had transpired between UTF and Avgol. Ranz states in his affidavit: "Mebane said that while he was not at liberty to discuss all that had transpired between Unifi and Avgol, he could tell us that he had numerous meetings, discussions, and visits with the owners of Avgol." Ranz Aff. ¶7; Plaintiff's Memorandum Ex. A. Quinn states in his affidavit: "Mebane said he had signed a Confidentiality Agreement and could not discuss everything that had transpired between Avgol and UTF. Mebane did confirm, however, that several meetings with Avgol management had taken place." Quinn Aff. ¶9; Plaintiff's Memorandum Ex. A.

5

Quinn understood that when a confidentiality agreement is in place, serious discussion are occurring. Quinn depo. at 156; Defendants' Memorandum in Support of summary Judgment, Ex. A. Thus, Mebane did not misrepresent an existing facts as to the discussions between Avgol and UTF. Indeed, Quinn and Ranz admit that Mebane told them he could not disclose the discussions because of a confidentiality agreement, and that Quinn understood the implications of such an agreement.

Q&R's knowledge of the confidentiality agreement coupled with UTF's refusal to agree to a term protecting Q&R in the event of a change of control demonstrates that Q&R cannot establish reasonable reliance. Therefore, the evidence shows that Q&R could not reasonably rely on statements of existing fact concerning discussions between Avgol and UTF.

C.  "Ain't going to happen" is not reasonable reliance.

Q&R alleges that Mebane stated a sale between Avgol and UTF "ain't going to happen." Quinn Aff. ¶9; Plaintiff's Memorandum Ex. B. Mebane denied he made such a statement. Even assuming that the statement was made, it still cannot support a finding of reasonably reliance. As discussed in UTF's Memorandum in Opposition to Q&R's Motion for Partial Summary Judgment, statements of future actions or conduct, or opinion "cannot be justifiably relied upon as a matter of law." *See Gouge v. BAX Global Inc.,* 252 F. Supp.2d 509, 518 (N.D. Ohio 2003); *Boyce v. McMahan*, 285 N.C. 730, 208 S.E.2d 692 (1974). Because this alleged statement is both opinion and relates to future actions or conduct, it cannot establish the element of justifiable reliance.

D.     Q&R's cases support Defendants.

Q&R alleges that the cases UTF cited to support a finding of no reasonable reliance are not on point. Plaintiff's Memorandum at 7. Specifically, Q&R refers to *Gouge* and *Snyder v. A.G. Trucking, Inc.,* 57 F.3d 484 (6th Cir. 1995). If the alleged misrepresentations made by Mebane are compared to the alleged misrepresentations made by the employer in those cases, however, the case is exactly on point. Moreover, the cases cited in Q&R's Memorandum actually support the Defendants' position.

In *McElroy v. Ohio Dept. of Transp.,* 2004 WL 67231 (Ohio Ct. Cl. January 14, 2004) (Plaintiff's Memorandum Ex. I), the court granted summary judgment in favor of the defendant on the plaintiffs' promissory estoppel and negligent misrepresentation claims, because plaintiffs could not establish the element of justifiable reliance. The plaintiffs alleged that they reasonably relied on oral and written representations by the Ohio Department of Transportation ("ODOT") that if they complied with ODOT regulations, ODOT would issue a permit to build a driveway. Other ODOT correspondence stated ODOT's concerns about the driveway due to environmental considerations. The court noted that plaintiffs were aware of topographical problems with the land. In granting summary judgment to ODOT, the court reasoned that it was "simply not reasonable for plaintiffs to rely on a statement contained at the end of a correspondence considering all the additional knowledge plaintiffs possessed." *Id.* at *7.

Similarly, it was simply not reasonable for Q&R to rely on any alleged oral statements by UTF concerning a change of control, considering all the additional knowledge that Q&R possessed. Q&R was aware of the UTF-Avgol confidentiality agreement and the implications of such an agreement. Q&R was aware that UTF would

not agree to a term protecting Q&R if there were a change of control. Therefore, like *McElroy*, the facts here show that reasonable reliance cannot be established as a matter of law.

In *Pertz v. Edward J. Debartolo Corp.*, 188 F. 3d 508, *table case,* 1999 WL 644339 (6th Cir. Aug. 18, 1999); Plaintiff's Memorandum Ex. I, the Sixth Circuit reversed a finding of summary judgment in favor of the defendants because it found material questions of fact as to each element of promissory estoppel. The court "emphasize[d] that we find this case to unique. Promissory estoppel claims fail where the statements in question were made in contexts where reliance is unreasonable." *Id.* at *4, fn. 4.

In *Pertz,* a current employee informed his employer that his wife was considering accepting a new job in a different state and that a major factor in making that decision was whether he would be able to continue working for the employer on a part-time basis. The plaintiff even put forth a specific plan for his part-time request. The employer accepted his specific plan and told the plaintiff that he would have a job as long as the DeBartolo Corporation owned the racetrack. Then the plaintiff sent a letter to the employer that detailed the agreed upon plan. The employer wrote back to the plaintiff and specifically acknowledged receipt of the letter. When the employee was terminated sometime later, he filed suit for, *inter alia,* promissory estoppel.

