**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Q&R ASSOCIATES, INC., | ) | Case No. C-1-01-641 |
| | ) | |
| Plaintiff, | ) | (Judge Beckwith) |
| | ) | |
| -v- | ) | **PLAINTIFF'S REPLY** |
| | ) | **MEMORANDUM IN** |
| | ) | **SUPPORT OF MOTION** |
| UNIFI, INC., *et al.*, | ) | **FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |
| Defendants. | ) | |

## I.     INTRODUCTION

The essential facts at the center of this lawsuit are largely undisputed: (1) UTF recruited Q&R to terminate a profitable sales relationship selling Avgol products; (2) at the same time it was recruiting Q&R, UTF was negotiating the sale of its business assets to Avgol; and (3) despite direct inquiries from Q&R about the sale, UTF never disclosed – and, in fact, affirmatively misled Q&R about – the pending sale.

In its memorandum in opposition, Defendants dance around but never seriously dispute any of these essential facts. Instead they argue it was unreasonable for Q&R to rely upon UTF's misstatements based upon emails that UTF sent to Q&R **after** the contract between UTF and Q&R was formed. (*See Dfts' Memo. in Opp*. at 1.) UTF relies upon emails sent after the parties' March 27th Agreement in which UTF says that it would not provide monetary compensation to Q&R in the event of a sale. These after-the-fact emails, however, do nothing to negate the clear, fraudulent misstatements and nondisclosures made by UTF to entice Q&R to end its relationship with Cleaver and Avgol.

## II. Q&R IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR FRAUDULENT INDUCEMENT

Q&R is entitled to summary judgment on its claim for fraudulent inducement. The undisputed evidence demonstrates that Q&R was fraudulently induced to enter into its contract with UTF based upon UTF's misrepresentation and/or failure to disclose its ongoing negotiations with Avgol. At the heart of this claim are a few undisputed facts: (1) when UTF was courting Q&R, there were industry rumors that Avgol might acquire UTF; (2) Q&R asked UTF's Michael Mebane about the rumors and possibility of UTF selling to Avgol; and (3) Mr. Mebane never told Q&R about the on-going negotiations with Avgol or the pending sale.

### A. Q&R Has Established the Element of Justifiable Reliance

There can be no dispute that Q&R has established the element of justifiable reliance. Quinn and Ranz understood the hard feelings on the part of Avgol and Cleaver that would necessarily occur should they leave that relationship in favor of one with UTF. They also understood that if Avgol were to purchase UTF they would have committed the equivalent of professional suicide. (*Quinn Aff.*, ¶9; *Ranz Aff.*, ¶7.) It was, therefore, in reliance upon Mebane's assurances that UTF would not be sold, that Q&R terminated its relationship with Cleaver and Avgol. (*Ranz Aff.*, ¶ 12; *Quinn Aff.*, ¶ 13.)

#### 1. The parol evidence rule has no application to unilateral communications sent after the March 27th Agreement.

Defendants first argue that there could be no justifiable reliance based upon the parol evidence rule. They cite the case of *National City Bank v. Facilities Asset Management, Inc.*, 145 Ohio App. 3d 340, 345, 762 N.E.2d 1060 (2001), a case which simply reiterates the well-established proposition that a party cannot "prove fraud by claiming that the inducement to enter into an agreement was a promise which is squarely contradicted by the written terms ***of that***

*agreement*" (emphasis supplied.)  Defendants do not, however, show any agreement that meets these criteria.

As explained more fully in Plaintiff's Memorandum in Opposition, the parties reached a binding agreement on March 27th.  Quinn, Ranz and Mebane all testified that they left the March 27th meeting with the understanding that they had an agreement.  (*Quinn Depo.* at 179-180 attached hereto as **Exhibit A**; *Ranz Aff.*, ¶ 12; *Quinn Aff.*, ¶ 13; *Mebane Depo.* at 109 attached hereto as **Exhibit B**.)  (Q&R, of course, was induced to enter into this agreement by Mebane's misrepresentation and nondisclosure concerning the ongoing negotiations and pending sale of UTF.)  In its Memorandum in Opposition, Defendants rely solely upon emails sent by Mebane **<u>after</u>** the parties' March 27th Agreement to argue that no justifiable reliance could have occurred.  (*Dfts' Memo. in Opp.* at 3-4.)  The case law cited by Q&R deals with a promise that was "contradicted by the written terms **of that agreement**." *National City*, 145 Ohio App. 3d at 344 (emphasis supplied).  Certainly, there was no contradiction between the parties' March 27th Agreement and the fraudulent inducement (Mebane's misrepresentations and nondisclosures) concerning the sale of the business.  After-the-fact emails that never became part of any written agreement certainly do not invoke the parol evidence rule and do not preclude Q&R from demonstrating justifiable reliance upon UTF's statements and nondisclosures made before the contract was formed.

