# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Q&R Associates, Inc.,                     :    Case No.: C-1-01-641
                                          :
      Plaintiff,                   :    Judge Spiegel
                                          :
     v.                                :    Affidavit of Michael Mebane
                                          :
Unifi, Inc., et al.,                      :
                                          :
      Defendants.                  :

FILED

OCT 2 2 2001

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

State of North Carolina    )
                 ) SS:
County of Guilford       )

   1.    I, Michael Mebane, being first duly cautioned and sworn, say that I was the President of Defendant Unifi Technical Fabrics, LLC. ("UTF") from August 3, 1999 until July 31, 2001.

   2.    UTF is a North Carolina Limited Liability Company with its principal place of business in Greensboro, North Carolina. UTF's sole member is Unifi Manufacturing, Inc., which is a wholly owned subsidiary of Defendant Unifi, Inc. ("Unifi").

   3.    Unifi is a New York Corporation with its principal place of business in Greensboro, North Carolina. I was a Vice President of Unifi from January 20, 1999 until July 31, 2001.

   4.    Unifi produces and processes textured yarns for manufacturers of home furnishings, apparel, industrial fabrics, automotive and home upholstery, hosiery and thread. Unifi's home offices are in Greensboro, North Carolina. It has eighteen manufacturing and warehousing facilities, one distribution center and one recycling center in North Carolina.


EXHIBIT
Pl. 25

5.    Prior to selling its manufacturing assets to Avgol America Inc. ("Avgol"), UTF owned a manufacturing plant in Mocksville, North Carolina, that produced spun melt non-woven fabric. Spun melt non-woven fabrics are used primarily in the medical/pharmaceutical industry for protective clothing, diapers, and similar products. UTF's production processes products and customers were separate and distinct from those of Unifi. UTF operated as a separate corporate entity from Unifi.

6.    Neither UTF nor Unifi have offices or personnel in Ohio or own real property in Ohio.

7.    On or about mid-year 2000, after having seen a Q&R Associates, Inc. ("Q&R") advertisement in a trade magazine, I telephoned Michael Quinn, a principal of Q&R. I left him a voice mail message asking him to call about Q&R's ability to sell spun melt non-woven fabrics for UTF.

8.    After January 15, 2001, Mr. Quinn telephoned me. We scheduled a meeting between Mr. Quinn and John Ranz, the other principal in Q&R, in Mocksville, North Carolina, to explore a possible arrangement for Q&R to sell UTF's spun melt non-woven fabrics.

9.    On or about February 13 and 14, 2001, Mr. Quinn and Mr. Ranz visited UTF's manufacturing facilities in Mocksville, North Carolina. They were also given a courtesy tour of Unifi's manufacturing facilities in Yadkinville, North Carolina. During the February 13 and 14 visit, Mr. Quinn and Mr. Ranz met with the following UTF personnel: me; Allan Logie, General Manager; Kevin Frost, Plant Manager; Richard Lewis, Technical Services Director; Krister Erlandsson, Technical Manager; Douglas Nichols, Director of Sales and Marketing and Kazan Joyner, Administrative Assistant.

2

10.    Mr. Quinn and Mr. Ranz stated that Q&R was a subagent for Cleaver & Associates ("Cleaver"), a Philadelphia, Pennsylvania firm, which was a sales agent for Avgol for the same spun melt non-woven products that UTF manufactured. In subsequent conversations Mr. Quinn and Mr. Ranz stated that Q&R controlled a group of customers, which they could switch from Avgol products to UTF products. There was never any discussion of Q&R representing Unifi on any of its products.

11.    We also discussed a possible sale of UTF's manufacturing facilities to Avgol, which Mr. Quinn and Mr. Ranz said they had heard about through rumors in the industry. I stated that there had been conversations underway in the past and I was under a confidentiality agreement and could not discuss any such matters.

12.    When discussions between Avgol and UTF did not proceed satisfactorily, I terminated them in March 2001.

13.    On March 27, 2001, Mr. Quinn, Mr. Ranz and I met in UTF's suite at a trade show in Miami, Florida to discuss Q&R representing UTF's personal care products in the United States and Canada. There was no discussion of Q&R representing Unifi on any of its products at any time.

14.    After I thought we had reached an agreement, I stated that UTF and Q&R had reached a "North Carolina agreement" on the terms as I had stated them and shook hands with Mr. Quinn and Mr. Ranz on the verbal agreement.

