# EXHIBIT "K"

G.T. LABORATORIES, INC., an Illinois Corporation, Plaintiff, v. The COOPER COMPANIES, INC., d/b/a COOPERVISION OPHTHALMIC PRODUCTS and/or COOPERVISION OPHTHALMIC PRODUCTS BUSINESS UNIT, a Delaware corporation, Defendant.

No. 92 C 6647

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1998 U.S. Dist. LEXIS 15745

September 21, 1998, Decided
September 24, 1998, Docketed

**DISPOSITION:** [*1] Defendant Cooper's motion for new trial [135-1] denied. Plaintiff G.T.'s motion to submit surreply comments regarding defendant's motion for new trial [142-1] granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant corporation brought a motion for a new trial under *Fed. R. Civ. P. 59*. A jury found in favor of plaintiff laboratory in the amount of $ 1.7 million.

**OVERVIEW:** The laboratory brought suit against the corporation. A trial was conducted as to the issue of the laboratory's damages resulting from the corporation's breach of a supply contract between the parties. The corporation brought a motion for a new trial, arguing the court erred when it granted the laboratory's motion in limine to exclude the testimony of the corporation's expert witness, the court improperly submitted non-IPI (Illinois Pattern Instructions) jury instructions, and the court committed prejudicial error by failing to admit one of the corporation's exhibits. The corporation was not entitled to a new trial. It was unnecessary for the court to have conducted a full-fledged Daubert analysis when it excluded the corporation's expert witness. There was no error in the use of additional non-IPI instructions to aid the jury in understanding the unique issues involved in a lost profits case. Any allegedly misleading aspects of the jury instruction did not rise to the level necessary to grant a new trial. Exclusion of one of the corporation's exhibits was not prejudicial because the corporation's counsel spent part of its closing argument discussing the testimony on the exhibit.

**OUTCOME:** The court denied the corporation's motion for a new trial. The court granted the laboratory's motion to submit surreply comments regarding the corporation's motion for new trial.

**CORE TERMS:** new trial, final judgment, motion in limine, indirect, variable, proposed instruction, breach of contract, juror, rebuttal witness, sentence, contract price, methodology, calculation, misleading, post-trial, deducted, overhead, formula, extension of time, expert testimony, written motion, offer of proof, limine, box, accountant, untimely, abuse of discretion, written order, docket entry, court erred

**LexisNexis(TM) Headnotes**

*Civil Procedure > Relief From Judgment > Motions for New Trial*

[HN1]*Fed. R. Civ. P. 59* states that a motion for a new trial "shall be" filed no later than ten days after "entry of the judgment." *Fed. R. Civ. P. 6(b)* states that this court may not enlarge the time for filing a Rule 59 motion. To determine the date of the entry of judgment, *Fed. R. Civ. P. 58* is applicable and states, in relevant part: upon a general verdict of a jury, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court. Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in *Fed. R. Civ. P. 79(a)*. Rule 79(a) states, in relevant part, that the entry of an order or judgment shall show the date the entry is made.

*Civil Procedure > Entry of Judgments*

[HN2]A *Fed. R. Civ. P. 58* judgment is designed to produce a distinct indication that the case is at an end and that it should be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion. However, at the same time, the Seventh Circuit also has repeatedly discouraged district courts from entering final judgments on minute orders and instead has recommended strongly that such judgments be entered on Form AO 450.

*Civil Procedure > Relief From Judgment > Motions for New Trial*

[HN3]The "unique circumstances" exception to the ten-day time limitation under *Fed. R. Civ. P. 59* is a narrow exception to Rule 59 prohibiting untimely appeals. An untimely appeal cannot be saved under the "unique circumstances" doctrine if the petitioner has not received specific assurance by a judicial officer that this act had been properly done.

*Civil Procedure > Relief From Judgment > Motions for New Trial*

[HN4]Simply granting a written motion for an extension of time is not enough to apply the unique circumstances doctrine.

*Civil Procedure > Relief From Judgment > Motions for New Trial*

[HN5]A new trial may be granted for these reasons: (1) the verdict is against the clear weight of the evidence; (2) the damages are excessive; or (3) the trial was unfair to the moving party. The district court's ruling on a motion for a new trial is reviewed for abuse of discretion.

*Evidence > Witnesses > Expert Testimony*

[HN6]Under Daubert, a court conducts a two-step inquiry to determine if the proposed expert will (i) testify as to scientific knowledge that (ii) will assist the trier of fact to understand or determine a fact in issue.

*Governments > Courts > Authority to Adjudicate*

[HN7]Where the issues are "fully briefed" and then ruled upon, there is less of a need for the court to re-analyze those arguments.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*

*Evidence > Witnesses > Expert Testimony*

[HN8]Whether to exclude testimony under Daubert is reviewed for abuse of discretion.

*Contracts Law > Remedies > Compensatory Damages*

[HN9]Under controlling Illinois law, variable costs should be considered in the calculation of lost profits.

*Evidence > Witnesses > Expert Testimony*

[HN10]Under Daubert, courts typically examine the following factors to determine the reliability of the proposed expert testimony: (1) whether the theory or technique has been or can be reliably tested; (2) whether it has been subjected to peer review or publication; (3) the known or potential rate of error of the technique; and (4) the general acceptance of the methodology.

