**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Q&R ASSOCIATES, INC.                              CASE NO. 1:01cv641

                     Plaintiff                              JUDGE BARRETT

    -vs-

UNIFI TECHNICAL FABRICS, LLC, et al.

                     Defendants

**OPINION AND ORDER OVERRULING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Unifi Technical Fabrics, LLC (hereinafter "UTF") and Michael Mebane have moved for Summary Judgment (Doc. 26) on all counts of the Amended Complaint (Doc. 18).

Plaintiff, Q&R Associates, Inc. (hereinafter "Q&R") has moved for Partial Summary Judgment (Doc. 27) on its claims for fraudulent inducement, promissory estoppel and $95,000.00 that it claims to be undisputed contractually-required payments.

**A.**     <u>**Choice of law**</u>

In general, a federal court adjudicating a diversity action must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Miller v. State Farm Mutual Automobile Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). Therefore, Ohio choice of law rules are applicable.

Ohio courts apply the interest-analysis tests set forth in the Restatement (Second) of the Law, Conflict of Laws to resolve conflict of laws issues. *Miller*, 87 F.3d at 824; *see*

*also Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 289 (Ohio 1984). "The basis of an action-*i.e.*, whether it is deemed to be a tort case or a contract case-determines which of the Restatement 's interest-analysis tests an Ohio court must apply." *Miller*, 87 F.3d at 824. Here, Plaintiff has brought both tort and contractual claims.

Section 188 governs in the absence of an effective choice of law by the parties. Section 188 provides that the local law of the state with the "most significant relationship" to the transaction and parties applies to determine the rights and duties of the parties to a contract. Restatement (Second) of Conflict of Laws § 188 (1971). To help aid in determining the state that has the most significant contacts, section 188 cites to principles listed in section 6 of the Restatement (Second) Conflict of Laws. *See id.* These principles include:

    (a)    the needs of the interstate and international systems,
    (b)    the relevant policies of the forum,
    (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d)    the protection of justified expectations,
    (e)    the basic policies underlying the field of law,
    (f)    certainty, predictability and uniformity of result, and
    (g)    ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. In helping to develop the principles of Section 6, Section 188 requires the Court to consider the following factors:

    (a)    the place of contracting,
    (b)    the place of negotiation of the contract,
    (c)    the place of performance,
    (d)    the location of the subject matter of the contract, and
    (e)    the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188. As this Court has explained:

Factor (a) of Section 188 directs this Court to consider "the place of

> contracting," while factor (b) directs us to consider "the place of negotiations of the contract."  The comments to Section 188 provide the Court with guidance on these factors: The place of contracting is a relatively insignificant contact. . . . The place of negotiation . . . is of less importance where there is no one single place of negotiation and agreement, as for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.  Restatement (Second) of Conflicts § 188 cmt. e (1971).

*Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 950 (S.D.Ohio 2002).   Here negotiations occurred in North Carolina, Florida, and via email.  Therefore, the Court finds that factors (a) and (b) are inconclusive.  Factor (c) favors Ohio because the place of performance was to be Ohio.  Factor (d) appears to be inapplicable.  Factor (e) is inconclusive because Plaintiff's place of incorporation and business are Ohio, and UTF is a North Carolina limited liability company with its principal place of business in North Carolina.  However, this Court will give factor (c) the greatest weight.  Generally, Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be performed governs.  *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 453 N.E.2d 683, 685 (Ohio 1983).  Therefore, the Court finds that Ohio law applies to Plaintiff's contract claims.

Section 148 of the Restatement (Second) of Conflicts governs choice of law for claims of fraud and misrepresentation. *Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 951 (S.D.Ohio 2002), *citing Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820-21 (6th Cir.1990) (applying Section 148 to a case using Ohio's conflict of laws rules).[1]  Section 148

---

[1]This Court has noted that other courts have analyzed fraud actions under § 145, which applies to all torts, rather than under § 148, and have concluded that "a cause of action for fraud arises where the loss is suffered. That loss 'is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence.' "  *Sky Technologies Partners, LLC v. Midwest Research Institute*, 125 F.Supp.2d 286, 297 (S.D.Ohio 2000) (citations omitted).