*Pertz* is factually distinct for at least two reasons. First, unlike the facts here, there was a clear and unambiguous promise of job security. Both parties were clear as to what the promise entailed: the plaintiff could switch from full-time to part-time if his wife took a job offer in another state, and this arrangement would last as long as the

defendant employer owned the corporation. In this case, however, even Q&R admits that on the very day it alleges a final agreement was reached, it did not know what commitment UTF would provide in the event of a change of control. Thus, there is no clear and unambiguous promise as in *Pertz*.

Second, unlike *Pertz*, there is evidence here contradicting Q&R's allegations of reasonable reliance. In *Pertz*, the defendant did not provide written evidence or admissions by the plaintiff to contradict the plaintiff's claim of reasonable reliance. As discussed above, such evidence does exist in this case. In short, *Pertz* is factually distinct and does not apply.

Indeed the Sixth Circuit made clear that *Pertz* is unique.

> . . . [T]here is evidence in this record that, in the context of a discussion about whether his wife should accept a join in Florida that would require plaintiff to accept a job-endangering part-time position at Thistledown, Pertz was told that his employment was secure as long as the corporation owned the track. In this rather narrow context such a statement is definite enough to reasonably induce reliance under Ohio law. *Id.* at *4, fn. 4.

Finally, the *Pertz* court cites *Snyder*, *inter alia*, as an example where a finding of no reasonable reliance was properly made on summary judgment. *Id.* As noted, *Snyder*, unlike *Pertz*, is factually analogous to the dispute before the Court.

E.      Q&R's Negligence Precludes Justifiable Reliance.

The purpose of Defendants' contributory negligence argument is two-fold. First, North Carolina follows the doctrine of contributory negligence. *See Forbes v. The Par Ten Group, Inc.,* 394 S.E.2d 643, 648 (N.C. App. 1990). Thus, under North Carolina law, Q&R's negligence bars recovery. Second, Q&R's knowledge of the confidentiality agreement plus Mebane's oral and written statements that he could not agree to a term

protecting Q&R exhibits a degree of negligence that prohibits a finding of justifiable reliance, even in a comparative negligence jurisdiction. Even if the Court does not apply North Carolina law, the evidence on file shows a degree of negligence that prohibits a finding of justifiable reliance.

V. **NORTH CAROLINA DOES NOT RECOGNIZE PROMISSORY ESTOPPEL.**

"North Carolina does not recognize the doctrine of promissory estoppel in an action for breach of an employment agreement." *Swanson v. Chem-Nuclear Sys., Inc.*, 1997 U.S. Dist. Lexis 16054, *6 (E.D. N.C. Sept. 15, 1997); Defendants' Memorandum in Support of Motion, Ex. P. Q&R alleges that this rule of law only applies to individuals, not business organizations. This is a distinction without a difference. If ERISA or another specialized employer-employee legal doctrine were involved, Q&R might be right. Here the issue is whether employees can recover under the general legal doctrine of promissory estoppel in the employment context. Under North Carolina law, they cannot. In this case, if a contract were formed, Q&R would have been employed by UTF to provides marketing and sales services.

That Q&R is corporation and not an individual should not provide more protection under the law than would be granted to an individual. Indeed, Q&R is a sophisticated business entity that is more than capable of bargaining for the terms under which it will provide services to its employer. Therefore, under North Carolina law, a claim for promissory estoppel is not available.

VI. **THE ECONOMIC LOSS RULE PREVENTS RECOVERY FOR Q&R.**

Q&R alleges that the economic loss rule does not prevent recovery for tort claims based on contract disputes and cites two cases to support its position. Defendants,

however, provided authority to the contrary in their Motion for Summary Judgment. Defendants' Memorandum at 17-18; *Picker Int'l v. Mayo Foundation*, 6 F. Supp. 2d 685, 688-89 (N.D. Ohio 1998); *see also City of Gastonia v. Balfour Beatty Construction Corp. Inc.,* 222 F. Supp. 2d 771, 775 (M.D. N.C. 2002) (applying North Carolina law). Defendants believe that its position is correct and that Q&R cannot recover in tort for purely economic losses based on a contract dispute.

### VII. NEGLIGENT MISREPRESENTATION REQUIRES A SPECIAL RELATIONSHIP

Q&R puts the cart before the horse in asserting that contractual privity exists in this case. Indeed, the dispute centers around whether a contract was formed and what the terms, if any, were agreed upon. Because there was no contract, there was no privity. Q&R's negligent misrepresentation claim must fail.

In its Memorandum in support of its Motion, UTF analyzed a factually analogous case where the court found that no special relationship existed during hiring negotiations between two sophisticated business entities. *See Hayes v. Computer Assoc. Int'l, Inc.,* 2003 U.S. Dist. Lexis 10712, *19 (N.D. Ohio June 24, 2003); Defendants' Memorandum Ex. Q. Defendants maintain that *Hayes* is applicable here.