        **2.    Q&R's fraudulent inducement claim is not barred as a promise of future action.**

Defendants also argue that justifiable reliance cannot be established because their misrepresentations were merely promises concerning future actions.  (*Dfts' Memo. in Opp.* at 4.)  As an initial matter, Defendants' misrepresentations were not limited to "future actions," but dealt with existing facts:  **UTF misrepresented the ongoing state of negotiations with Avgol**.

Mebane specifically told Q&R on February 13 and 14 that industry rumors about Avgol acquiring UTF were untrue. (*Quinn Depo.* at 155 attached hereto as **Exhibit A**.) Representations about the current state of negotiations obviously concern existing facts, not future actions.

Worse yet, Defendants misstate the law in regard to promises of future action. Although "vague promises of future benefits or opportunities" may not be sufficient to support a promissory estoppel claim, specific promises of future action will support such a claim. *See, e.g.*, *Buren v. Karrington Heath, Inc.*, 2002 WL 58930 (*Franklin App.,* Jan. 17, 2002) ("specific promise of employment until retirement may, if made under circumstances in which reliance upon the promise is reasonable, support a promissory estoppel claim") (attached hereto as **Exhibit G**); *Nilavar v. Osborn,* 127 Ohio App. 3d 1, 17, 711 N.E.2d 726, 736 (1988) (promise to submit proposal on behalf of doctors in future was sufficiently definite to support claim for promissory estoppel).

Furthermore, the line of authority cited by Defendants relating to promises too vague to be enforced is limited to employment contract cases where a specific promise is needed to overcome the presumption of employment-at-will. As the *Nilavar* court explained:

> "Nevertheless, appellees have cited a number of cases involving employers and employees that have found promises too vague to merit enforcement, in light of the employment-at-will doctrine…. These [employment] cases however, differ greatly from the present case. Nilavar does not have to overcome the presumption of fate of employment at will because she's not asserting a wrongful firing." (*Id.*)

Similarly, the case at bar did not involve at-will employees, but rather two commercial entities, Q&R and UTF, who entered into a contract for the provision of services.

### B.     UTF Engaged in Misrepresentations and/or Nondisclosures

There can be no dispute that UTF engaged in misrepresentations and/or nondisclosures. Nowhere in its memorandum in opposition does UTF in any way dispute the central facts of this case: at the same time that Mebane was recruiting Q&R to join UTF, UTF was engaged in substantive sales negotiations with Avgol and these negotiations were not disclosed to Q&R. UTF does not deny that it was engaged in ongoing negotiations with Avgol. Nor does it deny that it did not disclose these negotiations to Q&R. The timeline set forth in Q&R's initial memorandum makes absolutely clear the extent of UTF's and Mebane's duplicity. (*See Ptf's Mot. for Partial Sum. J.* at 11-12.)

#### 1.     UTF does not deny that it never disclosed the ongoing negotiations.

UTF first argues that "Exhibits A-D attached hereto show that UTF did not commit to protecting Q&R in the event of possible sale." (*Dfts' Memo. in Opp.* at 5.) This argument completely misses the point. Defendants' exhibits A-D were all documents created **after** the parties' March 27 agreement. They have absolutely no relevance to UTF's conduct in fraudulently inducing Q&R to enter into the March 27th Agreement.

Second, UTF focuses only on whether UTF "commit[ed] to protecting Q&R in the event of a possible sale." (*Dfts' Memo. in Opp.* at 5.) Again, this largely misses the point. It is true that UTF misrepresented how it would protect Q&R if the sale that UTF so adamantly denied did in fact occur. But the more serious set of misrepresentations and/or nondisclosures in this case deals with UTF's complete failure to disclose the ongoing sales negotiation with Avgol. Mebane flatly denied that there were sales negotiations going on and that a sale would occur. (*Quinn Depo.* at 155 attached hereto as **Exhibit A**; *Quinn Aff.,* ¶ 9, 10; *Ranz Aff.,* ¶ 7.) It is beyond dispute that negotiations were ongoing and UTF never disclosed these negotiations to Q&R

Case 1:01-cv-00641-MRB     Document 31     Filed 05/07/2004     Page 6 of 11

- 6 -

despite being asked. The misrepresentation/nondisclosure element of the promissory estoppel claim is clearly met.