15.    Douglas Nichols, UTF's Director of Sales and Marketing and Richard Lewis. UTF's Technical Services Director and UTF sales employee Gene Kelly attended subsequent meetings with Mr. Quinn and Mr. Ranz at the trade show.

3

16.    On March 30, 2001, I sent Mr. Quinn an email stating the terms of the verbal agreement as I had stated them at the Miami meeting. My email began: "I am happy that we have agreed upon terms for you to represent Unifi Technical Fabrics. Please let me know if I got any of it wrong or I misunderstood anything we agreed to." There was no discussion in Miami and no statement in this email or any other about Q&R representing Unifi. Among other terms, I stated: "If we need to drop our price below a $1.00 to get the business, you will share in the pain with a reduction of commission on that business." A copy of my email is attached as Exhibit 1.

17.    UTF was to process the orders in North Carolina, manufacture the products in North Carolina, ship the products from North Carolina to the customer, bill the customers from North Carolina and collect the proceeds in North Carolina. Q&R would solicit orders for UTF customers throughout the United States. A copy of Q&R's customer list provided to UTF, showing customers throughout the United States is attached hereto as Exhibit 2.

18.    By email dated April 1, 2001, Q&R replied by email "with 2 exceptions" to UTF's terms. First, Q&R did not agree on a $1 threshold for "sharing the pain." Second, Q&R wanted to be protected against a possible sale of UTF. A copy of that email is attached as Exhibit 3.

19.    By email dated April 2, 2001, I stated that UTF would talk with Q&R about sharing the pain if prices dropped below ninety-six cents and rejected the proposal for a change of control provision. A copy of my email is attached as Exhibit 4.

20.    UTF and Q&R contemplated a definitive written agreement. By letter to Mr. Quinn dated April 25, 2001, I reported that I had instructed company counsel to write a provision that the parties would discuss "sharing the pain" if prices dropped below ninety-six cents, but that I could not bind UTF to a change of control provision. With my letter, I enclosed a check

4

for $25,000 from UTF to Q&R as its first month draw against commissions. The parties did not execute a definitive written agreement. Copies of my letter and the check are attached as Exhibits 5 and 6.

21.    On or about April 10 and 11, 2001, Mr. Quinn and Mr. Ranz visited UTF's facilities in Mocksville, North Carolina again to discuss UTF's internal sales infrastructure and client development. Mr. Logie, Mr. Frost, Mr. Lewis, Mr. Erlandsson, Mr. Nichols and Ms. Joyner met with Mr. Quinn and Mr. Ranz.

22.    On April 20, 2001, a non-binding letter of intent was executed for Avgol to purchase UTF's manufacturing facilities upon the meeting of certain conditions. On May 11, 2001, a binding letter of intent for Avgol to purchase UTF's manufacturing facilities was executed.

23.    Ronald Smith, Director of Business Development negotiated the sale of UTF's assets to Avgol.

24.    UTF publicly disclosed the pending transaction on May 14, 2001.

25.    No one associated with UTF or Unifi attended any meetings in Ohio with anyone associated with Q&R. Neither UTF nor Unifi entered any contracts or agreements in Ohio with Q&R.

26.    I believe that Mr. Logie, Mr. Frost, Mr. Lewis, Mr. Erlandsson, Mr. Nichols, Ms. Joyner and Mr. Smith are important witnesses in this case. Mr. Nichols, Mr. Lewis and Mr. Smith are currently employed by Unifi and work at the home offices in Greensboro, North Carolina.

27.    Mr. Logie, Mr. Frost and Ms. Joyner are employed by Avgol in Mocksville, North Carolina. Mr. Erlandsson resides in Winston-Salem, NC.

This the _19_ day of October, 2001.

_Michael Mebane_
Michael Mebane

Sworn to and subscribed before me, a notary public, this _19th_ day of October 2001.

_A. B. Weaver_
Notary Public

My commission expires: _4-19-06_

CINlibrary/1108068.1

A. B. WEAVER
NOTARY PUBLIC
GUILFORD COUNTY, NC
Commission Expires _4-19-06_

6

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Affidavit has been served on James E.

Burke, Esq., Trial Attorney for Plaintiff Q&R Associates, Inc., 1800 Provident Tower, 1 East

Fourth St., Cincinnati, Ohio 45202 by ordinary U.S. Mail on this 22nd day of October, 2001.