*Civil Procedure > Jury Trials > Jury Instructions*

[HN11]State law determines the substance of the jury instructions in a diversity case, and Illinois law provides the rules of decision. Both parties also agree that, under General Local Rule 5.00, the use of Illinois Pattern Instructions ("IPI") as to all issues of substantive law is required. Standing Order on Pretrial Procedures in Civil Cases and Establishing Pretrial Procedure.

*Civil Procedure > Jury Trials > Jury Instructions*

[HN12]There is no error in the use of additional non-IPI instructions to aid the jury in understanding the unique issues involved in a lost profits case.

**COUNSEL:** For G. T. LABORATORIES, INC., plaintiff: John Donovan Lien, Christopher William Brownell, Bobby Dean Hines, Jr., Dianne L. Hicklen, Foley & Lardner, Chicago, IL.

For THE COOPER COMPANIES INC dba Coopervision Ophtalmic Products Business Unit dba Coopervision Ophthalmic Products, defendant: Joel Gerald Chefitz, Patrick J. Lamb, Jaye Quadrozzi, Teme T. Feldman, Sonya D. Naar, Katten, Muchin & Zavis, Chicago, Il.

For THE COOPER COMPANIES INC dba Coopervision Ophtalmic Products dba Coopervision Ophtalmic Products Business Unit, counter-claimant: Joel Gerald Chefitz, Patrick J. Lamb, Jaye Quadrozzi, Sonya D. Naar, Katten, Muchin & Zavis, Chicago, Il.

For G. T. LABORATORIES, INC., counter-defendant: John Donovan Lien, Christopher William Brownell, Bobby Dean Hines, Jr., Foley & Lardner, Chicago, IL.

**JUDGES:** BLANCHE M. MANNING, United States District Court Judge.

**OPINIONBY:** BLANCHE M. MANNING

**OPINION: MEMORANDUM AND ORDER**

A jury trial was held between plaintiff G.T. Laboratories, Inc. ("G.T.") and defendant The Cooper Companies, Inc. ("Cooper"). The trial was limited to the issue of G.T.'s damages resulting from Cooper's breach of a supply contract between the parties. After a two and a half day trial, the jury returned a verdict for G.T. in the amount of $ 1,700,000. This matter is presently before the court on the motion of defendant Cooper for a new trial. Cooper raises three separate grounds for a new trial under Rule 59. For the reasons set forth below, the court denies Cooper's motion for a new trial.

**Time Limitations Under Rule 59**

As a preliminary issue, this court must address G.T.'s argument that Cooper's motion for a new trial pursuant to Rule 59 is untimely. [HN1]Rule 59 states that a motion for a new trial "shall be" filed no later than ten days after "entry of the judgment." Rule 6(b) states that [*2] this court may not enlarge the time for filing a Rule 59 motion. To determine the date of the entry of judgment, Rule 58 is applicable and states, in relevant part:upon a general verdict of a jury, . . . the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court . . . . Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).Rule 79(a) states, in relevant part, that the "entry of an order or judgment shall show the date the entry is made."

G.T. argues that Cooper filed the present motion for a new trial more than ten days after the final judgment. G.T. identifies the final judgment as this court's minute order dated January 8, 1998, which set forth the jury's verdict. That order was dated January 8, 1998 but was not entered into the docket until January 13, 1998 (hereinafter, the "January 13th minute order"). On January 30, 1998, Cooper filed its motion for a new trial under Rule 59. Cooper filed its motion on January 30, 1998 based on this court's statements in open court on January 7th that [*3] Cooper could file its post-trial briefs by January 30th. If the January 13th minute order is the final judgment and if no exceptions apply, then Cooper's motion for a new trial is untimely.

G.T. states that the ten-day time limit under Rule 59 is absolute unless the narrow "unique circumstances" exception applies. G.T. argues that such "unique circumstances" are not present in this case. Cooper does not really argue for this exception but instead argues that no final judgment has been entered in this case because no Form AO 450 has ever been entered. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n1 On March 11, 1998, G.T. filed a motion to submit surreply comments regarding defendant's motion for a new trial, in which G.T. addressed the timeliness question in greater detail. The court grants the motion, and has reviewed G.T.'s additional arguments.

- - - - - - - - - - - - End Footnotes- - - - - - - - -

Given the parties' positions, this court first must determine whether its January 13th minute order is a final judgment under Rule 58. In *Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994), the [*4] Seventh Circuit stated that [HN2]a Rule 58 judgment is "designed to produce a distinct indication that the case is at an end" and that it "should be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion." There has been some discussion in the case law as to whether a minute order can satisfy the separate document requirement of Rule 58. The Seventh Circuit has stated that a minute order may suffice under Rule 58. See, e.g., *Paganis v. Blonstein*, 3 F.3d 1067, 1070 n. 1 (7th Cir. 1993). However, at the same time, the Seventh Circuit also has repeatedly discouraged district courts from entering final judgments on minute orders and instead has recommended strongly that such judgments be entered on Form AO 450. See *Otis*, 29 F.3d at 1163 ("Although minute orders pepper the record, cases often peter out without the clarity that a Rule 58 judgment produces"); *Hope v. United States*, 43 F.3d 1140, 1142 (7th Cir. 1995) ("We will accept the minute order form as the required separate document in this case, but we remind the clerks of the district courts that Form AO 450 is [*5] the preferred and sound vehicle for complying with Rule 58").