of the Restatement (Second) of Conflicts provides:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a)  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b)  the place where the plaintiff received the representations,
>
> (c)  the place where the defendant made the representations,
>
> (d)  the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e)  the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f)  the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

It appears that Plaintiff's action in reliance took place in several states, including Ohio and North Carolina, and the alleged false representations were made and received in several states.  The contacts listed in Section 148 are largely inconclusive for this reason, as Plaintiff acted in reliance upon Defendant's representations, received the representations, and Defendants made the representations in Ohio, North Carolina, and Florida.  Factor (d) is also inconclusive, and factor (e) is inapplicable.  Only factor (f) – the place where Plaintiff was to render performance under a contract which it allegedly has

been induced to enter by the false representations of Defendants – points to Ohio.  As a result, this Court will apply Ohio law to Plaintiff's tort claims.

    **B.**   **Summary judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial.  *Id.* at 324.  The Court assumes that the parties are well aware of this standard for summary judgment, however, both parties have so moved on facts which are clearly in dispute.  A detailed analysis of case law is not required in this matter as none of the allegations are *per se* prohibited by law and will necessarily turn upon the facts to be determined by the trier of fact.

The following facts are generally agreed upon in the parties' pleadings.  Q&R is an Ohio corporation with its principal place of business in West Chester, Ohio.  It is a sales and marketing company representing raw material producers selling products to manufacture diapers and other similar products.  Mr. Michael Quinn and Mr. John Ranz are its principals.  For a number of years, Q&R has been engaged in the business partnership with Clever Associates to distribute Avgol Nonwoven Industries' products (hereinafter, "Avgol").  Avgol is an Israeli concern that manufactures spun melt fabrics, a synthetic raw material that is used in the disposable hygienic market.  Avgol's spun melts are used for the top sheet, back sheet and leg cuff barrier on disposable diapers.

UTF is a subsidiary of Unifi, Inc.  UTF was a competitor of Avgol.  In 1999-2000 UTF

built a plant in Mocksville, North Carolina and installed the latest equipment to manufacture

spun melts.   Apparently, in mid-year 2000, Defendant Michael Mebane (hereinafter

"Mebane"), then President of UTF, telephoned Mr. Quinn to ask if Q&R would be interested

in representing UTF.   Sometime later, possibly in January, 2001, Mebane invited Messrs.

Quinn and Ranz to visit the Mocksville, North Carolina facility.   In February, 2003, Mr.

Quinn and Mr. Ranz met with Mebane in North Carolina.   Industry rumors that UTF would

be sold to Avgol were discussed in this meeting.   Messrs. Quinn, Ranz and Mebane agreed

to a "hand-shake" confidentiality agreement (the "North Carolina Agreement) regarding their

discussions as it would be to the business peril of Mr. Quinn and Mr. Ranz if Avgol and

Cleaver Associates, Inc. (hereinafter "Cleaver") were aware of their contract with UTF.

Other contacts followed this meeting and it appears that a consensus was reached wherein

Q&R would have exclusive account responsibility for UTF's personal hygiene market in the

United States.

The parties disagree on the following material issues: Q&R indicates that from the

outset it was concerned with UTF's potential sale to Avgol and sought assurances for

protection in the event of such a sale.   UTF maintains that it put Q&R on notice as to UTF's

negotiations with Avgol and that Q&R moved forward with their eyes open.   Q&R indicates

that while they were seeking such protections and assurances, Mebane, on behalf of UTF

promised that no sale was going to occur.   If Q&R can establish specific promises of future

action, they may sustain their claims for fraudulent inducement and promissory estoppel.

*Buren v. Karrington Health, Inc.*, 2002 WL 58930 (Franklin App. Jan. 17, 2002) and *Nilavar

v. Osborn*, 127 Ohio App.3d 1, 17, 711 N.E.2d 726, 736 (1998).   The facts relating to the

alleged misrepresentations and/or non-disclosures are in dispute.