### VIII  Q&R CANNOT SUSTAIN A CLAIM FOR TORTIOUS INTERFERENCE.

A.   North Carolina Does Not Recognize A Claim for Tortious Interference.

North Carolina does not recognize a cause of action for tortious interference with a business relationship. *See Wayne v. 320 Comm. Co.,* 1999 U.S. Dist. Lexis 9727, *6 (E.D. N.C. Apr. 30, 1999); Defendants' Memorandum Ex. R. Q&R states that UTF's argument "is just plain silly." Plaintiff's Memorandum at 12. To the contrary, the case Q&R cites to support its statement actually confirms UTF's argument. *See Pack*

*Brothers Body Shop Inc. v. Nationwide Mutual Ins. Co,*. 2003 WL 21017395 (N.C. Super. Jan. 10, 2003); Plaintiff's Memorandum Ex. I.

    The *Pack Brothers* Court states:

> North Carolina recognizes actions for tortious interference that may take the form of 'tortious interference with contract' or 'prospective contract', but does not recognize claims for interference with 'relations.' *Id.* at *10.

Moreover, the *Pack Brothers* quote in Q&R's Opposition Brief is taken out of context. Q&R attempts to cite *Pack Brothers* for the proposition that a claim for tortious interference *with business relationships* can be made regardless of the nomenclature used. Plaintiff's Memorandum at 12. Q&R has this backwards. The *Pack Brothers* court is stating that a claim for "tortious interference with contract" or with "prospective contract" can stand even if the count is titled "tortious interference with business relationships." The *Pack Brothers* court is not creating a cause of action in North Carolina that is not already allowed. Defendants' Memorandum Support of Motion at 19-20; *see also Owens v. Pepsi Cola Bottling Co.,* 330 N.C. 666, 412 S.E.2d 636 (1992).

    B.    <u>Q&R Cannot Sustain A Claim For Tortious Interference with a Contract.</u>

        1.    <u>North Carolina.</u>

A critical difference between tortious interference with business relationships on the one hand and tortious interference with contract or prospective contract on the other, is that the latter two causes of action require the plaintiff to show that the defendant induced a third-party to breach a contract with the plaintiff. Q&R has not and cannot make this allegation. Moreover, Q&R fails to address this point of law in its Memorandum. Because Defendants did not induce a third party to do anything, the

tortious interference claim must fail. *Embree Construction Group, Inc., v. Rafcor, Inc.*, 330 S.E.2d 916, 924 (N.C. 1992)

   2. Ohio.

Ohio does recognize a claim for tortious interference with a business or contractual relationship, and this cause of action does not require inducement of a third person. The plaintiff, however, must prove lack of justification for the allegedly wrongful action. Q&R cannot prove lack of justification.

Q&R states that "the purpose of the competition defense is to prevent trade rivals from suing each other every time a customer changes brands." Plaintiff's Memorandum at 13. While this might be one purpose of the defense, it is not the only purpose. The competition defense also applies to circumstances such as those in this case.

UTF and Avgol were competitors. Q&R worked for Avgol through Cleaver and Associates, Inc. by providing sales and marketing services. UTF was in direct competition with Avgol. Entering into negotiations with Q&R was a justifiable attempt to compete with Avgol. Therefore, the competition defense should apply. *Aetna Casualty & Surety Co., Inc. v. Leahey Construction Co.*, 22 F. Supp. 2d 695, 705 (N.D. Ohio 1998).

**IX. CONCLUSION.**

At page 5 of its Memorandum, Q&R asks the Court to "fill in the missing term as to compensation for the sale to Avgol." This argument proves Defendants' point: there is no contract here, and Q&R has no claim. Defendants' Motion for summary judgment should be granted.

                                            Respectfully submitted,

                                            /s/ Frederick J. McGavran
                                            Frederick J. McGavran (0011284)
                                            Trial Attorney for Defendants Unifi
                                            Technical Fabrics, LLC and
                                            W. Michael Mebane
                                            2200 PNC Center
                                            201 East Fifth Street
                                            Cincinnati, Ohio 45202
                                            (513) 651-6940 Telephone
                                            (513) 651-6981 Facsimile
                                            fmcgavran@fbtlaw.com

OF COUNSEL FOR DEFENDANT
UNIFI TECHNICAL FABRICS LLC
Gregory A. Wendling
426 W. Friendly Avenue, Suite A
Greensboro, North Carolina 27401
(336) 274-0001
(336) 375-2625

OF COUNSEL FOR DEFENDANTS
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6800
(513) 651-6981 Facsimile

## **CERTIFICATE OF SERVICE**

      This is to certify I served James E. Burke, Esq., and Dwight A Packard II, Trial Attorneys for Plaintiff Q&R Associates, Inc., 1800 Provident Tower, 1 East Fourth St., Cincinnati, Ohio 45202 by ordinary U.S. mail this 7th day of May 2004.

                                            /s/ Frederick J. McGavran
                                            Frederick J. McGavran (0011284)

CinLibrary/1395585.1