In the next part of the memorandum, UTF makes perhaps its most disingenuous argument of all. It asserts that "while Mebane had preliminary discussions with Avgol, he terminated the discussions when he referred Avgol to Mike Delaney and Ronald Smith." (*Dfts' Memo. in Opp*. at 7.) So what? Everyone agrees about this. There is no question that Mebane handled the first stages of negotiations and that on March 15th Mebane sent an email to Ron Smith and Mike Delaney of Unifi's mergers and acquisitions department asking them to take over responsibility for negotiations with Avgol. (Plaintiff's Motion for Partial Summary Judgment with Memorandum in Support at 8; *Mebane Depo.* at 197-198 attached hereto as **Exhibit B**; *Ptf.'s Ex. 16* attached hereto as **Exhibit C**.) The larger point, however, is that during the relevant time period when Q&R was finalizing its arrangement with UTF, UTF was in the process of negotiating the sale of its business to Avgol. Nowhere does UTF deny this. Regardless of who handled the final aspects of the sale to Avgol, sales negotiations were not disclosed to Q&R.[1] Plainly, UTF and Mebane engaged in misrepresentations and nondisclosures.

**2.     UTF had a duty to disclose the negotiations and pending sale.**

UTF also argues that there was no duty on the part of UTF to disclose the negotiations and pending sale. As an initial matter, whether a duty existed is largely irrelevant because Defendants engaged in affirmative misrepresentations. Nonetheless, it is also clear that UTF had a duty to disclose the sales negotiations.

---

[1] Mebane, himself, by UTF's own admission, was involved in the negotiations up through the parties' February meeting in Mocksville (when Mebane denied the rumors that a sale was in the works), and right up until twelve days before the agreement with Q&R was finalized.

A duty to disclose information arises where there is a "relationship of trust and confidence" between the parties.  *State v. Warner*, 55 Ohio St. 3d 31, 53, 564 N.E.2d 1839 (1990).  The Sixth Circuit has made clear that under Ohio law:

> "The duty to speak does not depend on the existence of a fiduciary relationship between the parties.  It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence."  *Central States Stamping Co. v. Thermal Equipment Co.,* 727 F.2d 1405, 1409 (6th Cir. 1984).

Here, there can be no doubt that a relationship of trust and confidence existed between the parties.  Q&R was relying upon Mebane's assurances in entering into this relationship.  Mebane invoked their trust and confidence on numerous occasions.  He repeatedly referred to their negotiations as "a North Carolina agreement" whereby a handshake was as good as a written contract.  (*Mebane Depo.* at 145-146, 151 attached hereto as **Exhibit B**; *Quinn Aff.*, ¶ 9; *Ranz Aff.*, ¶ 9; *Ranz Depo.* at 60 attached hereto as **Exhibit D**.)  Mebane promised Quinn and Ranz that if anything happened, they would be taken care of.  (*Ranz Aff.*, ¶ 12; *Quinn Aff.*, ¶ 13.)  He even invoked his treatment of UTF's salesperson, Gene Kelly, to assure Quinn and Ranz that they were warranted in placing their trust and confidence in him.  (*Mebane Depo.*, at 248 attached hereto as **Exhibit B**.)

Quinn and Ranz, in turn, made clear the trust that they were placing in Mebane – relying upon his handshake assurances, risking their careers based on his word that the industry rumors about talks between Avgol and UTF were untrue and that a deal with Avgol "ain't gonna happen," and even notifying Cleaver and Associates of their new relationship prior to formalizing a written contract.  As a matter of law, this was a relationship of trust and confidence.

Defendants cite the case of *Gouge v. Bax Global, Inc.*, 252 F. Supp. 2d 509, 517 (N.D. Ohio 2003), but that case actually supports Q&R's position. *Gouge* made clear that the duty to disclose also may arise "when one party to a business transaction knows matters 'that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading.'" *Id.* (quoting Restatement of the Law (Second), Torts § 551(2).) Here, at the very least, Mebane's initial statements indicating that a sale would not occur created a duty to disclose the extent of UTF's dealings with Avgol.

**III.    Q&R IS ENTITLED TO SUMMARY JUDGMENT ON ITS PROMISSORY ESTOPPEL CLAIM**

UTF sets forth only the most cursory argument against summary judgment on Q&R's promissory estoppel claim. (*Dfts' Memo. in Opp.* at 9-10.) It first returns to the argument that North Carolina law applies. (*Id.*) To the contrary, Ohio law applies because it is the primary state of contract performance. (*See Pltf's Memo. in Opp.* at 1-2) (citing *Schulte Radio Products, Ltd., v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, 438, 453 N.E. 2d 683 (1983).)