In this case, the January 13th minute order states: "Trial ends. Enter jury verdict. The jury finds in favor of the plaintiff in the amount of $ 1,700,000.00." Although this order seems to satisfy the requirements of a Rule 58 final judgment -- it is self-contained, on a separate document, and sets forth who won -- this court believes that it is not the final judgment. See, e.g., *De Lisio v. Simon*, 1994 U.S. Dist. LEXIS 16294, 93- C-2835, 1994 WL 654678, *1 (N.D. Ill. Nov. 14, 1994) ("Although the minute order possibly could be construed as the entry of judgment, the court finds that the AO-450, and not the minute order, constitutes the entry of judgment in the instant case"). The minute order does not explicitly refer to a final judgment nor contain the word "judgment" anywhere on the order. See *Benjamin v. United States*, 833 F.2d 669, 671 (7th Cir. 1987) ("the language that the district court used in its [purported] judgment is controlling"). The box "Other docket entry" is checked. n2 In addition, there is a box labeled "Mail AO 450 form," which was not checked, although the box labeled "Docketing to mail notices" was checked. No Form [*6] AO 450 has ever been filed in this case at any time. The docket entry corresponding to January 13th minute order states: "Trial ends. Enter jury verdict. The jury finds in the favor of the plaintiff in the amount of $ 1,700,000. Mailed notice." It likewise does not indicate a final

Page 3

judgment has been entered nor contain the word "judgment."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 The minute order here does not contain a separate box labeled "Judgment is entered as follows," which apparently was included in an older form of the minute order. See *Johnson v. Shalala,* 1993 U.S. Dist. LEXIS 14313, No. 91- C-3260, 1993 WL 408368, *2 (N.D. Ill. Oct. 8, 1993) (noting that cases often relied on "which category was checked off on the minute order: 'judgment is entered as follows' or 'other docket entry?'" but "that test is of no avail to us here, because the minute order form in this case does not have a pre-printed category of 'judgment is entered as follows'").

- - - - - - - - - - - - End Footnotes- - - - - - - - -

Because this court finds that the January 13th minute order is not the final judgment for purposes of Rule 58, this court [*7] will enter a final judgment on Form AO 450 contemporaneously with the issuance of this order and opinion. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 In its brief, G.T. asks that if the court holds that the January 13th minute order was not the final judgment, the court enter a final judgment "in accordance with Official Form 31 in the Appendix of Forms to the Federal Rules of Civil Procedure, so that no confusion exists as to the entry of the order of judgment." The court believes that Form AO 450 will suffice to clearly indicate a final judgment. Form AO 450 is substantially the same as the Official Form 31 in the Appendix of Forms.

- - - - - - - - - - - - End Footnotes- - - - - - - - -

Even if the January 13th order was held to be the final judgment, this court nonetheless believes that Cooper's motion falls within [HN3]the "unique circumstances" exception to the ten-day time limitation under Rule 59. The "unique circumstances" exception was created in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 9 L. Ed. 2d 261, 83 S. Ct. 283 (1962)* and is a narrow exception to the rule prohibiting [*8] untimely appeals. In *Osterneck v. Ernst & Whinney, 489 U.S. 169, 179, 103 L. Ed. 2d 146, 109 S. Ct. 987 (1989),* the Supreme Court stated that an untimely appeal could not be saved under the "unique circumstances" doctrine because the petitioner had not received "specific assurance by a judicial officer that this act had been properly done." In *Eady v. Foerder, 381 F.2d 980 (7th Cir. 1967),* the Seventh Circuit recognized the "unique circumstances" exception. Later, in *Varhol v. Nat'l Railroad Passenger Corp., 909 F.2d 1557 (7th Cir. 1990),* in an evenly divided vote by an *en banc* court, the Seventh Circuit declined to overrule Eady.

G.T. argues that the exception does not apply here based on several cases in which the Seventh Circuit has refused to apply the doctrine. See *Green v. Bisby, 869 F.2d 1070, 1072 (7th Cir. 1989)* ("mere entry of a minute order" granting an extension of time to file Rule 59(e) motion is not "an act of affirmative representation by a judicial officer as contemplated by Osterneck" sufficient to invoke the "unique circumstances" exception); *Hope v. United States, 43 F.3d 1140, 1143 (7th Cir. 1995)* ("unique circumstances" exception [*9] not applicable where the district court "did nothing more than enter minute orders" granting two motions for extensions of time to file a motion for reconsideration). n4 Those cases stand for the proposition that [HN4]simply granting a written motion for an extension of time is not enough. See, e.g., *United States v. Boyd, 172 F.R.D. 363, 367 (N.D. Ill. 1997)* (interpreting Green and Hope "to say that the mere routine granting of a motion for more time is not enough to justify application of the exceptional circumstances doctrine") (emphasis added).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 In Hope, the Seventh Circuit also relied in part on the fact that the petitioner did not file a motion under Rule 59 but instead filed a generic motion for reconsideration and therefore the district court "may have assumed that [the petitioner] intended to move for relief under Rule 60(b) because [the petitioner] planned not to file his motion until after Rule 59(e)'s ten day limit." *43 F.3d at 1143.*