The parties also disagree about certain conversations which occurred during a March, 2001 trade show.  The parties do agree that Messrs. Quinn and Ranz met with Mebane to work out their agreement and the parties proceeded with their business relationship.  They also agree that towards the end of the trade show, UTF's discussions with Q&R were disclosed to others.  However, the parties disagree as to the reason for the announcement.  The parties also disagree as to the significance of certain events which occurred after the trade show.  Mebane, on behalf of UTF sent a $25,000 check to Q&R representing its first draw.  Ten weeks thereafter, UTF and Avgol executed a non-binding letter of intent for Avgol to purchase UTF's manufacturing facilities if certain conditions were met.  On May 11, 2001 a binding letter of intent was signed and the transaction was publically disclosed on May 14, 2001.

Defendants argue that there cannot be a breach of contract where no contract was formed.  In clear cases, summary judgment on breach of contract claims is appropriate.  *Arnold Palmer Golf Co. v. Fuqua Indus., Inc.* 541 F. 2d 584, 588 (6th Cir. 1976).  However the record in this case is anything but clear based upon the many disputed facts.

> The decision whether the parties intended to enter a contract must be based upon an evaluation of the circumstances surrounding the parties' discussions.  The introduction of extrinsic evidence does not violate the parole evidence rule because that rule applies only after an integrated or a partially integrated agreement has been found.  *Itek Corp. v. Chicago Aerial*, 248A.2d 625 (Del. 1968); *Smith v. Dotterweich*, 200 N.Y. 299, 93 N.E.985 (1911), 3 Corbin on Contracts, §§ 576, 577.  As Judge Kalbfleisch observed in *New York Central Railroad Co. v. General Motors Corp.*, 182 F. Supp. 273, 285 (N.D. Ohio 1960);

> The greatest latitude should be given in developing the surrounding situations and conditions attending the negotiations for the consummation of a contract, and the

language employed in a contract should be construed in the light of circumstances surrounding the contracting parties at the time, *Circumstantial evidence is as competent to prove a contract as it is to prove a crime*. (Emphasis supplied).

At bottom . . . the question whether the parties intended a contract is a factual one, not a legal one, and, except in . . . the clearest cases, the question is for the finder of fact to resolve. See, *Godfrey v. Heublein*, 219 F.2d 654, 656 (2nd Cir. 1955), 1 Corbin on Contracts, § 30.

We held in *S.J. Groves & Sons Co. v. Ohio Turnpike Comm'n*, 315 F.2d 235 (6th Cir)., *cert. denied*, 375 U.S. 824, 11 L.Ed.2d 57, 84 S.Ct. 65 (1963), also a case governed by the substantive law of Ohio, that summary judgment was in appropriate in a breach of contract case that involved "complex facts and issues." Judge Shackelford Miller, writing for the court, stated:

It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts, or whether an estoppel or a waiver of certain rights admitted to exist should be drawn from such facts. Under such circumstances, the case is not one to be decided by the Trial Judge on a motion for summary judgment. 315 F.2d at 237-38.

*Arnold Palmer Golf Co. v. Fuzua Indus., Inc.*, <u>supra</u>. The parties disagree as to whether the alleged oral commitments and concurrent email traffic constitute a contract between the parties, or whether they were operating on a month-to-month basis while continuing to negotiate a binding contract. It is a question of fact for the jury as to whether there was a meeting of the minds and, if so, what was the arrangement between the parties.

Defendants further argue that Plaintiff could not have *reasonably* relied on the claimed representations of Defendants, however this again is subject to factual considerations which are in dispute.

Plaintiff moves for summary judgment on its claims for fraudulent inducement and promissory estoppel. However, the Court finds that these claims can only be established by facts which are currently in dispute. Plaintiff has also moved for summary judgment as to claimed guaranteed payments in the amount of $95,000.00. However, Defendants claim that no formal contract was executed and therefore, the parties were operating on a month-to-month basis with no guarantee. These are issues for the trier of fact.

Therefore, Defendants' Motion for Summary Judgment (Doc. 26) and Plaintiff's Motion for Partial Summary Judgment (Doc. 27) are **DENIED**.

**IT IS SO ORDERED**.

s/ Michael R. Barrett
MICHAEL R. BARRETT, Judge
United States District Court