Likewise, the *Swanson v. Chem-Nuclear Sys., Inc.,* 1997 U.S. Dist. LEXIS 16054, *6 (E.D.N.C. Sept. 15, 1997) case cited by Defendants has no applicability because the case at bar does not involve an employment contract, rather it involves two commercial entities, Q&R and UTF, who reached an agreement as to a sales and commission relationship. (*See Ptf's Memo. in Opp.* at 8-9.)

Defendants also argue that the promises that UTF made to Q&R were too vague to support a claim for promissory estoppel. (*Dfts' Memo. in Opp.* at 10.) As explained previously in this brief, Defendants misstate the law by inappropriately relying upon cases concerning at-will employees. (*See supra* at 4.) Here there were a number of specific promises made by Defendants: that the industry rumors that negotiations between UTF and Avgol were taking

place were false; that a sale "ain't gonna happen;" and that if any sale did occur that Q&R would "be taken care of." These promises are more than sufficient to support a claim for promissory estoppel.

### IV. Q&R IS ENTITLED TO SUMMARY JUDGMENT AS TO $95,000 IN GUARANTEED PAYMENTS

Up until this point, there has been absolutely no dispute that Q&R is at least entitled to $95,000 in guaranteed payments. Michael Mebane's March 30 email unequivocally sets forth Q&R's entitlement to these funds. (Ptf's Ex. 5 attached hereto as **Exhibit E**.) Mebane even admitted in his deposition that in the event of a sale of the business, Q&R would be entitled to one hundred twenty (120) days of compensation. (*See Mebane Depo.* at 108, 221-222 attached hereto as **Exhibit B**.) Now, for the first time, UTF tries to argue that even these payments are in doubt. Remarkably, UTF does not try to argue that it never agreed to make these payments. Rather, it argues that it never agreed as to the extent of the protection that Q&R would receive in the event of a sale, and therefore, it somehow does not owe Q&R the undisputed payments. (*Dfts' Memo. in Opp.* at 10-12.)

This argument fails for a number of reasons. First, as explained in Plaintiff's Memorandum in Opposition to Summary Judgment, the contract was sufficiently definite to be enforceable. The parties intended to be bound, and the Court should supply any missing terms. *See, e.g., Litsinger Sign Co. v. American Sign Co.,* 11 Ohio St. 2d 114, 227 N.E.2d 609 (1967).

In fact, the contract was sufficiently definite that UTF began performing under the contract, by paying Q&R its initial $25,000. (*Ranz Depo.,* at 89 attached hereto as **Exhibit D**; Dfts' Ex. 83 attached hereto as **Exhibit F**.) This partial performance is further evidence that UTF intended to be bound by the contract as a whole and in particular by their commitment to

make the $95,000 in guaranteed payments. *Oglebay Norton Co. v. Armco Inc.,* 52 Ohio St. 3d 232, 234, 556 N.E.2d 515 (1990).

In short, Defendants' own emails set forth Q&R's entitlement to the $95,000; Mebane conceded the money was owed in his deposition; and UTF has already paid the first installment. Defendants cannot now seriously argue that Q&R is not entitled to these funds.

## V.    CONCLUSION

For all the foregoing reasons, this Court should grant Plaintiff's Motion for Partial Summary Judgment and deny Defendants' Motion for Summary Judgment.

                      Respectfully submitted,

                      s/Dwight A. Packard, II
                      James E. Burke (0032731)
                      Dwight A. Packard, II (0067182)
                      1400 Provident Tower
                      One East Fourth Street
                      Cincinnati, Ohio  45202
                      Tel. (513)579-6429
                      Fax (513)579-6457
                      jburke@kmklaw.com
                      dpackard@kmklaw.com
                      *Attorneys for Plaintiff,*
                      *Q&R Associates, Inc.*

OF COUNSEL:
KEATING, MUETHING & KLEKAMP
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202
(513) 579-6400

- 11 -

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 7, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

      Frederick J. McGavran
      Frost Brown Todd, LLC
      2200 PNC Center
      201 East Fifth Street
      Cincinnati, Ohio 45202

      s/Dwight A. Packard, II
      Dwight A. Packard, II
      KEATING, MUETHING & KLEKAMP PLL
      1400 Provident Tower
      One E. Fourth St.
      Cincinnati, OH 45202
      Tel:  (513) 579-6936
      Fax: (513) 579-6457
      dpackard@kmklaw.com