- - - - - - - - - - - - End Footnotes- - - - - - - - -

The question thus arises whether the facts [*10] of this case fall within the holdings in Green and Hope or whether they present something more than the mere routine granting of a written motion for extension of

time. n5 Although this is a close question, the court finds that the facts of this case are different and justify the application of the "unique circumstances" exception. On January 7, 1998, after a verdict was returned and the court had excused the jury, the court asked counsel for Cooper if he wished a date to file post-trial motions. After counsel accepted the court's invitation, the court told counsel that Cooper could file its motions on January 30th and that Cooper should just present its motion at that time. G.T. did not object to the filing of post-trial motions on that date. Cooper did not file a written motion for extension of time. In addition, at the time this court told Cooper it could file its post-trial briefs on the 30th, the court had not entered a final judgment. In sum, this court takes some responsibility along with counsel for the confusion that arose with regard to the filing of post-trial motions. Based on all these factors, the court finds that it gave Cooper specific assurances that its motion [*11] would be timely. For these reasons, the court will address the merits of Cooper's Rule 59 motion for a new trial.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n5 In some ways, the Seventh Circuit's *en banc* opinion in Varhol presents a closer factual analogy than either Green or Hope. In Varhol, the district court judge told the party "in open court he could have 21 days to file any Rule 59 motions." *909 F.2d at 1563*. Unfortunately, the Seventh Circuit's opinion did not address whether this set of facts fell within the "unique circumstances" exception because the court's per curiam opinion found an alternative basis for appellate jurisdiction. However, in dicta, the per curiam opinion did question whether the granting of an extension in open court, rather than based on a written motion, should be a factor distinguishing the holding in Green. Id. On the other hand, six judges concluded in their concurring opinion that "justice is served by applying Eady to the present case" because the party "relied in good faith on a statement of the district judge." *Id. at 1569-70*.

- - - - - - - - - - - End Footnotes- - - - - - - - - -

[*12]
**ANALYSIS**

The Seventh Circuit has stated that [HN5]a "new trial may be granted for these reasons: (1) the verdict is against the clear weight of the evidence; (2) the damages are excessive; or (3) the trial was unfair to the moving party." *Allison v. Ticor Title Ins., 979 F.2d 1187, 1196 (7th Cir. 1992)*. The district court's ruling on a motion for a new trial is reviewed for abuse of discretion. *Winger v. Winger, 82 F.3d 140, 143 (7th Cir. 1996)*. Cooper advances three grounds in support of its motion for a new trial. This court will consider each in turn.

**Exclusion of Cooper's Expert Witness**

As its first ground for a new trial, Cooper argues that this court erred when it granted G.T.'s motion in limine to exclude the testimony of Cooper's expert witness, Donald Brenner. As its primary argument, Cooper argues that the court failed to evaluate Brenner's testimony according to the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*. In a related argument, Cooper states that the court granted the motion without considering Cooper's brief. Cooper also argues that if this court excluded [*13] Brenner's testimony it should have also excluded the testimony of G.T.'s expert. Finally, Cooper argues that even if the court granted the motion in limine, it should have allowed Brenner to testify as a rebuttal witness. In response, G.T. argues that this court is not required to conduct a full-fledged Daubert analysis and that Cooper waived any objections because it failed to make an offer of proof.

The court first addresses G.T.'s waiver argument. G.T. states that Cooper should have made an offer of proof regarding Brenner's testimony even though the court granted the motion in limine to exclude that testimony. With the exception of the use of Brenner as a rebuttal witness, which is discussed below, the court disagrees with G.T. and finds that Cooper did not waive its right to raise this issue. This court's ruling on Brenner's direct testimony was final and did not suggest that the court would revisit that issue during trial. See *Favala v. Cumberland Eng'g Co., 17 F.3d 987, 991 (7th Cir. 1994)*.

Before turning to Cooper's primary argument under Daubert, the court will first address Cooper's related argument that this court ruled without the benefit of Cooper's ten-page [*14] opposition brief. It is first necessary to set out a brief chronology of the court's ruling on the Brenner testimony. As part of the Final Pretrial Order, dated August 4, 1997, G.T. included a six-page motion in limine seeking to exclude Brenner's testimony under Daubert. (Ex. G.) On August 25, 1997, Cooper filed a ten-page opposition brief, arguing, among other things, that G.T.'s motion was

"nothing more than an attack on Brenner's credibility," that Brenner is a "highly accomplished and well recognized" accountant, that G.T. supposedly tried to hire Brenner, that Brenner's method of calculating lost profits was acceptable even if it was not "common," and that G.T.'s own expert was subject to the same criticisms G.T. made against Brenner. On September 12, 1997, G.T. filed a fourteen-page reply memorandum. G.T. discussed each of the factors typically used to make a Daubert analysis and argued that Brenner's testimony failed to meet the Daubert standard.

The trial in this case began on January 5, 1998, and the jury returned a verdict on January 7, 1998. On the morning of January 5, 1998, the parties appeared before the court regarding the various motions in limine. At [*15] that hearing, the court informed the parties that it was granting G.T.'s motion in limine to exclude Brenner's testimony. Subsequently, the court issued a written order, dated January 7, 1998, which was not entered on the docket until after trial. This eight-page order explained the court's rulings on the seven motions in limine then pending. With regard to the motion to exclude Brenner's testimony, the court explained that the testimony should be excluded because Brenner admitted in his deposition testimony that he did not make any study of variable costs in his analysis. Based on *Sterling Freight Lines, Inc. v. Prairie Material Sales, Inc.*, 285 Ill. App. 3d 914, 918, 674 N.E.2d 948, 951, 221 Ill. Dec. 155 (Ill. App. 1996), the court noted that lost profits are based on net profits minus the costs avoided as a result of the defendant's breach. This court further noted that such costs include direct costs and certain variable costs, called variable indirect costs. Given that Brenner did not consider such costs, the court granted the motion.

In its opening brief in support of the instant motion, Cooper states that on the first morning of trial the court orally granted the motion [*16] in limine regarding Brenner and that the court did so even though it stated that it had not received a copy of Cooper's opposition brief. Based on that fact, Cooper argues that the court would not have excluded Brenner's testimony "if the Court had read and considered the argument in the Opposition Brief." (Cooper Mem. at 4.) This argument ignores the fact that when this court issued its written order on January 7, 1998, it had considered Cooper's opposition brief. n6 Cooper essentially concedes this point in its reply brief in support of the instant motion. In response to G.T.'s argument that Cooper should have made an offer of proof regarding the excluded Brenner testimony, Cooper argues that it did not need to do so because this court was fully aware of its arguments. Specifically, Cooper states: "At the time it ruled on the [Brenner] motion, the Court had before it Cooper's objections to the motion, which contained a summary of what Brenner would testify about at trial." (Cooper Reply Mem. at 8.) Cooper elsewhere in its reply brief states that the motion in limine was a "fully briefed motion." Id. As a result, it no longer appears that Cooper is arguing that this court ruled [*17] on the motion in limine without fully considering Cooper's opposition brief.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n6 Cooper states that it did not receive the written order until after the trial. Therefore, as far as Cooper was aware during the trial, the court's only ruling was its oral ruling.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Turning to Cooper's primary argument, Cooper argues that the court erred because it did not make a full-fledged Daubert analysis. [HN6]Under Daubert, a court conducts a two-step inquiry to determine if the proposed expert will (i) testify as to scientific knowledge that (ii) will assist the trier of fact to understand or determine a fact in issue. *509 U.S. at 591*. Cooper maintains that it is reversible error for a trial court to exclude an expert from testifying without conducting this two-step inquiry under Daubert. Cooper primarily relies on *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 643 (7th Cir. 1995) and argues that a district court "must" conduct a more complete Daubert analysis.

The court believes that it is unnecessary to evaluate [*18] Cooper's argument under Gruca because the Seventh Circuit recently addressed this argument in *Target Market Publishing, Inc. v. ADVO, Inc.*, 136 F.3d 1139 (7th Cir. 1998). n7 In Target Market Publishing, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendant who had argued that the plaintiff failed to show it could recover the (then) $ 50,000 minimum jurisdictional amount. *Id. at 1141*. Plaintiff had submitted an expert report prepared by an accountant with the firm Deloitte & Touche, who gave an opinion as to the plaintiff's lost profits resulting from the alleged breach of contract. The district court granted the summary judgment motion in an order (described by the Seventh Circuit as a "terse opinion of three paragraphs"), which stated that the expert's report was speculative and relied on mere assumptions. *Id. at 1142*. On appeal, the plaintiff argued that the district court impermissibly weighed the evidence on a summary judgment motion. The defendant argued in response that "what the court really did, albeit without

Page 6

really saying so explicitly, was to exclude the [accountant's] report as unreliable under the standard [*19] announced in" Daubert. Id. Stating that the order "admittedly is rather cryptic," the Seventh circuit concluded: "although we would have preferred that the district court make its decision to exclude the [accountant's] report more explicit, we conclude that it did in fact make that decision." *Id. at 1142-43.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 This decision was issued after the parties filed their briefs on the motion for a new trial. G.T. then filed a motion to cite supplemental authority, bringing it to the court's attention.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The Seventh Circuit also rejected plaintiff's related argument that if the district court wanted to exclude the report under Daubert it must conduct a "hearing" before doing so. The Seventh Circuit stated:We deal only briefly with Target's additional argument that the district court erred in not holding a hearing in limine before excluding the Burton report. Target has cited no case from this Circuit for the proposition that such a hearing is uniformly required in order to find expert testimony [*20] inadmissible. Moreover, we note that the Supreme Court did not suggest in either Daubert or General Electric that district courts would be required to conduct in limine hearings concerning every rejected proffer of expert testimony. The district court in the present case had before it Burton's report and all of the documents upon which that report purportedly drew. Target is apparently unable to tell this Court exactly what missing information a hearing would have supplied to aid the district court in making its determination. A hearing was not required.*Id. at 1143 n.3.* In short, the Seventh Circuit considered and rejected the same basic argument Cooper is making here. Based on Target Market Publishing, this court does not believe that it needed to take any further steps or to conduct a full-fledged Daubert analysis.

Although the court believes that its order is sufficient under Target Market Publishing, the court will briefly review Cooper's arguments opposing the motion in limine in order to provide a more complete record of this court's ruling. n8 Cooper's arguments contained in its motion for a new trial are the same arguments Cooper made in its [*21] opposition memorandum of law on the motion in limine to exclude the Brenner testimony. As Cooper itself notes in its current brief, [HN7]the issues were "fully briefed" and then ruled upon. As a result, there is less of a need for this court to re-analyze those arguments. See *Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996); Gavoni v. Dobbs Houses, Inc., 1997 U.S. Dist. LEXIS 15986,* No. 95- C-1749, 1997 WL 639052, *1 (N.D.Ill. Oct. 3, 1997) (because the motion for a new trial "primarily rehashes previously rejected contentions raised at trial, only minimal discussion is necessary").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 This court's decision [HN8]whether to exclude testimony under Daubert will be reviewed for abuse of discretion. *Target Market Publishing, 136 F.3d at 1143.*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The court begins the analysis with Cooper's own admission that Brenner used an "alternative" method of calculating lost profits and not the "traditional" and "common" method. n9 As the court noted in its January 7th order, Brenner admitted in his deposition [*22] testimony that he did not consider variable costs under this alternative methodology. As was also noted in the court's order, [HN9]under controlling Illinois law, variable costs should have been considered in the calculation of lost profits. For this reason, the court excluded the testimony.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Brenner believed that an alternative method was necessary because G.T. was an unestablished business or a one-product company.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The court also excluded the expert testimony because it found that Cooper failed to demonstrate the reliability of Brenner's alternative methodology. [HN10]Under Daubert, courts typically examine the following factors to determine the reliability of the proposed expert testimony: (1) whether the theory or technique has been or can be reliably tested; (2) whether it has been subjected to peer review or publication; (3) the known or potential rate of error of the technique; and (4) the general acceptance of the methodology. *Weinstein's Federal Evidence, § 702.05[2]; Daubert, 509 U.S. at 593-94.* [*23] Despite the fact that Cooper's expert used an alternative methodology, Cooper did not provide evidence that the

Page 7

methodology had been subject to any peer review or publication. Nor did Cooper provide the court with the known or potential error rate. In his deposition, Brenner did not name any accounting sources or authorities supporting his method other than one source (Weil) which did not really address the specific method employed by Brenner. Instead of discussing the various Daubert factors, Cooper relied more on its assertion that its expert was well-regarded. That is not a substitute for analysis of the four factors.

Cooper also argued that the court should have excluded G.T.'s expert on the same grounds relied upon to exclude Brenner's testimony. The court rejects this argument for the simple reason that Cooper did not file a motion in limine to exclude such testimony. Because G.T. filed a motion regarding Brenner's testimony, the court was able to review the parties' briefs and arguments concerning the specific factors under Daubert. As previously noted, G.T. made specific arguments as to why Brenner's testimony did not meet the Daubert factors. By failing to file [*24] a motion in limine regarding G.T.'s expert, Cooper deprived the court of the opportunity to consider such arguments. In any event, there are differences between the two experts, including the fact that G.T.'s expert, Turner, admitted that labor is frequently considered a variable cost whereas Brenner testified he did not even consider variable costs. (Tr. at 190.)

Finally, Cooper does advance one new argument in its current motion for a new trial that was not contained in its original opposition brief on the motion to exclude Brenner's testimony. Cooper argues that this court erred in not allowing Cooper to use Brenner as a rebuttal witness. The court finds that Cooper waived this argument. As noted above, the court has ruled that the granting of the motion in limine obviated any duty by Cooper to make an offer of proof with regard to the proposed use of Brenner as a direct witness. However, because the court's ruling on the motion in limine did not address the possibility of rebuttal testimony, the court believes that Cooper had a duty to inform the court of its desire to use Brenner as a rebuttal witness. See generally Wright & Miller, Federal Practice and Procedure § 2805 [*25] ("A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result"). This point is especially true given that Cooper believed during the trial that the court had not considered its opposition brief. As a result, Cooper waived its right to call Brenner as a rebuttal witness. See *F.R.E. 103(a)(2); Spesco, Inc. v. General Elec. Co., 719 F.2d 233, 240 (7th Cir. 1983)* ("Absent a clear showing of abuse of discretion, a reviewing court will not disturb the judgment of the district court with respect to the presentation of rebuttal evidence").

**Jury Instructions**

As its second ground for a new trial, Cooper argues that the court improperly submitted non-IPI jury instructions that misstated the law, and were argumentative, misleading, and duplicative of the IPI instructions submitted.

Both parties agree that [HN11]state law determines the substance of the jury instructions in a diversity case, such as this one, and that Illinois law provides the rules of decision. Both parties also agree that, under General Local Rule 5.00, the "use of [*26] Illinois Pattern Instructions ("IPI") as to all issues of substantive law is required." Standing Order on Pretrial Procedures in Civil Cases and Establishing Pretrial Procedure.

Cooper first argues that the court should have submitted only IPI instructions and that the submission of any non-IPI instructions (even if they were accurate) was improper under General Local Rule 5.00. G.T. argues that the court applied the particular IPI instructions that were on point and then properly added additional, non-IPI instructions to aid the jury in understanding the unique issues involved in this lost profits case. The court agrees with G.T. [HN12]There is no error in the use of additional non-IPI instructions in this context. The court believes that Local Rule 5.00 merely requires the use of IPI instructions to the extent that they are on point. Here, the court concluded that the IPI instructions were based on a simple breach of contract case and this case -- a lost volume seller under the Code -- was different. Moreover, by itself, simply giving non-IPI instructions is not the type of error that affects the substantial rights of the parties and justifies the granting of a new trial.

The court next [*27] turns to Cooper's primary argument regarding jury instructions. Cooper's only serious objection is to one particular instruction -- No. 22. Instruction No. 22 states in its entirety as follows:Instruction No. 22: The cost of performance is made up of direct costs, which generally include labor and materials. Those costs which are avoided as a result of the defendant's breach are deducted from the contract price.Instead of this instruction, Cooper proposed the following variation in an off-the-record jury conference:The cost of performance is made up of direct costs, like labor and materials, and indirect costs, such as overhead. Those costs which are avoided as a result of the defendant's breach are deducted from the contract price.(Cooper's Mem. at 9.) n10 The only difference in the two instructions is in the second half of the first sentence. Instruction No. 22 contains the phrase "which generally include labor and materials,"

Page 8

whereas Cooper's proposed instruction contains the phrase "like labor and materials, and indirect costs, such as overhead." Otherwise, the two instructions are exactly the same. Both parties agree that Instruction No. [*28] 22 is based on the Illinois Appellate Court's decision in *Sterling Freight Lines, Inc. v. Prairie Material Sales, Inc.*, 285 Ill. App. 3d 914, 918, 674 N.E.2d 948, 951, 221 Ill. Dec. 155 (Ill. App. 1996).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 In this conference, Cooper informed the court of its objections to the use of Instruction No. 22.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Cooper argues that Instruction No. 22 "misstates the holding of Sterling Freight" by improperly paraphrasing the holding whereas Cooper's own proposed instruction tracked the exact language of the holding. Cooper specifically argues that Instruction No. 22 misstates the holding in two ways. First, it does not clearly state that labor costs should be included in the "cost of performance" and therefore must be deducted from the contract price. As set forth above, Instruction No. 22 states that the "cost of performance is made up of direct costs, which generally include labor and materials." Although this instruction seems to state exactly what Cooper wants -- that cost of performance includes labor costs [*29] -- Cooper argues that the use of the word "generally" suggests to the jury that labor in some cases may be excluded from the cost of performance calculation. According to Cooper, the instruction told the jury that it was "acceptable" to exclude labor costs in this case. Second, Cooper argues that the first sentence of Instruction No. 22 does not include the phrase "and indirect costs, such as overhead," which is included in Cooper's proposed instruction. Cooper argues that under Sterling Freight the cost of performance includes some (but not all) indirect costs.

The court does not find either of Cooper's arguments persuasive. It is important to place Instruction No. 22 in context. The pertinent jury instructions given by the court (including Instruction No. 22) were as follows:

G.T. has the burden of proof on the following proposition: that as a result of Cooper's breach of contract, G.T. sustained damages. Damages for breach of contract may include lost profits. Such damage is the amount of all reasonably certain net profits the plaintiff did not earn as a result of defendant's breach.

You must fix the amount of money which will reasonably compensate G.T. for all loss naturally [*30] arising from the breach. In calculating G.T.'s damages, you should determine the sum of money that will put G.T. in as good a position as it would have been if both G.T. and Cooper had performed all of their promises under the contract.

The elements of damage claimed by G.T. in this case are lost profits. Whether damages have been proved by the evidence is for you to determine. Damages for breach of contract may include loss that is reasonably certain to occur in the future. Such damages must be reduced to present cash value.

* * *

G.T. may not be deprived of damages for lost profits merely because such profits are not susceptible of precise measurement. G.T. need only show the amount of such loss with reasonable certainty. Mathematical certainty is not required. When measuring damages for profits lost as a result of a breach of contract, the proper measure is one of net, not gross profits. Net profits equal the revenue G.T. would have earned if the contract had been performed minus the cost of performing the contract which G.T. saved by not having to meet its contractual obligations.

The cost of performance is made up of direct costs which generally include labor and materials. [*31] Those costs which are avoided as a result of the defendant's breach are deducted from the contract price. The costs which do not vary with production levels are called fixed costs. Fixed costs are not deducted from the contract price to arrive at net profits.

(Tr. at 304-05.)

These instructions state that damages in a lost profits case are based on "net profits." The instructions then provide a type of formula to determine net profits: "Net profits equal the revenue G.T. would have earned if the contract had been performed minus the cost of performing the contract which G.T. saved by not having to meet its contractual obligations." This court could have stopped there but it believed the jurors needed to have some definitions to understand the terms used in the formula. In particular, the court included Instruction No. 22 to aid the jury in understanding the phrase "cost of performance." Viewed in this context, Instruction No. 22 includes a definitional principle and some examples.

Cooper believes that Instruction No. 22 is improper because it imposes on the jurors a "precise formula." As noted above, however, the actual "formula" is contained in the other parts of the jury [*32] instructions. Both Cooper's own proposed instructions

Page 9

and Instruction No. 22 are similar in overall structure. They both contain a general definition with a few specific examples of the types of items that fall under that principle. The use of the phrases "like" and "such as" and "generally" confirms that the items listed are examples and does not suggest that they are exclusive. Those phrases do not suggest a "precise formula." By including Instruction No. 22, the court attempted to strike a balance between giving the jurors some context and feel for the types of items that are included in the cost of performance calculation without specifically directing the jurors as to every item that could be considered. The parties were free to argue -- and in fact did argue extensively in closing -- that certain types of costs should or should not be included in the calculation of cost of performance.

With regard to Cooper's specific argument that Instruction No. 22 fails to indicate that labor should be included as a direct cost, the court believes that Instruction No. 22 is straightforward and plainly indicates that direct costs include labor. The slight possibility that a juror could infer [*33] from the word "generally" that there are exceptions to the rule is a strained reading and is undercut by the rest of the instructions taken as a whole. Moreover, the court fails to see how the use of the word "generally" varies significantly from the use of the word "like," which is included in the proposed instruction submitted by Cooper.

With regard to the failure to specifically list "indirect costs, such as overhead" in the first sentence of Instruction No. 22, the court also believes that this omission was not misleading. Again, as noted above, Instruction No. 22 contains a definitional principle with a few examples, and those examples are not identified as an exclusive list of items that fall under that principle. Cooper argues that its proposed instruction "tracked the exact language" of Sterling Freight whereas Instruction No. 22 merely paraphrased that holding. Although it is true that Cooper's proposed instruction does quote directly from one sentence in Sterling Freight, the court does not believe that fact is conclusive. In Sterling Freight, the court did state generally that cost of performance included "indirect costs, such as overhead." *285 Ill. App. 3d* [*34] *at 918; 674 N.E.2d at 951.* However, in the discussion following that sentence the court went on to explain that cost of performance only included some indirect costs and not others. Specifically, the court stated that "variable" indirect costs should be included in the cost of performance calculation whereas "fixed" indirect costs should not be included. Id. In other words, under Sterling Freight, not all "indirect costs" should be included as a cost of performance. On balance, this court believes the concepts of Sterling Freight are adequately conveyed by the overall instructions given in this case, including specifically Instruction Nos. 22 and 23.

Given the court's ruling that the instructions did not misstate the law, Cooper's argument that the instructions were argumentative and misleading likewise must fail. Cooper argues that G.T. persuaded the court to use an instruction that supported G.T.'s theory of the case. However, as Cooper notes in its brief, G.T. did not originally propose the language of Instruction No. 22. Instead, the actual wording of Instruction No. 22 was derived by the court with input from attorneys for both parties.

In sum, any allegedly [*35] misleading aspects of Instruction No. 22 are not significant in the overall context of the jury instructions. The entire instructions repeatedly emphasized that jurors should determine net profits by taking revenues and subtracting those costs that were avoided as a result of the defendant's breach. In light of these instructions, any allegedly misleading aspects of instruction No. 22 do not rise to the level necessary to grant a new trial.

**Exclusion of Cooper's Exhibit**

As its third and final ground for a new trial, Cooper argues that tile court committed prejudicial error by failing to admit one of Cooper's exhibits. Specifically, Cooper objects to the exclusion of a table of data compiled by Arthur Andersen's tax department during an audit of G.T. in 1993. This exhibit was referred to as Defendant's Exhibit BB. This court must now determine whether this ground is sufficient to grant a new trial. See *Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1307 (7th Cir. 1987)* (a district court has wide discretion in deciding whether to admit or exclude evidence).

G.T. argues that this court properly excluded Exhibit BB from evidence because Cooper did not identify it in the Final [*36] Pretrial Order nor did it list the witness, Steve Kolber, whom Cooper needed to authenticate the document. n11 In addition, G.T. advances a number of evidentiary objections supporting the exclusion of the exhibit, including that Cooper did not lay an adequate business record foundation, that the document was inadmissible hearsay, that it was irrelevant, that it was incomplete, and that it was improperly offered only during a cross-examination of a witness in G.T.'s case-in-chief.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n11 Cooper does not dispute that it failed to list the exhibit or witness on the Final Pretrial Order but instead argues that the

court should have allowed the exhibit into evidence based on the Seventh Circuit's four-factor test in *Spray-Rite Service Corp. v. Monsanto Co., 684 F.2d 1226, 1245 (7th Cir. 1982)*.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

This court believes that it is unnecessary to address each of the numerous evidentiary problems raised by G.T. because, under the facts of this case, the exclusion of Exhibit BB was not prejudicial in any event. During his [*37] cross-examination of Dr. Kolber, Cooper's counsel referred to Exhibit BB and asked Dr. Kolber several questions about it. (Tr. at 133-35.) No objections were made, and Cooper's counsel was not limited in any way in his use of Exhibit BB during the cross-examination of Dr. Kolber. During Cooper's case, Cooper's counsel attempted to move the exhibit into evidence and G.T.'s counsel objected. The court and counsel then discussed the various evidentiary problems with the exhibit and ways to try to remedy those problems. (Tr. at 277-82.)

Eventually, the court ruled that Cooper could not introduce the exhibit into evidence but that it could refer to the testimony about the exhibit in closing argument. And in fact, Cooper's counsel then spent part of its closing argument discussing the testimony about Exhibit BB. (Tr. at 324-226.) At one point G.T.'s counsel objected to the testimony, and the court then overruled the objection and informed the jury that the testimony about the exhibit was in the record. Cooper's counsel thereupon continued his argument concerning the exhibit. Under these circumstances, any error in the exclusion of the exhibit was not prejudicial and does not justify a new [*38] trial. See, e.g., *Dozier v. Raymond Stampnick, 1992 U.S. Dist. LEXIS 7483*, No. 88- C-9691, 1992 WL 132849, *5 (N.D. Ill. May 29, 1992) (denying motion for a new trial: "while the exhibits were not given to the jury for consideration, the court permitted [the party moving for a new trial] to utilize the [exhibits] during her case-in-chief and, as such, no prejudice flows from the failure to admit [them] into evidence"); see also *Ellis v. City of Chicago, 667 F.2d 606, 611 (7th Cir. 1981)*.

## CONCLUSION

For the foregoing reasons, defendant Cooper's motion for a new trial [135-1] is denied. Plaintiff G.T.'s motion to submit surreply comments regarding defendant's motion for a new trial [142-1] is granted.

**Enter:**

**BLANCHE M. MANNING**

United States District Court Judge

Date: 9/21/98